

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 4, 2025**

_____

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 24-44120-ELM |
| JASON RUDOLPH STANFORD, | § | |
| | § | Chapter 7 |
|     Debtor. | § | |
| | § | |
| JASON R. STANFORD, | § | |
| | § | |
|     Plaintiff, | § | |
| v. | § | Adversary No. 25-04034 |
| | § | |
| MARCUS LEINART, *et al.*, | § | |
| | § | |
|     Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court for determination in both the above-captioned main bankruptcy case, Case

No. 24-44120 (the "**Bankruptcy Case**"), and the above-captioned adversary proceeding,

Adversary No. 25-04034 (the "**Adversary 25-4034**"), is the *Motion to Recuse Judge Morris and*

*Request for Reassignment to Judge Mullin* (the "**Motion**") filed by Jason Stanford ("**Stanford**"),

the chapter 7 debtor in the Bankruptcy Case and Plaintiff in Adversary 25-4034.[1]  Pursuant to the Motion, Stanford requests the recusal of above-signed judge from the Bankruptcy Case and all related proceedings, including Adversary 25-4034 and the Removed Claim Adversaries (as defined below).  For the reasons set forth below, the Court denies the Motion.

## BACKGROUND

### A.    Stanford's Bankruptcy Filing and Initial Disclosures

On November 6, 2024 (the "**Petition Date**"), Stanford filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code (the "**Bankruptcy Petition**"), thereby initiating the Bankruptcy Case with the Court.[2]  Stanford hired the Leinart Law Firm (the "**Leinart Firm**") to represent him in connection with the Bankruptcy Case, including with the preparation and filing of the Bankruptcy Petition and certain required lists, schedules, statements, and other disclosures.[3]  The Leinart Firm was *not*, however, engaged by Stanford to represent him in any adversary proceedings initiated with the Court.

Behrooz P. Vida (the "**Trustee**"), one of the panel chapter 7 trustees approved by the United States Trustee's Office to serve in this District, was appointed to serve as the chapter 7 trustee of Stanford's bankruptcy estate (the "**Bankruptcy Estate**").  In such role, the Trustee is charged with the responsibility "to collect and reduce to money the property of the [Bankruptcy Estate], and close such estate as expeditiously as is compatible with the best interests of parties in interest."[4]

---

[1] *See* Bankruptcy Case Docket No. 141; Adversary 25-4034 Docket No. 39.  Other than a caption difference, the motions filed in both proceedings are identical.  Therefore, they are referred to herein as a single Motion.

[2] *See* Bankruptcy Case Docket No. 1 (Bankruptcy Petition).

[3] *See* Bankruptcy Case Docket No. 1, at ECF pp.74-75 (disclosure of agreed upon legal services to be rendered by the Leinart Firm); *see also* Fed. R. Bankr. P. 1007(b) (identification of required lists, schedules, statements, and other disclosures).

[4] 11 U.S.C. § 704(a)(1).

To be in a position to discharge such responsibility, the Trustee must obviously first know what property is included within the Bankruptcy Estate. Pursuant to § 541 of the Bankruptcy Code, a bankruptcy estate is comprised of "all legal and equitable interests of the debtor in property as of the commencement of the case."[5] Of particular relevance to this case, courts have broadly construed "all legal and equitable interests" to include, among other things, all claims and causes of action owned by the debtor as of date of the bankruptcy filing.[6] To aid a trustee in determining the assets of the bankruptcy estate, Bankruptcy Rule 1007 requires a debtor to promptly file a schedule of all of the debtor's assets as of the commencement of the bankruptcy case (Schedule A/B).[7] The schedule must be verified or contain an unsworn declaration under 28 U.S.C. § 1746 attesting to the truthfulness of the disclosures.[8]

In an individual bankruptcy case, notwithstanding the provisions of § 541 of the Bankruptcy Code, the debtor may exempt certain property from the bankruptcy estate pursuant to § 522 of the Bankruptcy Code.[9] To claim an exemption, the debtor must promptly file a schedule that identifies the assets sought to be exempted along with the specific exemptions relied upon (Schedule C).[10] This schedule must also be verified or contain an unsworn declaration under 28 U.S.C. § 1746 attesting to its accuracy.[11]

---

[5] 11 U.S.C. § 541(a)(a).

[6] *See Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 584 (5th Cir. 2008); *Schertz-Cibolo-Universal City, Indep. Sch. Dist. v. Wright (In re Educators Group Health Trust)*, 25 F.3d 1281, 1284 (5th Cir. 1994).

[7] *See* Fed. R. Bankr. P. 1007(b)(1)(A).

[8] *See* Fed. R. Bankr. P. 1008.

[9] *See* 11 U.S.C. § 522(b)(1).

[10] *See* Fed. R. Bankr. P. 1007(b)(1)(A) and 4003(a).

[11] *See* Fed. R. Bankr. P. 1008.

In Stanford's case, a Schedule A/B (the "**Initial Schedule A/B**"), Schedule C (the "**Initial Schedule C**"), and declaration attesting to the truthfulness and accuracy of the Initial Schedule A/B and Initial Schedule C (collectively, the "**Initial Schedules**") were filed along with the Bankruptcy Petition.[12]  Disclosure Item 33 of Schedule A/B required Stanford to disclose all claims against third parties, whether or not a lawsuit has been filed or a demand for payment has been made.  Pursuant to Item 33 of Initial Schedule A/B, Stanford provided the following disclosure: "Collection of monies suit – debtor believes amount owed to him is over $1,000,000 – chances of collecting is low."  Stanford placed a value of $0.00 on the suit as of the Petition Date.[13]  Separately, in Initial Schedule C, Stanford claimed no portion of the suit identified in Schedule A/B Item 33 as exempt.

### B.    *Prepetition Litigation Commenced by Stanford and His Postpetition Removal of Certain Claims and Causes of Action*

Prior to the Petition Date, Stanford d/b/a Rollin' Smoke at the Attache provided certain freight shipping services to a variety of trucking companies.  It appears that among the trucking companies with whom Stanford conducted business at one time or another were King of Freight, LLC ("**KOF**"), England Carrier Services, LLC ("**ECS**"), England Logistics, Inc. ("**ELI**"), England Logistics, LLC ("**ELL**"), CR England, Inc. ("**CRE**"), GlobalTranz Enterprises, LLC ("**GTE**"), and/or Worldwide Express Operations, LLC ("**WEO**") (collectively, the "**Trucking Companies**"). Separately, it appears that Stanford may have also entered into an agreement with nFusion Capital Finance, LLC ("**NFCF**") to factor some or all of the receivables that he generated from his trucking business.

---

[12] *See* Bankruptcy Case Docket No. 1, at ECF pp.13-24 (Schedule A/B), pp.25-33 (Schedule C), and p.58 (declaration).

[13] *See* Bankruptcy Case Docket No. 1, at ECF p.19.

In or about 2023, prior to the Petition Date, Stanford had a falling out with the Trucking Companies and NFCF. As a result, Stanford, acting *pro se*, commenced a multifaceted litigation attack against each of the entities. In certain of the cases, Lauren Nelson ("**Nelson**") of Spencer Fane, LLP ("**Spencer Fane**") appeared as counsel for ECS, ELI, and NFCF; Joseph Luce ("**Luce**") appeared as counsel for KOF; and Christopher Snead ("**Snead**") appeared as counsel for GTE. Based upon those connections, and apparently as a result of frustration with certain of their actions and the rulings that they obtained in favor of their clients, Stanford also brought suit against each of Nelson, Luce, Snead, and Spencer Fane. Stanford even filed suit against two of the Texas state court judges who had been assigned to his cases. All in all, Stanford initiated 12 different lawsuits in either state or federal court prior to the Petition Date.

Subsequent to the Petition Date, Stanford, against acting *pro se*, filed 6 different notices of removal with this Court to remove pending claims and causes of action from 6 of the state court cases to this Court pursuant to 28 U.S.C. § 1452(a). The notices of removal had the effect of initiating 6 different adversary proceedings with this Court. The following is a chart identifying and describing the 12 different cases that Stanford d/b/a Rollin' Smoke at the Attache initiated prior to the Petition Date, and identifying the 6 from which claims and causes of action have ostensibly been removed to this Court:[14]

| | Case Number and Court | Date of Filing | Named Defendants | Disposition |
|---|---|---|---|---|
| 1. | Cause No. DC-23-16349, 162nd Judicial District Court, Dallas County, Texas | 9/25/2023 | ECS<br>NFCF<br>KOF | Order of non-suit without prejudice signed 1/11/2024 |
| 2. | Cause No. DC-23-16350, 162nd Judicial District Court, Dallas County, Texas | 9/25/2023 | ECS<br>NFCF<br>WEO<br>GTE | Order of non-suit without prejudice signed 3/28/2024 |

---

[14] Information set forth herein with respect to such lawsuits is available through the referenced court's publicly-accessible online court records system, of which the Court takes notice.

| | Case Number and Court | Date of Filing | Named Defendants | Disposition |
|---|---|---|---|---|
| 3. | Cause No. DC-23-18438, 101st Judicial District Court, Dallas County, Texas[15] | 11/2/2023 | ECS NFCF WEO GTE | Order of non-suit without prejudice as to ECS and NFCF signed 7/31/2024. Remaining claims stayed as of the Petition Date pursuant to the automatic stay of 11 U.S.C. § 362(a) |
| 4. | Cause No. DC-23-18441, 95th Judicial District Court, Dallas County, Texas[16] | 11/2/2023 | ECS NFCF KOF | On 11/22/2024, Stanford filed a Notice of Removal with this Court, thereby initiating Adversary Proceeding No. 24-04103 ("**Adversary 24-4103**") |
| 5. | Civil Action No. 3:23-CV-02688-N, U.S. District Court, N.D. Texas | 12/6/2023 | KOF ECS ELI | Non-suit dismissal per FRCP 41(a)(2) on 5/3/2024 |
| 6. | Civil Action No. 3:24-CV-00443-E-BT, U.S. District Court, N.D. Texas | 2/26/2024 | Spencer Fane ECS ELL CRE NFCF | Dismissed for lack of subject matter jurisdiction on 6/17/2024 |
| 7. | Civil Action No. 4:24-CV-00241-O-P, U.S. District Court, N.D. Texas[17] ("**NDTX Case 24-CV-241**") | 3/4/2024 | ECS ELI CRE KOF | Case dismissed with prejudice by order and judgment entered on 8/7/2024 [NDTX Case 24-CV-241 Docket Nos. 27 and 28]. |
| 8. | Cause No. DC-24-05255, 191st Judicial District Court, Dallas County, Texas | 4/10/2024 | Spencer Fane NFCF ECS ELL CRE | On 12/2/2024, Stanford filed a Notice of Removal with this Court, thereby initiating Adversary Proceeding No. 24-04107 ("**Adversary 24-4107**") |

---

[15] This case was originally assigned to the 192nd Judicial District Court. Because related proceedings involving the parties were pending in the 162nd Judicial District Court, the case was transferred to the 162nd Judicial District Court on June 6, 2024. Thereafter, it was transferred again – this time to the 101st Judicial District Court on July 2, 2024 – after Stanford sued the state court judge serving the 162nd Judicial District Court.

[16] This case was originally assigned to the 116th Judicial District Court. Because related proceedings involving the parties were pending in the 162nd Judicial District Court, the case transferred to the 162nd Judicial District Court on May 7, 2024. Thereafter, it was transferred again – this time to the 95th Judicial District Court on May 16, 2024 – after Stanford sued the state court judge serving the 162nd Judicial District Court.

[17] This case was originally filed in the Dallas Division of the District Court for the N.D. Texas under Civil Action No. 3:24-CV-00521-E. On March 15, 2024, the case was transferred to the Fort Worth Division of the Court, whereupon it was given the new case number referenced above.

| | Case Number and Court | Date of Filing | Named Defendants | Disposition |
|---|---|---|---|---|
| 9. | Cause No. D-1-GN-24-002529, 345th Judicial District Court, Travis County, Texas (the "**Travis County Case**") | 4/24/2024 | NFCF | On 12/2/2024, Stanford filed a Notice of Removal with this Court, thereby initiating Adversary Proceeding No. 24-04109 ("**Adversary 24-4109**"). By order entered on 1/2/2025 [Adversary 24-4109 Docket No. 7], all removed claims and causes of action were remanded based upon the impermissible/ineffective removal from a Travis County state court to a federal court within the Northern District of Texas (instead of to a federal court within the Western District of Texas). |
| 10. | Cause No. DC-24-06573, 191st Judicial District Court, Dallas County, Texas | 5/9/2024 | State of Texas Judge Wysocki Judge McCoy-Purdy Luce Snead Nelson | Claims against Judges Wysocki and McCoy-Purdy non-suited by order signed 10/1/2024. On 12/2/2024, Stanford filed a Notice of Removal with this Court, thereby initiating Adversary Proceeding No. 24-04110 ("**Adversary 24-4110**") |
| 11. | Cause No. DC-24-06735, 134th Judicial District Court, Dallas County, Texas | 5/14/2024 | Snead Nelson Luce | As of 11/8/2024, it appears that all causes of action had been dismissed for want of prosecution. On 12/2/2024, Stanford filed a Notice of Removal with this Court, thereby initiating Adversary Proceeding No. 24-04106 ("**Adversary 24-4106**") |
| 12. | Cause No. DC-24-11871, 191st Judicial District Court, Dallas County, Texas | 8/8/2024 | ECS NFCF WEO GTE | On 12/2/2024, Stanford filed a Notice of Removal with this Court, thereby initiating Adversary Proceeding No. 24-04108 ("**Adversary 24-4108**") |

As reflected by the above chart, each of the following adversary proceedings is currently pending before this Court in which claims/causes of action asserted by Stanford prior to the Petition Date have purportedly been removed (collectively, the "**Removed Claims**"): Adversary 24-4103, Adversary 24-4106, Adversary 24-4107, Adversary 24-4108, and Adversary 24-4110 (collectively, the "**Removed Claim Adversaries**").

**C.**      ***The Court's Initial Effort to Ascertain the Status of the Removed Claims***
***And Address Scheduling in the Removed Claim Adversaries***

As is standard practice of the Court upon being made aware of a newly initiated adversary proceeding involving removed claims and causes of action, the Court set a status conference in each of the Removed Claim Adversaries.  Because each of the Removed Claim Adversaries involved Removed Claims that were removed pursuant to 28 U.S.C. § 1452(a) based upon their connection to the Bankruptcy Case, the Court set each of the status conference hearings on the same date – December 30, 2024 (the "**12/30/24 Status Conference**").[18]  The purpose of the 12/30/24 Status Conference was to determine the status of the litigation involving each Removed Claim as of the time of the removal and to begin the process of addressing pretrial and trial scheduling.

One of the complications discovered by the Court in preparation for the 12/30/24 Status Conference was that Stanford had failed to file a copy of all process and pleadings associated with the Removed Claims for each Removed Claim Adversary as required by Bankruptcy Rule 9027.[19] Therefore, the Court had no knowledge of the Removed Claims that had purportedly been removed to the Court and whether each of the defendants in relation thereto had been served with process. The Court noted an additional complication during the 12/30/24 Status Conference as a result of the Trustee's absence from the hearing.[20]  Because all of the Removed Claims appeared to constitute non-exempt assets of the Bankruptcy Estate subject to the Trustee's control and

---

[18] *See, e.g*., Adversary 24-4103 Docket No. 7 (notice of 12/30/24 Status Conference).

[19] *See* Fed. R. Bankr. P. 9027(a)(1)(C) (requiring notice of removal to be accompanied by a copy of all process and pleadings).

[20] While the Trustee was provided notice, through the Court's CM/ECF notice facilities, of the initiation of each Removed Claim Adversary upon its filing by virtue of a docketing entry in the Bankruptcy Case, it does not appear as though the Trustee was provided notice of the subsequently set 12/30/24 Status Conference, thereby explaining his absence from the hearing.

administration based upon the disclosures provided pursuant to the Initial Schedules, it was necessary for the Trustee to be present.

As a result, the Court announced at the 12/30/24 Status Conference that a follow-up status/scheduling conference would be held on February 3, 2025 (the "**2/3/25 Status Conference**"), and that the Court would enter an order in each of the Removed Case Adversaries establishing a deadline for the filing of all live pleadings involving the Removed Claims, as well as proof of service of process, and instructing the Trustee to appear at the 2/3/25 Status Conference. Accordingly, on January 3, 2025, the Court entered such an order in each of the Removed Case Adversaries. Pursuant to each order, the Court, among other things, (a) required Stanford to file a copy of all "live" petitions, complaints, counterclaims, motions, and other requests for relief involving the Removed Claims, all "live" answers and other responses that had been filed in relation thereto, and all documents evidencing the effectuation of service of process on any defendant who had not yet answered or otherwise formally responded; and (b) directed the Trustee to appear at the 2/3/25 Status Conference and be prepared to address Stanford's and the Trustee's standing (or lack thereof) pursuant to 11 U.S.C. § 323 and Fed. R. Bankr. P. 6009(a).[21]

**D.    *The Initial Schedules Are Amended***

On January 13, 2025, in advance of the 2/3/25 Status Conference, an amended Schedule A/B (the "**First Amended Schedule A/B**"), an amended Schedule C (the "**First Amended Schedule C**"), and a declaration attesting to the truthfulness and accuracy of the First Amended

---

[21] *See, e.g.*, Adversary 24-4103 Docket No. 14 (*Order (I) Establishing Deadline to Supplement Record, (II) Abating Certain Responsive Deadlines, and (III) Setting Follow-Up Status/Scheduling Conference*); *see also* 11 U.S.C. § 323(a) (providing that a trustee is the representative of the estate); Fed. R. Bankr. P. 6009(a) (providing that, with or without court approval, the trustee may prosecute – or appear in and defend – any pending action or proceeding by or against the debtor).

Schedule A/B and First Amended Schedule C (collectively, the "**First Amended Schedules**") were filed in the Bankruptcy Case.[22]

In First Amended Schedule A/B, Stanford's response to Item 33 was amended to include reference to each of the underlying state court actions from which the Removed Claims were removed. Additionally, the stated value of such claims was amended to $8.8 million in the aggregate.[23] In First Amended Schedule C, Stanford amended his claimed exemptions to include an exemption claim of $14,970 in relation to the claims and causes of action asserted in the Travis County Case. As for the Removed Claims, Stanford either asserted an exemption claim of $0.00 or asserted no claim of exemption at all.[24]

### E. The 2/3/25 Status Conference in the Removed Claim Adversaries; Stanford Asserts that None of the Schedules are Accurate and None of Them Were Authorized to be Filed

On February 3, 2025, the Court conducted the follow-up status/scheduling conference in the Removed Claim Adversaries. Both Stanford and the Trustee appeared at the hearing. Of note, based upon the disclosures and exemption claims set forth within the First Amended Schedules, it still appeared as though all of the Removed Claims constituted non-exempt assets of the Bankruptcy Estate subject to the Trustee's control and administration. Therefore, the Court predominantly focused on the Trustee's, instead of Stanford's, perspective as to status. With that in mind, the Trustee announced at the hearing that he had engaged in preliminary discussions with the defendants on the possibility of a sale or settlement of some or all of the Removed Claims.

Hearing the Trustee's report, Stanford represented to the Court that he had neither signed nor authorized the filing of either the Initial Schedules or the First Amended Schedules. Hence,

---

[22] *See* Bankruptcy Case Docket No. 23 (First Amended Schedules).

[23] *See* Bankruptcy Case Docket No. 23, at ECF pp.7 and 12-13.

[24] *See* Bankruptcy Case Docket No. 23, at ECF pp.17-18.

that had the effect of immediately calling into question the integrity of the Bankruptcy Case overall, and whether Stanford was intending to make a claim of exemption to some or all of the Removed Claims. Correspondingly, it also called into question whether Stanford, the Trustee, or both of them had standing in each of the Removed Claim Adversaries. As a result, once again the Court set a follow-up status/scheduling conference in each of the Removed Claim Adversaries so that action could be taken in the Bankruptcy Case to pin down the status of the schedules.

Additionally, noting that there was an upcoming deadline for the commencement of litigation to object to Stanford's discharge and the dischargeability of individual debts, the Trustee expressed concern about the lack of reliable schedules and other required disclosures in the Bankruptcy Case. In particular, the lack of such required disclosures negatively impacted the ability of the Trustee and other parties in interest to evaluate whether an objection was warranted. Hearing this, the Court suggested that the proper path would be to file a motion in the Bankruptcy Case to request an extension of the deadline. And, unsurprisingly, the Trustee did thereafter file a motion for an extension.[25] After the relevant notice period had passed without objection by anyone, including Stanford, the Court granted the motion as unopposed.[26]

## F.    *The Court Addresses the Alleged Unauthorized Schedules in the Bankruptcy Case*

Separately, on February 5, 2025, the Court entered an *Order to Show Cause* in the Bankruptcy Case to address the representations made by Stanford with respect to the Initial Schedules and First Amended Schedules (the "**Show Cause Order**").[27] The Show Cause Order set a hearing for February 26, 2025 (the "**Show Cause Hearing**") for the purpose of determining whether the Initial Schedules and/or First Amended Schedules were not signed by Stanford and/or

---

[25] *See* Bankruptcy Case Docket No. 46.

[26] *See* Bankruptcy Case Docket No. 64.

[27] *See* Bankruptcy Case Docket No. 35.

were not authorized by Stanford to be filed and, if so, whether Stanford's counsel should be sanctioned or otherwise reprimanded in some manner and whether the Bankruptcy Case should be dismissed for failure to timely comply with Bankruptcy Rule 1007. The Show Cause Order additionally required the attorneys of the Leinart Firm involved in the representation to appear at the Show Cause Hearing in person and show cause why they should not be sanctioned or otherwise reprimanded in some manner for filing any documents in the Bankruptcy Case on behalf of Stanford that Stanford did not authorize to be filed, and required Stanford to appear at the Show Cause Hearing in person and show cause why the Bankruptcy Case should not be dismissed for the failure to timely comply with Bankruptcy Rule 1007.

On February 26, 2025, the Court conducted the Show Cause Hearing. At that time, while the Court determined that Stanford had *many months earlier* authorized the Leinart Firm to file the Initial Schedules, the authorization was so stale that it had the practical effect of no longer being valid. In relation to the First Amended Schedules, while the Court found that Stanford had not yet signed the schedules as of their filing with the Court, the Court concluded, based upon the evidence presented, that certain crossed wires in email communications between Stanford and the Leinart Firm, coupled with Stanford's refusal to meet with counsel in person to go over the amended schedules, caused the Leinart Firm attorneys involved to improvidently decide to take action on behalf of Stanford in a manner that they believed was in furtherance of the objectives sought to be accomplished by Stanford despite not having Stanford's physical signature on the First Amended Schedules.

Ultimately, having fully assessed the situation based upon the evidence introduced, the Court determined (a) to strike the Initial Schedules and First Amended Schedules from the record in the Bankruptcy Case because of their inaccuracy, according to Stanford, setting a deadline of

March 21, 2025, for the filing of true, correct, and fully completed and signed schedules by Stanford, (b) to revoke the ability of the Leinart Firm to file any further documents in the Bankruptcy Case bearing the electronic signature of Stanford, requiring instead that such documents be originally signed by Stanford, (c) to *not* dismiss the Bankruptcy Case, and (d) to *not* monetarily sanction the Leinart Firm or any of its attorneys but instead reprimand the firm and its attorneys in the form of a requirement that the attorneys involved provide a firmwide educational program with respect to the requirements of Bankruptcy Rule 1008, the Court's general order on electronically filing documents required to be signed under oath, and the potential negative ramifications of failing to comply with such rule and order.[28]  Accordingly, on February 27, 2025, the Court entered an *Order in Resolution of Order to Show Cause* providing for the same.[29]

### G.      *Stanford Files a New Set of Schedules and Sues His Lawyers and the Trustee*

The next day, on February 28, 2025, Stanford, this time acting *pro se*, filed a new set of schedules, including a new Schedule A/B (the "**Second Amended Schedule A/B**"), a new Schedule C (the "**Second Amended Schedule C**"), and an originally-signed declaration attesting to the truthfulness and accuracy of the Second Amended Schedule A/B and Second Amended Schedule C (collectively, the "**Second Amended Schedules**").[30]

In Second Amended Schedule A/B, the response to Item 33 continues to reference each of the underlying state court actions from which the Removed Claims were removed, but also adds a reference to the associated Removed Claim Adversary.  Additionally, the response amends the value of the claims asserted to $4.4 million in the aggregate.[31]  In the Second Amended Schedule

---

[28] On March 27, 2025, the Leinart Firm attorneys involved filed a notice in the Bankruptcy Case whereby they certified that the required firmwide training had been timely completed.  *See* Bankruptcy Case Docket No. 61.

[29] *See* Bankruptcy Case Docket No. 41.

[30] *See* Bankruptcy Case Docket Nos. 43 and 44 (Second Amended Schedules).

[31] *See* Bankruptcy Case Docket No. 43, at ECF pp.7 and 12-13.

C, Stanford continues to assert an exemption claim of $14,970 in relation to the claims and causes of action asserted in the Travis County Case.  In relation to the Removed Claims, Second Amended Schedule C continues to either assert an exemption claim of $0.00 or no claim of exemption at all.[32]

Three days later, on March 3, 2025, Stanford filed suit against the Leinart Firm; the two attorneys at the Leinart Firm principally involved in his representation, Marcus Leinart ("**Leinart**") and Richard Anderson ("**Anderson**") (the Leinart Firm, Leinart, and Anderson collectively referred to as the "**Leinart Firm Parties**"); and the Trustee in Cause No. 048-362399-25 in the 48th Judicial District Court of Tarrant County, Texas.  Then, three days after that, on March 6, 2025, Stanford filed a notice of removal with this Court to remove all of the claims and causes of action that had been asserted in the state court case pursuant to 28 U.S.C. § 1452(a), thereby initiating Adversary 25-4034.  Prior to filing suit against the Trustee, Stanford neither requested nor obtained leave of this Court to do so.

**H.**    ***The Leinart Firm Parties Obtain Permission to Withdraw as Counsel for Stanford; The Trustee Obtains Dismissal of the Claims Asserted by Stanford Against Him; Stanford Files the Curren Motion to Seek Recusal of the Above-Signed Judge***

On March 14, 2025, following Stanford's filing of the litigation against the Leinart Firm Parties, the Leinart Firm Parties filed a motion in the Bankruptcy Case to request permission to withdraw as counsel for Stanford, explaining that the existence of the lawsuit created an irreconcilable conflict of interest mandating the withdrawal under applicable Texas Disciplinary Rules of Professional Conduct.[33]  The Leinart Firm Parties additionally highlighted the fact that

---

[32] *See* Bankruptcy Case Docket No. 43, at ECF pp.17-18.

[33] *See* Bankruptcy Case Docket No. 50.

Stanford had resorted to filing all sorts of pleadings in the Bankruptcy Case *pro se* without their involvement.

Surprisingly, Stanford filed a response in opposition to the motion.[34]  He requested the Court to refuse to allow the Leinart Firm Parties to withdraw until they had disgorged or refunded all fees that had previously been paid by Stanford.

On April 14, 2025, the Court conducted a hearing on the motion.  Ultimately, given the unavoidable conflict of interest created by the existence of Stanford's lawsuit against the Leinart Firm Parties, the Court announced that the motion would be granted and thereafter entered an order authorizing the withdrawal effective April 14, 2025 (the "**Leinart Withdrawal Order**").[35] Importantly, the Leinart Withdrawal Order does not resolve any disputes with respect to whether the Leinart Firm may retain or must disgorge or refund fees that Stanford paid to the Leinart Firm. Those are matters to be addressed in adjudicating the malpractice claims asserted by Stanford against the Leinart Firm Parties.

Separately, on March 24, 2025, the Trustee filed a motion in Adversary 25-4034 to request the dismissal of all claims and causes of action asserted by Stanford against him.[36]  The Trustee primarily relied upon two grounds for such relief: *first*, the *Barton* doctrine, given Stanford's failure to obtain leave of court to file suit against the Trustee;[37] *second*, the Vexatious Litigant Order (defined below) entered by the District Court for the Northern District of Texas, given Stanford's failure to obtain permission from the District Court to initiate Adversary 25-4034 in the Northern District of Texas.

---

[34] *See* Bankruptcy Case Docket No. 58.

[35] *See* Bankruptcy Case Docket No. 115.

[36] *See* Adversary 25-4034 Docket No. 10.

[37] *See Foster v. Aurzada (In re Foster)*, No. 22-10310, 2023 WL 20872, at *5-*6 (5th Cir. Jan. 3, 2023) (discussing Barton doctrine), *cert. denied*, 144 S. Ct. 332 (2023).

As to the second basis for relief, in connection with NDTX Case 24-CV-24, once Stanford's habit of pursuing overlapping and repetitive litigation against the Trucking Companies, NFCF, and the defense attorneys had been brought to the District Court's attention, the Magistrate Judge assigned to the case made a recommendation that Stanford be designated a vexatious litigant in this District. The District Judge assigned to the case adopted the recommendation and entered an order declaring Stanford to be a vexatious litigant who is required to seek leave of the District Court before filing any additional lawsuits in the Northern District of Texas (the "**Vexatious Litigant Order**").[38]

On April 21, 2025, the Court conducted a hearing on the Trustee's motion to dismiss. At the conclusion of the hearing, the Court orally announced its findings and conclusions in relation to the motion, determining that it should be granted for both of the two reasons discussed above. In accordance with the oral ruling, on April 23, 2025, the Court entered an order granting the Trustee's motion to dismiss (the "**Trustee Claim Dismissal Order**").[39]

Less than a week later, Stanford filed the current Motion that is now before the Court.[40]

---

[38] *See* NDTX Case 24-CV-241 Docket Nos. 25 and 29. Months after entry of the Vexatious Litigant Order, when its existence was brought to the attention of this Court, Stanford filed a motion in NDTX Case 24-CV-241 to request the vacatur of such order. The motion was denied. *See* NDTX Case 24-CV-241 Docket No. 32. Stanford has appealed the denial order. The appeal is currently pending in the Fifth Circuit Court of Appeals under Case No. 25-10483.

[39] *See* Adversary 25-4034 Docket No. 29 (Trustee Claim Dismissal Order).

[40] The Court notes that the filing of the Motion appears to be consistent with a troubling pattern that has developed in those cases in which Stanford has had an adverse ruling handed down or has not obtained (or has not obtained on his own timetable) the relief that he desires. In those situations, he has regularly resorted to the filing of one or more recusal/disqualification motions as to the presiding judge and/or the filing of a sanctions/disciplinary referral motion against defendants' counsel. Among the cases identified in the above chart in which Stanford has filed such a recusal/disqualification motion and/or sanctions/disciplinary referral motion are Cause No. DC-23-18438, Cause No. DC-23-18441, Cause No. DC-24-06735, Civil Action No. 3:23-CV-02688-N, Cause No. D-1-GN-24-002529, and Cause No. DC-24-06735.

### *DISCUSSION*

Pursuant to the Motion, Stanford requests the recusal of the above-signed judge pursuant to 28 U.S.C. § 455 and Bankruptcy Rule 5004.  Pursuant to 28 U.S.C. § 455, a federal judge is required to disqualify himself in any proceeding in which his "impartiality might reasonably be questioned."[41]  Section 455 further provides that a federal judge must disqualify himself "[w]here he has a personal bias or prejudice concerning a party."[42]  Bankruptcy Rule 5004, which reinforces the concept that § 455 is applicable to the disqualification of a bankruptcy judge, supplements § 455 in providing that the bankruptcy judge "is disqualified from presiding over a proceeding or contested matter in which a disqualifying circumstance arises – and, when appropriate, from presiding over the entire case."[43]

The test for recusal under 28 U.S.C. § 455 "is an objective one."[44]  Hence, "[t]he party seeking recusal must show that, 'the reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality."[45]  A party moving for recusal must: "(1) demonstrate that the alleged comment, action, or circumstance was of 'extrajudicial origin,' (2) place the offending event into the context of the entire [proceeding], and (3) do so by an 'objective' observer's standpoint."[46]

---

[41] 28 U.S.C. § 455(a).

[42] *See id.* § 455(b)(1).

[43] *See* Fed. R. Bankr. P. 5004(a).

[44] *See Payne v. Payne*, Civil Action No. 3:22-CV-2709-X, 2024 WL 57002, at *2 (N.D. Tex. Jan. 3, 2024), *appeal dism'd*, 2024 WL 3338315 (5th Cir. 2024) (quoting *Harmon v. Dallas County*, Civil Action No. 3:13-CV-2083-L, 2017 WL 3394724, at *6 (N.D. Tex. Aug. 8, 2017) (citing *Henderson v. Department of Pub. Safety & Corr.*, 901 F.2d 1288, 1296 (5th Cir. 1990))).

[45] *Payne*, 2024 WL 57002, at *2 (quoting *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 378 (5th Cir. 2002) (cleaned up), *cert. denied*, 538 U.S. 944 (2003)).

[46] *Miller v. Dunn*, Civil Action No. 3 :20-CV-00759-E-BN, 2024 WL 3207021, at *1 (N.D. Tex. Mar. 27, 2024) (quoting *Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir. 2003), *cert. denied*, 541 U.S. 935 (2004)); *see also United States v. Scroggins*, 485 F.3d 824, 830 (5th Cir.) ("Under [§ 455], the alleged bias must be personal, as distinguished from judicial, in nature"), *cert. denied*, 552 U.S. 932 (2007).

With the foregoing in mind, Stanford claims that there are six reasons why recusal by the above-signed judge is warranted in relation to the Bankruptcy Case, Adversary 25-4034, and the Removed Claim Adversaries: (1) for failing to grant Stanford's motions for judicial notice; (2) for permitting Leinart to withdraw as counsel without imposing disciplinary sanctions or reporting misconduct to the disciplinary authorities; (3) for denying without a hearing several motions with respect to the Trustee's engagement in sale/settlement negotiations in relation to the Removed Claims; (4) for failing to take action with respect to the Trustee in the face of alleged false representations made by the Trustee to the Court and alleged breaches of fiduciary duty; (5) for failing to rule on pending motions for summary judgment in the Removed Claim Adversaries; and (6) for purportedly failing to address interlocutory appeals.  Each of these reasons is addressed in turn below.

1.      <u>The Motions for Judicial Notice</u>.  First, Stanford takes issue with the fact that the above-signed judge has not taken action on two different motions that purport to request that the Court take judicial notice of certain matters: a *Motion to Take Judicial Notice of Jurisprudential Malfeasance – Determination of Vexatious Litigant Status* filed in the Bankruptcy Case;[47] and a *Motion to Take Judicial Notice of Facts, Court Rules, Statutes and Court Record* filed in Adversary 24-4103 (collectively, the "**Judicial Notice Motions**").[48]

Pursuant to Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[49]  Rule 201 further provides that a court may take

---

[47] *See* Bankruptcy Case Docket No. 25.

[48] *See* Adversary 42-4103 Docket No. 10.

[49] Fed. R. Evid. 201(b).

judicial notice "at any stage of the proceeding."[50]  While the term "proceeding" is not expressly

defined within the Federal Rules of Evidence,[51] the purpose of such rules of evidence is to establish

ground rules for the disposition of actual legal disputes.  The rules are not designed to serve as a

vehicle to prove up a facts that may, at some unknown point in the future, have a possible bearing

upon some currently unknown dispute.[52]

     With the foregoing in mind, to date the above-signed judge has not acted on either of the

Judicial Notice Motions *not* because of a lack of impartiality, but rather because neither of them

was filed in specific reference to a pending motion or upcoming evidentiary hearing or trial, and

Stanford has not independently requested that either of them be set for hearing.  At best, the Judicial

Notice Motions appear to be premature.  Hence, they have simply not yet been addressed.

     2.   <u>The Permission Granted to Leinart to Withdraw as Counsel</u>.  Next, Stanford takes

issue with the above-signed judge's determination to permit Leinart to withdraw as counsel without

sanctioning him or making a disciplinary referral.  Focusing first on the withdrawal, it is

unquestionable that once Stanford asserted a malpractice claim against Leinart for actions taken

on his behalf in the Bankruptcy Case, Leinart could not ethically continue to represent Stanford in

the Bankruptcy Case.[53]  Hence, the Court granted the Leinart Firm Parties' motion to withdraw as

counsel due to the irreconcilable conflict that exists.

     Second, based upon the facts and circumstances leading up to the filing of the Initial

Schedules and First Amended Schedules (as detailed above), the above-signed judge, in his

---

[50] Fed. R. Evid. 201(d).

[51] *But see* Fed. R. Evid. 1101(b) and (d) (providing insight into the types of cases and proceedings to which the rules may apply and also certain specific exceptions).

[52] *Cf. Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 597 (1993) (in the context of expert testimony, explaining that the Federal Rules of Evidence are "designed not for the exhaustive search for cosmic understanding but for the particularized resolution of legal disputes").

[53] *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.06(a) and (b)(2).

discretion, determined that the most appropriate course of action to take in response to the Court's Show Cause Order was to require the Leinart Firm attorneys involved, including Leinart, to provide firmwide training on topics relevant to the preparation and filing of schedules.[54]  It is also important to note that, in making such ruling, the above-signed judge correspondingly determined to provide an opportunity for Stanford to file a new set of fully completed, truthful schedules instead of dismissing the Bankruptcy Case for failing to timely file truthful schedules.

Ostensibly, part of Stanford's complaint relates to the Trustee's concern at the Show Cause Hearing that the deadline for the filing of objections to the granting of a discharge or to the dischargeability of a particular debt was quickly approaching without any reliable required disclosures on file.  In response, the above-signed judge suggested that the concern could be addressed pursuant to a motion for extension filed in the Bankruptcy Case.  It appears that Stanford misinterpreted the comment as the above-signed judge's suggestion that he "would grant any Motion to Dismiss due to 11 U.S.C. 523 or 727."[55]  However, neither § 523 nor § 727 of the Bankruptcy Code provides for the dismissal of a bankruptcy case; they relate to objections to discharge and dischargeability.  Ultimately, as detailed above, the Trustee filed a motion for an extension which the Court granted after the objection period had run without the filing of any objection by any party in interest, including Stanford.

Hence, in short, the above-signed judge took that action in relation to Leinart *and* Stanford in the face of filed, inaccurate schedules that he, in his discretion, determined to be most appropriate under the facts and circumstances involved, *not* based upon any lack of impartiality.

---

[54] *See also Jackson Marine Corp. v. Harvey Barge Repair, Inc.*, 794 F.2d 989, 992 (5th Cir. 1986) (noting that a decision with respect to sanctions is a matter reviewable only for an abuse of discretion).  Moreover, the Court is unaware of any jurisdiction that has recognized a private right of action for the referral of an attorney to a state bar disciplinary board.  Stanford, himself, is free to submit a complaint if he is so inclined.

[55] *See* Motion, at pp.4-5.

3.      <u>The Denial of Motions Without a Hearing</u>.  Third, Stanford takes issue with the above-signed judge's ruling on four motions without first conducting a hearing: Bankruptcy Case Docket Nos. 26, 34, 81 and 90.  Because, as explained below, Stanford either lacked standing to request the relief sought or the motion was premature, the Court summarily denied each of the motions without a hearing:

> <u>Bankruptcy Case Docket No. 26</u>: Pursuant to this motion, Stanford requested the entry of an order that would approve the sale of property of the Bankruptcy Estate and approve the notice of auction and bid procedures in connection therewith. Because the Trustee is the only party in the Bankruptcy Case having standing to file a motion for such relief, the Court denied the motion.  The order denying the motion explains this basis for denial.  *See* Bankruptcy Case Docket No. 105 (order denying motion).  Stanford did not appeal the order.

> <u>Bankruptcy Case Docket Nos. 34</u>: Pursuant to this motion, Stanford requested that each of the Removed Claim Adversaries be referred to Magistrate Judge Cureton for a court-ordered settlement conference.  Based upon the Second Amended Schedules, however, all of the Removed Claims constitute non-exempt property of the Bankruptcy Estate subject to the control and administration of the Trustee. Consequently, the Court entered an order denying the motion for lack of standing. *See* Bankruptcy Case Docket No. 106 (order denying motion).  The order explains this basis for denial, and additionally explains that (i) a request for a settlement conference involving a Removed Claim is a request that should be filed in the particular Removed Claim Adversary instead of in the Bankruptcy Case, and (ii) this Court does not have the authority to compel a settlement conference before Magistrate Judge Cureton.  Stanford did not appeal the order.

> <u>Bankruptcy Case Docket Nos. 81 and 90</u>: Pursuant to these motions, Stanford requested the entry of an order "clarifying" and "striking" the Trustee's "misrepresentations" regarding global settlement negotiations in the Removed Claim Adversaries and seeking a "protective order" regarding the Trustee's settlement efforts.  Here again, based upon the Second Amended Schedules, all of the Removed Claims constitute non-exempt property of the Bankruptcy Estate subject to the control and administration of the Trustee.  Hence, it is entirely within the Trustee's authority to engage in settlement negotiations with respect to the Removed Claims.  Ultimately, should the Trustee determine to settle any Removed Claims, the Trustee will be required to file and serve on all parties in interest, including Stanford, a motion to request the approval of such a settlement.  It is then at that time that an objection may be raised.  Consequently, the Court entered an order denying each of these motions: for lack of merit in regards to the request for an order precluding the Trustee from engaging in settlement negotiations; and as premature in regards to any settlement that the Trustee may later enter into subject

to court approval. *See* Bankruptcy Case Docket No. 102. The order explains these bases for denial. Stanford did not appeal the order.

Based upon the foregoing, it is clear that the above-signed judge's resolution of each of the above-described motions without a hearing was *not* motivated by a lack of impartiality, but rather on the basis of straight forward legal principles that did not require an evidentiary hearing.[56]

4.     The Failure to Take Action Against the Trustee.  Next, Stanford claims that the above-signed judge has effectively turned a blind eye towards allegedly contradictory statements made by the Trustee during the course of several hearings before the Court.  It appears that the complaint is grounded in Stanford's concern that the Trustee is not, or may not be, ascribing the same value to the Removed Claims as Stanford is ascribing to the claims and, hence, he apparently seeks to preclude the Trustee from taking any further action to administer the claims, including engaging in settlement negotiations.  Stanford even goes so far as to assert that the Trustee is knowingly and fraudulently making false statements about the settlement value of the claims.  And as previously indicated, Stanford even filed litigation against the Trustee to try to prevent him from doing his job.

In complaining of the above-signed judge's failure to take some form of action against the Trustee, Stanford misses the point that, to date, the Trustee has not presented *any* settlement of *any* Removed Claims for Court consideration.  Thus, all of his angst is premature.  There will be an opportunity for him to object to any settlement that the Trustee may present to the Court for approval.  Separately, there are currently at least three separate motions filed by Stanford that either seek the removal or disqualification of the Trustee or request permission to sue the Trustee.  As of

---

[56] From an efficiency standpoint, the Court additionally notes that there are already over 200 separate docket entries in the Bankruptcy Case – an inordinate number of filings in a chapter 7 case – the vast majority of which are motions filed by Stanford.  Many of the motions are also duplicative or repetitive in nature.

this date, none of the motions has come before the Court for resolution.[57]  Thus, in short, there is

no basis for any assertion of a lack of impartiality on the part of the above-signed judge.

5.      Stanford's Motions for Summary Judgment.  Fifth, Stanford asserts that the above-

signed judge's failure to rule on motions for summary judgment filed by Stanford in the Removed

Claim Adversaries is indicative of a lack of impartiality.  Once again, however, Stanford fails to

take into account the fact that, based upon the Second Amended Schedules, he lacks standing to

pursue such relief.  Instead, it is the Trustee who controls the administration of the Removed

Claims.  Moreover, in several of the Removed Claim Adversaries (i) the operative state court

petition/complaint has not even been filed in the case, making it impossible for the Court to

evaluate the motion, and (ii) the defendants have not been served with process, causing the motion

to be premature, at best.

Ultimately, the Court's focus has been on attempting to, quite simply, obtain a clear picture

of the true status of the Removed Claims – something that remains elusive as of this date on

account of the inaccurate schedules previously filed in the Bankruptcy Case and the distraction

created by the barrage of filings made by Stanford in the Bankruptcy Case and Removed Claim

Adversaries.  Moreover, it is this Court's practice to have all motions for summary judgment set

for oral argument.  It is the movant's responsibility to coordinate with the Court's courtroom deputy

on the scheduling of such a hearing.  And, to date, no such hearing has been conducted on any of

the motions.  Thus, there is no basis for any assertion of a lack of impartiality on the part of the

above-signed judge.

---

[57] *See* Bankruptcy Case Docket Nos. 22, 75 and 95.  To date, Stanford has only requested a hearing on one of the motions, which has been provided by the Court but has not yet taken place.

6.      <u>The Purported Interlocutory Appeals</u>.   Finally, Stanford claims that the above-signed judge's impartiality is called into question by virtue of the alleged "failure to address interlocutory appeals adequately."[58]   In making such assertion, Stanford appears to be focused on the Trustee Claim Dismissal Order entered in Adversary 25-4034 and the variety of motions filed thereafter by Stanford that purport to request an interlocutory appeal and a stay pending appeal.[59]   In relation thereto, to date Stanford has not filed a notice of appeal from the Trustee Claim Dismissal Order.[60]   Moreover, while this Court would have the ability to rule on the motion for stay pending appeal once an appeal has been filed, this Court is *not* the decision-maker with respect to the grant or denial of the request for an interlocutory appeal – the District Court has the jurisdictional authority to make that determination.[61]   Thus, here again, there is no basis for any assertion of a lack of impartiality on the part of the above-signed judge.

## *CONCLUSION AND ORDER*

For all of the above reasons, because Stanford has failed to present any objective basis upon which the impartiality of the above-signed judge in the Bankruptcy Case, Adversary 25-4034, and the Removed Claim Adversaries might reasonably be questioned, and because Stanford has further failed to present any objective indicia of personal bias or prejudice on the part of the above-signed judge with respect to Stanford, the Motion will be denied.   Accordingly, it is hereby:

**ORDERED** that the Motion be and is hereby DENIED in all respects.

# # #   END OF MEMORANDUM OPINION AND ORDER   # # #

---

[58] *See* Motion, at p.11.

[59] *See* Adversary 25-4034 Docket Nos. 32, 34, 35, and 40.

[60] *See* Fed. R. Bankr. P. 8004(a).

[61] *See* 28 U.S.C. §§ 158(a)(3).