**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

In re:
JASON RUDOLPH STANFORD, Debtor
Case No. 24-44120-ELM-7
——————————————————————————————————————————

JASON RUDOLPH STANFORD, Plaintiff,
v.
England Carrier Services, LLC
Nfusion Capital Finance, LLC
King of Freight, LLC
GlobalTranz Enterprises, LLC
Spencer Fane, PLLC
Defendants
Original Car DC 25-14020 Dallas County
District Court removed as

Adversary Proceeding No. 25-04119
——————————————————————————————————————————

<u>**MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION TO COMPEL CHAPTER 7
TRUSTEE TO FILE AND PROSECUTE PETITION FOR BILL OF REVIEW**</u>

## I. INTRODUCTION

This Memorandum supports Plaintiff's motion requesting an order compelling Chapter 7 Trustee Behrooz

Vida to file and prosecute a petition for **bill of review** to vacate a series of **state-court judgments**

**obtained by litigation fraud**.

Those judgments were rendered in cases where opposing parties—GlobalTranz Enterprises, LLC; King of

Freight, LLC; England Carrier Services, LLC; and nFusion Capital Finance, LLC—prevailed only through

false representations, forged instruments, and misstatements of governing law. Each of those acts

deprived the debtor of due process and constitutes "extrinsic fraud" within the meaning of *Alexander v.*

*Hagedorn*, 226 S.W.2d 996 (Tex. 1950), and *Valdez v. Hollenbeck*, 465 S.W.3d 217 (Tex. 2015).

Under 11 U.S.C. § 704(a)(1) and Fed. R. Bankr. P. 6009, the trustee must prosecute estate claims to

maximize recovery. Because the fraudulent state-court judgments extinguish claims worth millions to the

estate, this Court should compel the trustee to file the appropriate bill of review or, failing that, declare

the claims abandoned to the debtor under 11 U.S.C. § 554(b).

## II. JURISDICTION AND PROCEDURAL POSTURE

Jurisdiction arises under 28 U.S.C. §§ 1334 and 157. Determining the administration of estate assets and

enforcement of trustee duties is a **core proceeding** under 28 U.S.C. § 157(b)(2)(A), (E), and (O).

The record in the main bankruptcy case (ECF Nos. 347 and 456) shows that the trustee recognized the existence of these causes of action but has not prosecuted them. Given the undisputed evidence of litigation fraud underlying the state judgments, the debtor seeks an order compelling the trustee to act within thirty (30) days.  Debtor's Protective Standing and Fiduciary Enforcement Rights.

The debtor, as the original plaintiff and creator of the evidentiary record, retains derivative and protective standing to compel proper administration of this cause. See *Wieburg v. GTE Southwest, Inc.*, 272 F.3d 302, 308 (5th Cir. 2001). The Trustee's substitution under Rule 7025(c) does not extinguish the debtor's right to (1) compel the Trustee's performance of statutory duties under 11 U.S.C. § 704(a)(1), (2) ensure that the record of the removed proceeding is preserved and free of fraud, and (3) seek abandonment under 11 U.S.C. § 554(b) if the Trustee refuses to act. Standing is therefore concurrent and derivative, not adverse.


## III. FACTUAL BACKGROUND

1. **GlobalTranz Enterprises, LLC:** In state litigation, GlobalTranz filed a **fraudulent amended response to first interrogatories**, altering its prior sworn answers to conceal non-payment for transported freight and to fabricate a defense inconsistent with its own earlier admissions. GlobalTranz filed a fraudulent amended response to its judicial admission made in responses to interrogatories even though the evidence it submitted stated otherwise. Such conduct constitutes intrinsic and extrinsic fraud upon the court.

2. **King of Freight, LLC:** King of Freight defrauded the court by asserting a **fraudulent "assignment" defense**, claiming that payment obligations had been reassigned to England Carrier Services after breach and that it diverted payment based on instruction given to them by the plaintiff. No valid assignment existed, and the argument contradicted the operative broker–carrier agreement. In addition, the demand for payment diversion came from England Carrier Services, LLC.

3. **England Carrier Services, LLC:** England falsely asserted that it held a **security interest** under the Uniform Commercial Code. Under **U.C.C. § 9-203**, no security interest attaches without value, rights in the collateral, and an authenticated security agreement—all absent here. Further, such an interest could never have been **assigned** under **U.C.C. § 9-514**, which governs

the amendment and termination of financing statements but confers no transfer right. England's false claim of lien deprived Plaintiff of credit and contracts, including with Gulf Coast Bank & Trust. England claimed to have priority security interest in all of plaintiff's invoices until February 2024. England went as far as to make these claims in USDC case no 3:23-cv-02688.

4. **nFusion Capital Finance, LLC:** nFusion prevailed by **falsely alleging that Plaintiff breached the Account Purchase and Security Agreement**. In truth, nFusion itself repudiated the agreement on July 14, 2023, by denying fuel advances and refusing to honor contractual obligations. That bad-faith repudiation rendered its later breach claim fraudulent.

Each of these acts misled the state courts and produced judgments tainted by fraud upon the tribunal. Those judgments remain in force, thereby diminishing estate value and impairing creditors' rights unless a bill of review is prosecuted.

## IV. ARGUMENT AND AUTHORITIES

A. Trustee's Exclusive Duty to Prosecute Fraud-Derived Claims

Sections 323(a)–(b) and 704(a)(1) of the Bankruptcy Code make the trustee the estate's sole representative, charged with collecting and reducing all property—including causes of action—to money. Fed. R. Bankr. P. 6009 authorizes the trustee to "commence and prosecute any action or proceeding in behalf of the estate." See *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385–86 (5th Cir. 2008). Where underlying judgments were procured by fraud, those claims remain viable estate property until vacated. A trustee who refuses to pursue them breaches his fiduciary duty. *Mosser v. Darrow*, 341 U.S. 267, 271–73 (1951) (trustee personally liable for mismanagement of estate litigation); *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352–53 (1985) (trustee controls litigation but must act as fiduciary).

GlobalTranz Enterprises, LLC procured a judgment by fraud in Case No. DC 23-16350 and DC 23-18438

King of Freight, LLC procured a judgment by fraud in Case No. DC 23-18441 although it judicially admitted all elements of breach of contract in Case No. DC 23-16349.

Nfusion Capital Finance procured judgments by fraud in Case No. D-1-GN-24-002529.

England Carrier Services, LLC procured judgments by fraud in Case No. 4:23-cv-00443

B. Texas Bill-of-Review Standards and Application to Fraudulent Judgments

Under *Alexander v. Hagedorn*, 226 S.W.2d 996 (Tex. 1950), a bill of review is proper when a judgment is obtained through **fraud, accident, or wrongful act** that prevents a party from presenting a meritorious claim. The petitioner must show:

1. a meritorious claim or defense;

2. prevention by the opposing party's fraud or by official mistake; and

3. that failure to assert the right was unmixed with negligence. *Id.* at 998–1001.

Fraud on the court satisfies these elements, and when the judgment itself is void for lack of due process or falsified evidence, the petitioner need not prove a meritorious defense. *Caldwell v. Barnes*, 154 S.W.3d 93, 96–98 (Tex. 2004); *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271–76 (Tex. 2012). *Valdez v. Hollenbeck*, 465 S.W.3d 217, 234–37 (Tex. 2015), reiterates that extrinsic fraud includes conduct preventing a party from fully presenting its case—precisely what occurred when these defendants submitted falsified pleadings and legal theories impossible under the U.C.C.

C. Prima Facie Burden and Fiduciary Overlay

Under *Baker v. Goldsmith*, 582 S.W.2d 404, 408–09 (Tex. 1979), the petitioner must establish a **prima facie** case through verified pleadings and exhibits before trial. Because the Trustee stands in the debtor's shoes, he must prepare and file verified affidavits and documentary evidence proving the fraudulent acts described above. Failure to do so would constitute both procedural default and fiduciary breach.

D. Fraud as "Cause" for Compelled Action or Abandonment

A trustee's refusal to prosecute fraud-based claims is maladministration under § 704(a)(1). *In re United Operating, LLC*, 540 F.3d 351, 355 (5th Cir. 2008). Where the trustee fails to act, the bankruptcy court may compel prosecution or order abandonment. 11 U.S.C. § 554(b); *Wieburg v. GTE Sw., Inc.*, 272 F.3d 302, 308 (5th Cir. 2001). Given the gravity of the litigation fraud, judicial compulsion is warranted.

E. Equitable Necessity

Bankruptcy courts, as courts of equity, must prevent injustice resulting from fraudulent judgments. *Pepper v. Litton*, 308 U.S. 295, 304 (1939). If the trustee remains inert, equity demands that the debtor be permitted to vindicate the estate's rights. *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987). Compelling action within a defined period ensures the estate's interests are preserved.

V. DOCUMENTARY PROOF THAT NFUSION REPUDIATED AND PLAINTIFF TERMINATED—the APSA

A. The Contractual Baseline

The January 9 2023 **Account Purchase and Security Agreement** ("APSA") between Jason Stanford d/b/a Rollin' Smoke at the Attaché and nFusion Capital Finance, LLC governs the parties' factoring relationship . Under §§ 4 and 11, nFusion agreed to purchase qualifying accounts, advance fuel funds, and maintain the receivables facility; either party could terminate upon notice once obligations were satisfied. These provisions establish a bilateral executory contract whose core is the continuing factoring and advance-funding obligation.

B. The UCC Filings and Notice of Assignment

nFusion perfected its interest by filing a **UCC-1 Financing Statement** on January 9 2023 covering "all accounts, contract rights, and general intangibles". The same day, both parties executed a **Master Notice of Assignment** authorizing nFusion to send assignment letters to Stanford's customers. Paragraph final of that Notice expressly limits revocation to a written instrument "by an authorized officer of nFusion Capital Finance, LLC."

C. Repudiation on July 14 2023

At 8:04 a.m. on July 14 2023, Shauna Brantley, an authorized nFusion representative, emailed the debtor under the subject line *"IMPORTANT NOTICE FROM nFUSION CAPITAL LLC – PLEASE READ."* The message stated:

"nFusion Capital will no longer be the factoring company to service your account going forward.... We have carefully chosen and selected England Carrier Services ... for your continued factoring needs."

This declaration is an **unequivocal renunciation of future performance**, amounting to anticipatory repudiation. By unilaterally withdrawing and designating a third-party factor, nFusion breached §§ 4 and 11 of the APSA and rescinded the Master NOA within the meaning of its own revocation clause.

D. Plaintiff's Immediate Rejection and Termination

On July 17 2023 at 8:17 a.m., Plaintiff replied:

"This does not work for me.... I expect to speak with someone today to effect a termination of our NOA so that I can contract with a company that meets my needs."

Later that morning, Plaintiff notified England Carrier Services directly:

"England doesn't have the services I need. I need to terminate the contract so that I can find a company that suits my needs."

These contemporaneous communications prove that Plaintiff (1) refused any unauthorized substitution, (2) treated nFusion's notice as a total breach, and (3) elected termination pursuant to APSA § 11(b). Under Texas law, an innocent party may treat a repudiation as final, discharge further duties, and terminate the contract. *Pollack v. Pollack*, 39 S.W.2d 853, 857 (Tex. Comm'n App. 1931); *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 198 (Tex. 2004) (per curiam).

E. Legal Consequence: Contract Extinguished as of July 17 2023

Under *Universal Life & Accident Ins. Co. v. Shaw*, 163 S.W.2d 376 (Tex. 1942), a declared cessation of performance in a continuing-service contract constitutes material repudiation. nFusion's July 14 email therefore terminated its right to enforce any security interest under U.C.C. § 9-203; once repudiated, the collateral relationship ceased, and its UCC-1 filing became inoperative as to new receivables. Plaintiff's July 17 termination extinguished the contract *in toto*, leaving no viable assignment to England Carrier Services. Because U.C.C. § 9-514 governs only amendment or termination filings, not substantive assignment of a debtor's obligations, any claim of transfer to England was void ab initio.

F. Summary

The combined record—Exhibits #1 through #5—chronologically demonstrates:

| Date | Document | Legal Effect |
|------|----------|--------------|
| Jan 9 2023 | APSA & UCC-1 filing | Establish factoring relationship and perfection |
| Jan 9 2023 | Master NOA | Limits revocation to written notice by nFusion officer |
| Jul 14 2023 | Brantley Email | nFusion's express repudiation and rescission of NOA |
| Jul 17 2023 | Stanford Reply & Termination Emails | Plaintiff's rejection and termination under § 11(b) |

These writings satisfy the standard for **anticipatory repudiation** under Texas contract law and conclusively show that the APSA ended as of **July 17 2023**. Accordingly, all downstream claims or liens asserted by nFusion or England Carrier Services lack legal foundation, and the Trustee must treat the agreement as fully terminated.

## VI. LEGAL CONSEQUENCES FOR DOWNSTREAM PARTIES: ENGLAND CARRIER SERVICES, KING

### OF FREIGHT, AND GLOBALTRANZ ENTERPRISES

A. nFusion's Repudiation Extinguished All Rights and Security Interests

Under Texas law and the Uniform Commercial Code, a **security interest is effective only so long as the underlying contract remains enforceable**. See *U.C.C.* § 9-203(b)(1)–(2) (a security interest attaches only if "the debtor has rights in the collateral" and "value has been given"). Once nFusion unequivocally repudiated the APSA on **July 14, 2023**, it ceased providing value or performance and thereby destroyed the contractual predicate for any continuing lien or assignment rights. *Universal Life & Accident Ins. Co. v. Shaw*, 163 S.W.2d 376, 379 (Tex. 1942) (repudiation of material obligation excuses further performance by non-breaching party).

nFusion's **"Important Notice"** (Ex. #21) expressly announced that it would "no longer be the factoring company to service your account going forward" and that England Carrier Services ("ECS") would take over. That statement operated as both **anticipatory breach** and **internal rescission** of the Master Notice of Assignment, satisfying its own clause that revocation must be "in writing by an authorized officer".

Because nFusion's authority to collect or assign receivables derived solely from the APSA and the January 9, 2023 UCC-1 filing, its July 14 repudiation rendered that security interest **void** under *U.C.C.* § 9-203(b)(2) and (3). From that date forward, nFusion possessed no "rights in the collateral" and could convey none. *See First Nat'l Bank of Amarillo v. Southwestern Livestock, Inc.*, 616 S.W.2d 218, 222 (Tex. Civ. App. 1981) ("One cannot assign that which he no longer owns.").

B. England Carrier Services' Purported "Assignment" Was Legally Impossible

Immediately after nFusion's repudiation, ECS representatives attempted to justify their conduct by claiming that nFusion's UCC filing and APSA had been "assigned." In reality, no such assignment ever occurred.

1. **Initial Confusion and Lack of Account Record.**

   On **July 17, 2023**, ECS employee Paola Bravo responded to Plaintiff's inquiry stating, "I am sorry but I am not following you…. Can you please tell me the name of your company and what can I do to assist?". Minutes later she added, "I do not have any records of your account in my system." These emails show that, as of the date of alleged transfer, **England had no existing record or**

**control** over Plaintiff's account—conclusive evidence that no valid assignment had occurred under U.C.C. § 9-203(b)(2).

2.  Subsequent Fabrication of "Assignment" Claim.

Over a week later, ECS Vice-President *Eric Myers* asserted:

"We can certainly honor and service the agreement you signed with nFusion.... If you would like to be released from the agreement, we would need to be paid off."  "Your account was purchased by ECS on 7/14/2023.... That UCC filing has been assigned to ECS."

This statement is **knowingly false**. Under *U.C.C.* § 9-514, the only operative effect of an "assignment" of a financing statement is the filing of an amendment with the Secretary of State identifying the assignee. No such amendment exists. Even if filed, § 9-514 does **not transfer the underlying contract rights**; it merely changes the name of the secured party of record. The absence of both consideration and mutual assent—combined with nFusion's prior repudiation—makes any purported "purchase" legally void. *See Seagull Energy E&P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 346 (Tex. 2006) (assignment requiring personal credit or trust cannot be transferred without consent).

3.  **ECS Counsel's Post-Hoc Ratification Attempt.**

On **August 8, 2023**, ECS attorney *Justin Olsen* repeated the falsehood that "ECS acquired nFusion's rights in the Account Purchase and Security Agreement" and demanded payment of a $5,000 termination fee. This admission confirms *scienter*: Olsen acknowledged that Plaintiff had already elected termination and yet sought to enforce a contract his client did not own. Such conduct constitutes *fraud upon the court* and *tortious interference with contract* under *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).

C. Downstream Entities Could Acquire No Greater Rights

Even assuming arguendo that England possessed any residual interest—which it did not—its purported rights could not extend to third-party brokers such as **King of Freight, LLC** and **GlobalTranz Enterprises, LLC**. Under the nemo-dat rule, an assignee acquires no greater title than its assignor. *See Restatement (Second) of Contracts* § 336(1). Because nFusion had already forfeited its interest, England's and its clients' later assertions of lien or payment direction were void *ab initio*. The subsequent filings and correspondence from those brokers relying on England's claimed "assignment" therefore amount to independent fraudulent misrepresentations designed to obstruct Plaintiff's receipt of freight proceeds.

D. Fraudulent Knowledge and Intent

The sequence of communications—Bravo's initial denial of any record, Myers's later contradiction, and Olsen's legal threat—demonstrates knowing falsity. England's agents were contemporaneously aware that:

1. No amendment under *U.C.C.* § 9-514 had been filed;

2. The debtor had expressly terminated the APSA on July 17 2023; and

3. nFusion's July 14 email severed its contractual relationship.

Nevertheless, they misrepresented ownership of the APSA to gain leverage over Plaintiff's accounts and to obstruct his new financing with Gulf Coast Bank & Trust. This conduct satisfies the elements of common-law fraud and extrinsic fraud under *Valdez v. Hollenbeck*, 465 S.W.3d 217, 234–37 (Tex. 2015).

E. Legal Effect: All Subsequent Claims Void ab Initio

Under *U.C.C.* § 9-203 and § 9-514, a security interest requires both an enforceable contract and value. Once nFusion repudiated and Plaintiff terminated, those prerequisites vanished. Any later claim by England, King of Freight, or GlobalTranz to payment, lien, or priority status lacked legal foundation and is void as a matter of law.  *See Mayo v. Bank of Am.*, No. 05-15-00537-CV, 2016 WL 4040390, at *3 (Tex. App.—Dallas July 26, 2016, no pet.) (mem. op.) (security interest cannot exist absent debtor's rights in collateral).

Therefore, all downstream assertions—whether styled as "assignment," "purchase," or "successor factoring agreement"—are nullities. The APSA ceased to exist as a viable instrument on **July 17 2023**, and any later enforcement or reliance upon it constitutes actionable fraud upon the court and upon the bankruptcy estate.


VII. ENGLAND CARRIER SERVICES LACKED ANY RIGHT TO DEMAND A BUYOUT

After nFusion's July 14 2023 repudiation, ECS attempted to coerce Plaintiff into paying a fictitious "buyout" to release collateral that no longer existed. On **August 8 2023**, ECS attorney **Justin Olsen** sent a letter asserting that ECS had *"acquired nFusion's rights in the Account Purchase and Security Agreement … [and] is willing to enter into the Buyout Agreement with you and Gulf Coast Bank"*, conditioning any release of liens or UCC filings on payment of **$8,615.00**. Olsen admitted ECS was *"not obligated to enter into a buyout,"* yet simultaneously threatened to enforce a termination fee unless Plaintiff signed the fabricated **"Buyout Agreement and Release"** (Ex. #40).

This demand was legally baseless. Because nFusion's July 14 notice extinguished the APSA, ECS could not acquire any enforceable rights or security interests under *U.C.C.* § 9-203(b). Nor could it demand payment as a condition precedent to releasing the already-void UCC-1 filing; a perfected lien ceases automatically when the underlying obligation is discharged or repudiated. *See In re Southmark Corp.*, 49 F.3d 1111, 1117 (5th Cir. 1995) (once debt extinguished, lien rights vanish). Any purported "buyout" would therefore constitute **extortion under color of a false lien**, violating *Tex. Civ. Prac. & Rem. Code* § 12.002(a)(1).

ECS's insistence that Plaintiff owed a $5,000 "termination fee" also contradicts § 11(b) of the APSA, which allows the client to terminate after notice once accounts are paid. No provision authorizes an additional fee absent continuing factoring services. By misrepresenting its legal status and conditioning release of an invalid lien on payment, ECS committed **tortious interference with contract** and **fraudulent inducement**. *See Browning-Ferris, Inc. v. Reynolds*, 781 S.W.2d 322, 324 (Tex. App. 1989).

## VIII. ENGLAND HAD NO RIGHT TO IMPEDE PLAINTIFF'S NEW FINANCING WITH GULF COAST BANK & TRUST

Immediately after terminating nFusion, Plaintiff began negotiations with **Gulf Coast Bank & Trust Company** to secure a replacement factoring line. On **July 17 2023**, Gulf Coast Vice President **Katie German** confirmed the availability of fuel advances and invited Plaintiff to proceed. By **July 24**, German reported that her underwriter was "following up with England on the buyout" because ECS was refusing to provide a lien release, thereby **blocking Gulf Coast from extending credit**. Plaintiff explained that ECS was "not setting anything up" and that his company was stranded without cash flow, fuel, or operational funding.

This obstruction directly prevented execution of the **Gulf Coast factoring application**, later completed via DocuSign (Ex. #22; Apr. 12 2024). Under Texas law, **a third party who intentionally interferes with a prospective business relationship through independently wrongful acts is liable in tort.** *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). ECS's insistence on a nonexistent "buyout" and its refusal to release the UCC filing constitute independently wrongful acts because they relied on a **fictitious security interest** voided by nFusion's repudiation.

Moreover, the duty to mitigate damages following nFusion's breach lay with Plaintiff, not with ECS. *See Great Am. Ins. Co. v. North Austin MUD No. 1*, 908 S.W.2d 415, 426 (Tex. 1995) (party must take reasonable steps to minimize loss after breach). By obstructing Plaintiff's mitigation efforts and threatening Gulf Coast with false lien claims, ECS exacerbated the damages to Rollin' Smoke at the Attaché, effectively destroying its working-capital stream. Such conduct violates *Restatement (Second) of Torts* § 767 (c) (interference through "wrongful means").

D. Summary of Legal Effect

| Date | Actor | Document / Event | Legal Effect |
|------|-------|-----------------|--------------|
| Jul 14 2023 | nFusion | "Important Notice" email | Express repudiation; termination of APSA |
| Jul 17 2023 | Plaintiff | Termination notices to nFusion & ECS | Lawful termination; discharge of obligations |
| Jul 17–24 2023 | Gulf Coast Bank | Factoring negotiations | Establishes mitigation efforts |
| Jul 24 2023 | ECS | Refusal to release lien | Wrongful interference with prospective financing |
| Aug 8 2023 | Justin Olsen (ECS counsel) | $8,615 buyout demand | Extortionate claim; fraudulent assertion of security interest |

E. Conclusion of Section VIII

Because nFusion's repudiation eliminated the contractual and legal foundation for any lien, **ECS's subsequent conduct—demanding a buyout and blocking Plaintiff's Gulf Coast financing—was ultra vires, fraudulent, and tortiously obstructive.** ECS's actions compounded nFusion's breach, deprived the estate of mitigation opportunities, and inflicted operational insolvency on the debtor's business. Consequently, all ECS claims of assignment, security interest, or right to compensation are **void ab initio**, and any judgments predicated on those assertions constitute **fraud upon the court** warranting vacatur through the Trustee's compelled bill of review.

IX. AS A MATTER OF LAW: ABSENCE OF FACTORING PURCHASE MEANS NO SECURITY INTEREST AND NO ASSIGNMENT

A. Governing Law—U.C.C. § 9.203 and APSA § 4

Under the Uniform Commercial Code, a security interest does not attach—and therefore cannot be enforced or assigned—unless all three statutory prerequisites are satisfied:

1.  Value has been given;

2.  The debtor has rights in the collateral; and

3.  The debtor has authenticated a security agreement describing the collateral.

*U.C.C.* § 9-203(b)(1)–(3); *Tex. Bus. & Com. Code* § 9.203(b)(1)–(3).

Attachment requires *both* an enforceable obligation and existing collateral rights. Without these, a financing statement or contract clause alone creates no lien or ownership. *See In re Bollinger Corp.*, 614 F.2d 924, 928 (3d Cir. 1980); *Mayo v. Bank of Am.*, No. 05-15-00537-CV, 2016 WL 4040390, at *3 (Tex. App.—Dallas July 26 2016, no pet.) (mem. op.) ("Perfection is meaningless without attachment.").

The controlling contract mirrors this statutory scheme. Section 4 of the **Account Purchase and Security Agreement**(executed Jan. 9 2023) provides, verbatim:

**4. SECURITY INTEREST IN COLLATERAL, SALE/ASSIGNMENT, & NOTIFICATION.** As a further inducement for NFUSION to enter into this Agreement, CLIENT gives to NFUSION a security interest in the following described property as collateral for the repayment of any and all obligations and liabilities whatsoever of CLIENT to NFUSION under the Uniform Commercial Code in the following described property, hereinafter collectively called "Collateral": All presently existing or hereafter arising, now owned or hereafter acquired accounts, accounts receivable, deposit accounts, contract rights, chattel paper, electronic chattel paper, commercial tort claims, documents, instruments, reserves, reserve accounts, rebates, and general intangibles, equipment, and all books and records pertaining to the foregoing and all proceeds of the foregoing.

**(a) APPROVAL:** CLIENT shall from time to time sell, transfer …

**(f) SOLE PROPERTY:** Once NFUSION has purchased an Account, the Account is the sole and exclusive property of NFUSION. CLIENT shall make proper entries on its books and records disclosing the absolute sale of the Account to NFUSION. (Emphasis added.)

By its own text, **NFusion's ownership interest arises only upon the actual purchase of an Account.** Until that event, NFusion holds nothing more than an *expectancy*—a contingent right to decide whether to purchase. Because § 4(f) limits ownership to "once NFusion has purchased," invoices that were never purchased remain the debtor's property, free of lien or assignment.

B. Application to the Evidentiary Record

NFusion never purchased or advanced funds against the following invoices:

| Broker / Customer | Bill of Lading No. | Transaction Date | Status |
|---|---|---|---|
| **GlobalTranz Enterprises, LLC** | 27264720 | July 14 2023 | Not factored—no purchase or advance |
| **Dunamis LLC** | 13299734 | July 2023 | Not factored—no purchase |
| **Trident Transport** | 538583 | July 2023 | Not factored—no purchase |
| **Priority 1, Inc.** | 6010xxxxx | July 2023 | Not factored—no purchase |
| **King of Freight, LLC** | 2179348 | July 2023 | Not factored—no purchase |

NFusion's own correspondence and payment history confirm that no advances, wire transfers, or purchase confirmations were issued for these bills of lading during July 2023. Consequently:

1. No "value" was given under *U.C.C.* § 9-203(b)(1);

2. **NFusion held no rights in the collateral**, because the invoices remained payable directly to the carrier (Plaintiff); and

3. **The security agreement's conditional language** ("Once NFusion has purchased …") was never triggered.

Under these circumstances, **no security interest attached.** Without attachment, there can be neither perfection, assignment, nor sale. *See In re Woodson Co.*, 813 F.2d 266, 272 (9th Cir. 1987) (security interest unenforceable absent attachment elements).

C. Legal Consequence—Assignments Void ab Initio

Because NFusion never purchased the above invoices, it possessed **no collateral rights capable of assignment to England Carrier Services or any successor.** *Tex. Bus. & Com. Code* § 9.203(b)(2); *First Nat'l Bank of Amarillo v. Southwestern Livestock, Inc.*, 616 S.W.2d 218, 222 (Tex. Civ. App. 1981) ("One cannot assign that which he no longer owns.").

Section 4(f) of the APSA is dispositive: ownership vests only upon purchase. Absent purchase, the invoices remained the Plaintiff's sole property.

Therefore:

• GlobalTranz Enterprises, LLC BOL # 27264720,

• Dunamis LLC BOL # 13299734,

- Trident Transport BOL # 0538583,

- Priority 1, Inc. BOL # 6010…, and

- King of Freight LLC BOL # 2179348

could **never have been assigned or encumbered** by NFusion or England, because they were never purchased and thus never became part of the factoring collateral pool. Any UCC-1 filings or "buyout" demands referencing those invoices are legally nullities. *See In re Southmark Corp.*, 49 F.3d 1111, 1117 (5th Cir. 1995) (lien rights terminate with extinguishment of underlying debt).

D. Summary

As a matter of law:

1. NFusion's security interest attached only to purchased accounts.

2. No purchase occurred for the enumerated bills of lading.

3. Therefore no security interest or right of assignment ever arose.

4. Consequently, England Carrier Services' and its agents' claims of ownership, "buyout" authority, or lien enforcement were **knowingly false and void ab initio**.

X. THERE IS NO DISPUTE THAT NFUSION REFUSED TO PURCHASE OR FUEL-ADVANCE THE GLOBALTRANZ, TRIDENT, AND PRIORITY 1 LOADS ON JULY 14 2023

A. Undisputed Written Record

The documentary record conclusively shows that on July 14 2023, nFusion Capital Finance, LLC expressly refused to fund or purchase three pending freight invoices—GlobalTranz Enterprises, LLC (BOL #27264720), Trident Transport LLC (BOL #0538583), and Priority 1 Inc. (BOL #6010…)—thereby halting all performance under the Account Purchase and Security Agreement ("APSA").

At **1:02 p.m. CT**, Plaintiff sent nFusion a request titled *"3 advances"* with copies of each rate confirmation, bill of lading, and proof-of-delivery, writing:

"So I'm not stuck out over the weekend."

Forty-nine minutes later, nFusion representative **Shauna Brantley** replied at **1:51 p.m. CT**:

"We were made aware that England does not do fuel advances and we are not able to process any more transactions for funding on the nFusion side. I am terribly sorry."

That email is an **express written refusal to purchase or advance funds** for the very loads submitted. It terminates nFusion's contractual duty to factor or provide credit accommodation and demonstrates absolute repudiation of the APSA as to all pending receivables.

B. Legal Effect of the Refusal

1. **Refusal to Purchase Equals Anticipatory Breach.**

    Under Texas law, a statement that a party "is not able to process any more transactions for funding" constitutes a clear, positive, and unconditional refusal to perform—an *anticipatory breach* as a matter of law. *Pollack v. Pollack*, 39 S.W.2d 853, 857 (Tex. Comm'n App. 1931, holding approved); *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 198 (Tex. 2004) (per curiam).

2. **Failure to Purchase Terminates Any Security Interest.**

    Because nFusion gave no value for the GlobalTranz, Trident, or Priority 1 accounts, no security interest could attach under *U.C.C.* § 9-203(b)(1). Without attachment, there is no enforceable collateral right, and any later assertion of lien or assignment is void. *See Mayo v. Bank of Am.*, No. 05-15-00537-CV, 2016 WL 4040390, at *3 (Tex. App.—Dallas July 26 2016, no pet.) (mem. op.).

3. **Refusal to Fuel-Advance Breaches Material Term.**

    Section 5(e) of the APSA obligated nFusion to provide fuel advances up to 40 percent of load value once an account was approved. By declining to process any fuel advances, nFusion breached that essential financing covenant, rendering further performance impossible. *See Clear Creek Basin Auth. v. City of Houston*, 589 S.W.2d 671, 678 (Tex. 1979) (material breach occurs when one party prevents the other's performance).

C. Conclusive Nature of the Evidence

The contemporaneous email exchange leaves no factual ambiguity:

| Date | Sender | Recipient | Content Summary | Legal Effect |
|------|--------|-----------|-----------------|--------------|
| Jul 14 2023 | Jason Stanford | nFusion Fuel | Request for fuel advances for GlobalTranz, Trident, and Priority 1 | Triggers nFusion's duty to perform |
| Jul 14 2023 | Shauna Brantley | Jason Stanford | "We are not able to process any more transactions for funding on the | Express refusal = anticipatory |

Because these communications are undisputed, summary adjudication is appropriate. No reasonable trier of fact could find that nFusion intended to continue performance after expressly disclaiming the ability to fund.

D. Consequences for Downstream Claims

The refusal to fund these three accounts—together with the contemporaneous July 14 email transferring clients to England Carrier Services—extinguished all of nFusion's rights in those invoices. *See U.C.C.* § 9-203(b)(2); *First Nat'l Bank of Amarillo v. Southwestern Livestock, Inc.*, 616 S.W.2d 218, 222 (Tex. Civ. App. 1981). Therefore, any later assertion by England, King of Freight, or GlobalTranz that those invoices were "assigned" or "factored" is legally impossible and constitutes fraud upon the court.

E. Summary

As of **1:51 p.m. on July 14 2023**, nFusion (1) refused to purchase or advance on the GlobalTranz, Trident, and Priority 1 invoices, (2) thereby breached and repudiated the APSA, and (3) extinguished all purported security interests and assignment rights in those accounts. These undisputed facts establish nFusion's default and provide the foundation for the bill of review and for vacating any judgments that relied on the false premise of a continuing nFusion-England factoring relationship.

XI. KING OF FREIGHT, LLC BILL OF LADING #2179348 WAS EXECUTED AFTER NFUSION'S REPUDIATION—RENDERING ENGLAND CARRIER SERVICES' SECURITY CLAIM AND PAYMENT DEMAND FALSE AS A MATTER OF LAW

A. The King of Freight Load Arose After the Contract Was Already Terminated

The record conclusively establishes that the **King of Freight, LLC** shipment in question (BOL #2179348) was **initiated and executed on July 21, 2023**—a full week after nFusion Capital Finance, LLC repudiated and ceased all performance under the APSA on July 14, 2023.

The official **King of Freight Rate Confirmation**, dated **July 21, 2023**, identifies *Rollin' Smoke at the Attaché* (MC #1476454) as the carrier, for shipment of "1 piece of tubing, 410 lbs" from Eupora, Mississippi to Humble, Texas, for a total rate of **$550.00**, payable **30 days after receipt of proof of delivery**.

The document further designates *nFusion Capital, LLC*—not England Carrier Services—as the payee at the time of issuance, and it reflects a **pick date of July 21, 2023** and a **delivery date of July 24,**

**2023**.

Thus, the entire transaction arose after the July 14 repudiation. By that date, nFusion had already sent written notice that it "will no longer be the factoring company to service your account going forward" and that it had "selected England Carrier Services for your continued factoring needs". As shown in Section X, Plaintiff formally terminated the APSA and any related NOA on July 17, 2023.

Accordingly, **no live factoring agreement existed on July 21, 2023**, and nFusion possessed no enforceable security interest or right of assignment under *U.C.C.* § 9-203(b). The King of Freight rate confirmation therefore created a *new, independent receivable* owned solely by Plaintiff.

B. England Carrier Services' Subsequent "Assignment" Claim Was Factually Impossible and Legally Void

Despite these undisputed facts, England Carrier Services ("ECS") and its counsel **knowingly asserted** in multiple communications and pleadings that ECS "held a security interest" in, or had "purchased," the King of Freight invoice. That representation is both **factually false** and **legally impossible**.

1. **No Prior Purchase or Value.**

   As established in Section IX, a security interest cannot attach absent (1) value, (2) rights in the collateral, and (3) an enforceable security agreement.  *U.C.C.* § 9-203(b)(1)–(3). By July 21, nFusion had withdrawn from performance and given no value. Therefore, ECS could not acquire any enforceable lien or assignment rights from a repudiated contract.

2. **No Temporal Connection.**

   Because the King of Freight load did not exist until July 21, ECS's claim to it is chronologically impossible. An assignee cannot retroactively acquire rights in an asset that did not exist at the time of assignment.  *See First Nat'l Bank of Amarillo v. Southwestern Livestock, Inc.*, 616 S.W.2d 218, 222 (Tex. Civ. App. 1981) ("Assignment must identify existing rights; nonexistent property cannot be conveyed.").

3. **No Supporting UCC Amendment or Filing.**

   No amendment under *U.C.C.* § 9-514 was filed transferring nFusion's January 9, 2023 UCC-1 to ECS, and none could have cured the lack of attachment.  *See Mayo v. Bank of Am.*, No. 05-15-00537-CV, 2016 WL 4040390, at *3 (Tex. App.—Dallas July 26, 2016, no pet.) ("Without attachment, perfection by filing is meaningless.").

C. England's False Claim to the $550 Payment Constituted Civil Conversion

On or about **October 2023**, King of Freight remitted the $550 freight payment to England Carrier Services instead of to the carrier. Because ECS had no lawful interest in that receivable, its acceptance of those funds constituted **conversion**—the unauthorized assumption and exercise of dominion or control over another's property, inconsistent with the owner's rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971).

Conversion requires only (1) Plaintiff's ownership or right to possession, (2) Defendant's unlawful dominion, and (3) resulting damages. Each element is satisfied here:

1.  **Ownership:** Plaintiff was the carrier of record and never sold or assigned the invoice.

2.  **Unlawful Dominion:** ECS directed payment to itself by falsely representing a nonexistent lien and assignment.

3.  **Damages:** Plaintiff lost the $550 freight charge and was deprived of operational liquidity.

Furthermore, the misrepresentation of lien ownership was not a mistake—it was **intentional and knowing**. ECS's counsel, **Justin Olsen**, demanded a "buyout" in August 2023 (Ex. #40) while aware that the King of Freight load was dated a week after the contract's termination. This conduct satisfies *scienter* for both conversion and fraud under *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983).

D. Judicial Consequence—Fraud Upon the Court and Mandatory Vacatur

Because ECS's claim to the King of Freight receivable was factually impossible and legally void, any judicial filings, pleadings, or arguments asserting that England held a valid security interest in that invoice constitute **fraud upon the court**. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) (fraud upon the court occurs when a party "sentiently sets in motion some unconscionable scheme" to mislead the tribunal). The falsity of England's claims can be proved directly from the face of the July 21 rate confirmation and the July 14 repudiation email.

Because conversion and fraud on the court vitiate all resulting orders, *see Browning v. Prostok*, 165 S.W.3d 336, 347 (Tex. 2005), any judgment or claim by England predicated upon ownership of BOL #2179348 is **void ab initio** and must be vacated through the Trustee's bill of review.

XII. ENGLAND CARRIER SERVICES, LLC DEFRAUDED KING OF FREIGHT, LLC BY KNOWINGLY MISREPRESENTING ITS ENTITLEMENT TO THE $550 PAYMENT

A. England's Knowledge of Lack of Entitlement

By **July 21, 2023**, when King of Freight Load #2179348 was executed, England Carrier Services, LLC ("ECS") had **actual knowledge** that nFusion Capital Finance, LLC ("nFusion") had repudiated the Account Purchase and Security Agreement ("APSA") a week earlier and that Plaintiff had lawfully terminated all factoring relationships. ECS's counsel, **Justin Olsen**, acknowledged as much in his **August 8, 2023 "buyout" letter**, wherein he admitted that ECS had *"acquired nFusion's rights"* and was *"not obligated to enter into a buyout"* but nevertheless demanded $8,615 for a release.

ECS thus knew that (1) nFusion no longer had enforceable rights to any post–July 14 receivables, and (2) any purported "assignment" of such rights was void under *U.C.C.* § 9-203(b). Despite that knowledge, ECS falsely represented to **King of Freight, LLC ("KOF")** that it was the lawful factor entitled to collect payment for Load #2179348. KOF, relying on those misrepresentations, remitted the $550 freight payment to ECS, believing it was complying with a valid Notice of Assignment.

B. Legal Analysis—Fraud and Conversion as a Matter of Law

1. **Fraudulent Misrepresentation.**

    A party commits fraud when it (1) makes a material misrepresentation, (2) knowing it is false or with reckless disregard for the truth, (3) intending that another rely upon it, and (4) causing injury by that reliance. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011).

    All four elements are satisfied:

    ◦ **Material Misrepresentation:** ECS claimed ownership of a $550 invoice that arose after nFusion's repudiation.

    ◦ **Knowledge of Falsity:** ECS knew it held no assignment under *U.C.C.* § 9-203(b)(1)–(3).

    ◦ **Intent to Induce Reliance:** ECS's correspondence to KOF and its August 8 "buyout" demand were designed to induce compliance and payment.

    ◦ **Reliance and Injury:** KOF relied by sending the $550 payment to ECS, and Plaintiff was deprived of those funds.

2. **Civil Conversion.**

    By accepting and retaining the $550 payment, ECS exercised wrongful dominion over property belonging to Plaintiff. The elements of conversion—(1) ownership by Plaintiff, (2) wrongful control

by Defendant, and (3) resulting injury—are all present. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). The rate confirmation shows that the $550 freight charge belonged solely to Plaintiff; ECS's self-directed collection was unauthorized and constitutes conversion.

**3. Unjust Enrichment.**

Texas law prohibits a party from retaining benefits to which it has no legal or equitable claim. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). ECS unjustly enriched itself by taking funds rightfully due to Plaintiff through deception and misuse of factoring documentation.

C. Fraud upon Both Parties and the Tribunal

ECS's deceit was twofold: it defrauded **King of Freight** by inducing payment under false pretenses, and it defrauded **Plaintiff** by converting proceeds of his labor and filing pleadings asserting fictitious lien rights. ECS then compounded the fraud by filing in court, through counsel **Lauren Nelson**, representations that it had "purchased" or "been assigned" the APSA—statements contradicted by the record and by the date of the King of Freight contract itself.

Such conduct constitutes **fraud upon the court**, as defined in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944): a party "sentiently set in motion some unconscionable scheme" to deceive both an adversary and the tribunal. Fraud on the court vitiates all related orders. *See Browning v. Prostok*, 165 S.W.3d 336, 347 (Tex. 2005).

D. Consequences for the Estate and Trustee's Duty

Because the fraudulent $550 collection by ECS is traceable, identifiable, and supported by primary documentary evidence, it remains **property of the estate** under 11 U.S.C. § 541(a)(1). The Trustee therefore has a statutory and fiduciary duty under 11 U.S.C. §§ 323(a), 704(a)(1)–(2) to pursue recovery of that converted property through turnover or bill of review proceedings. *See In re Marvel Ent. Grp.*, 140 F.3d 463, 474 (3d Cir. 1998) (trustee must act to recover and preserve estate assets).

Failure to prosecute such recovery would constitute abandonment of an asset and a breach of fiduciary duty under *Mosser v. Darrow*, 341 U.S. 267, 272 (1951).

E. Summary

| Fact | Legal Effect |
|---|---|
| ECS knew APSA terminated July 14 2023 | Knowledge of falsity |

| ECS claimed ownership of July 21 King of Freight invoice | Material misrepresentation |
|---|---|
| KOF paid ECS $550 in reliance | Reliance and injury |
| ECS retained payment | Conversion and unjust enrichment |
| ECS filed pleadings asserting ownership | Fraud upon the court |

Accordingly, the Court should declare that **ECS's $550 collection constitutes fraud, conversion, and unjust enrichment**, and order the **Chapter 7 Trustee to include these acts as core claims in the mandatory bill of review**, seeking recovery of the funds and vacatur of all judgments tainted by England's fraudulent representations.

## XIII. THE COMBINED BREACHES AND TORTIOUS INTERFERENCES OF NFUSION, GLOBALTRANZ, KING OF FREIGHT, AND ENGLAND CARRIER SERVICES DESTROYED ROLLIN' SMOKE AT THE ATTACHÉ—AND DAMAGES ARE GOVERNED BY TEXAS'S ONE SATISFACTION RULE

A. The Interconnected Chain of Breach and Interference

The evidence across Exhibits #17 through #40 demonstrates a continuous and interrelated sequence of contractual and tortious violations, each of which compounded the prior to culminate in the total collapse of Plaintiff's federally authorized motor carrier business, *Rollin' Smoke at the Attaché* (MC #1476454).

1. **nFusion Capital Finance, LLC – Breach and Repudiation (July 14, 2023).**

   nFusion's refusal to purchase or fuel-advance the *GlobalTranz Enterprises, LLC* load (#27264720) and others on July 14, 2023, constituted an **anticipatory breach** of the Account Purchase and Security Agreement ("APSA") and a **repudiation** of all factoring obligations. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 198 (Tex. 2004) (per curiam). This breach immediately deprived Plaintiff of operating capital, rendering him unable to fuel, deliver, or invoice new loads.

2. **GlobalTranz Enterprises, LLC – Breach of Contract (July 14, 2023).**

   Upon receiving notice of the dispute between nFusion and Plaintiff, GlobalTranz unilaterally withheld payment for Load #27264720, despite full performance and delivery. Its refusal to pay the carrier directly, and subsequent delay of over 90 days, violated the July 13, 2023 broker–

carrier agreement. *See Browne v. King*, 111 S.W.3d 660, 667 (Tex. App.—Houston [1st Dist.]
2003) (failure to pay for performed services constitutes breach).

3. **King of Freight, LLC – Breach of Contract (July 21, 2023).**

King of Freight executed a new rate confirmation (BOL #2179348) one week after nFusion's
repudiation, expressly contracting with Plaintiff for a $550 load. Despite full delivery on July 24,
King of Freight misdirected payment to England Carrier Services, knowing Plaintiff—not ECS—
was the carrier of record. This diversion constitutes breach of contract and conversion.

4. **England Carrier Services, LLC – Tortious Interference and Fraudulent Inducement.**

England, fully aware that nFusion had repudiated the APSA, **induced King of Freight to
breach** by falsely claiming that it, not Plaintiff, held the right to collect payment. England's
misrepresentation that it "acquired" nFusion's factoring rights was factually impossible under
*U.C.C.* § 9-203(b) and contractually false under APSA § 4(f). Such conduct meets the elements of
tortious interference:

(1) the existence of a contract,

(2) willful and intentional interference,

(3) proximate causation, and

(4) actual damage. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001).

5. **England Carrier Services, LLC – Tortious Interference with Economic Opportunity.**

Simultaneously, England obstructed Plaintiff's new financing relationship with **Gulf Coast Bank
& Trust Company** by refusing to release an invalid lien and conditioning release on payment of
a fictitious "buyout." This deliberate interference deprived Plaintiff of working capital, prevented
mitigation of damages, and extinguished his only means of continuing operation. *See Wal-Mart
Stores, Inc.*, 52 S.W.3d at 726 (interference with prospective relations actionable when
independently wrongful).

B. Combined Effect—Total Destruction of the Business

Each actor's misconduct directly flowed from and reinforced the other's. nFusion's breach triggered a
liquidity crisis; GlobalTranz and King of Freight's nonpayments deprived Plaintiff of cash flow; England's
fraudulent assertions prevented refinancing. Within two weeks, Plaintiff's equipment, drivers, and
contracts collapsed under fuel shortages and unpaid invoices.

This chain of causation satisfies the "but for" test for concurrent liability: but for the combined breaches and interferences, *Rollin' Smoke at the Attaché* would have continued profitable operations under its FMCSA authority. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 827 (Tex. 1997) (concurrent wrongful acts producing a single injury create joint and several liability).

C. Damages Governed by Texas's One Satisfaction Rule

Under the Texas **One Satisfaction Rule**, a plaintiff is entitled to only one recovery for a single injury, even if multiple defendants committed different acts producing that injury. *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 107 (Tex. 2018); *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991).

The rule applies "when multiple theories of liability arise from a single, indivisible injury." *El Paso Nat. Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 310 (Tex. 1999).

Here, the indivisible injury is the complete destruction of Rollin' Smoke at the Attaché, including:

1.  loss of all active brokerage and carrier contracts,

2.  loss of MC authority revenue stream,

3.  loss of creditworthiness and fuel-line access,

4.  repossession of equipment, and

5.  forced bankruptcy filing.

Although each defendant's misconduct arose from distinct transactions (factoring, brokerage, payment diversion, interference), they jointly culminated in a single business death. Therefore, damages must be measured as one aggregate loss—the enterprise value and net income of Rollin' Smoke—subject to one satisfaction.

*See Sky View*, 555 S.W.3d at 107 ("A plaintiff is entitled to one recovery for a single injury, even if based on multiple theories of liability."); *Stewart Title*, 822 S.W.2d at 7 ("When defendants' acts result in one injury, there can be but one recovery.").

D. Judicial Consequence—Mandatory Recognition of the Unified Injury

Because the injury is unitary, the Trustee's bill of review must treat all state-level judgments and claims involving nFusion, England, GlobalTranz, and King of Freight as facets of one cause of action—breach, interference, and fraud culminating in a single, unrecoverable loss. The bankruptcy court, sitting in

equity, must ensure that recovery proceeds under one satisfaction to the estate and is not fragmented or diluted among separate cases.

*See Tex. Civ. Prac. & Rem. Code* § 31.004(a) (judgment satisfaction extinguishes claim to further recovery for the same injury); *Dresser Indus., Inc. v. Lee*, 880 S.W.2d 750, 754 (Tex. 1993) (rule applies "whenever multiple theories or defendants seek redress for one wrong").

E. Summary

| Defendant | Wrongful Act | Legal Theory | Causal Role |
|-----------|--------------|--------------|-------------|
| nFusion Capital Finance | Refused to fund or purchase invoices | Breach/Repudiation | Triggered collapse of factoring relationship |
| GlobalTranz Enterprises | Withheld payment for completed load | Breach of Contract | Denied cash flow, compounded insolvency |
| King of Freight | Paid England instead of carrier | Breach of Contract / Conversion | Diverted funds, deprived liquidity |
| England Carrier Services | Fraudulent lien assertion & interference | Tortious Interference / Fraud | Blocked refinancing, induced breach |
| England Carrier Services | Obstructed Gulf Coast Bank factoring | Tortious Interference with Economic Opportunity | Prevented mitigation of damages |

Collectively, these acts destroyed Plaintiff's trucking business, creating a single, indivisible injury for which the estate is entitled to one complete satisfaction under Texas law.


XIV. DAMAGES CLASSIFICATION AND LIMITATIONS BY CLAIM CATEGORY

Texas law and federal common law distinguish between compensatory, consequential, exemplary, and statutory-enhanced damages depending on the theory of liability. Each claim raised in this record— breach, interference, fraud, and conversion—carries a distinct remedial framework, governed by *Tex. Civ. Prac. & Rem. Code* ch. 41 and by specialized statutes such as the Texas Deceptive Trade Practices Act ("DTPA") and 18 U.S.C. § 1964(c) (RICO).

A. Breach of Contract — Compensatory and Consequential Damages Only

1. **Available Damages.**

    Texas permits recovery of:

- **Direct or general damages**—the value of the promised performance.

  *See Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex. 1981).

- **Consequential damages**—losses naturally foreseeable from the breach, such as lost profits or equipment repossession, if proved with reasonable certainty.

  *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997).

**2.** **Unavailable Damages.**

Punitive or exemplary damages are **not recoverable** for breach of contract absent an independent tort.

*Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).

Emotional distress and punitive awards are barred under *Tex. Civ. Prac. & Rem. Code* § 41.004(a).

**3.** **Caps.**

No statutory cap applies to pure contract damages, but foreseeability and mitigation limit the measure.

B. Tortious Interference with Contract or Economic Relations — Compensatory and Exemplary Damages

**1.** **Compensatory.**

The plaintiff may recover both direct losses (lost payments) and consequential losses (lost future business) caused by the interference.

*See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001).

**2.** **Exemplary (Punitive).**

Because interference is an intentional tort, exemplary damages are available upon proof of *malice, fraud, or gross negligence.*

*Tex. Civ. Prac. & Rem. Code* § 41.003(a)(2)–(3); *Sturges*, 52 S.W.3d at 726.

**3.** **Caps.**

Chapter 41 limits exemplary damages to the greater of:

- **(a)** two times the amount of economic damages + up to $750,000 for noneconomic damages, **or**

- ○ **(b)** $200,000.

Tex. Civ. Prac. & Rem. Code § 41.008(b).

C. Fraud, Fraudulent Inducement, and Fraud upon the Court — Compensatory, Exemplary, and Equitable Relief

1. **Compensatory.**

Actual damages include both out-of-pocket and benefit-of-the-bargain measures.

Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 49 (Tex. 1998).

2. **Exemplary / Punitive.**

Fraud automatically qualifies for exemplary damages upon clear and convincing proof.

*Tex. Civ. Prac. & Rem. Code* § 41.003(a)(1); *Presidio*, 960 S.W.2d at 47–48.

3. **Equitable Remedies.**

Fraud upon the court authorizes vacatur, bill of review, and sanctions without monetary cap.

Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944).

4. **Caps.**

Exemplary damages for common-law fraud remain subject to Chapter 41's cap unless the fraud also violates a statute with treble provisions (e.g., DTPA or RICO).

D. Conversion — Compensatory and Exemplary Damages

1. **Compensatory.**

The measure equals the fair market value of the property at the time of conversion plus interest.

*Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971).

2. **Exemplary.**

If the conversion was willful or malicious, punitive damages may be awarded under *Tex. Civ. Prac. & Rem. Code* § 41.003(a)(3).

*See Apple Imports, Inc. v. Koole*, 945 S.W.2d 895, 899 (Tex. App.—Austin 1997, writ denied).

3. **Caps.**

Subject to the same Chapter 41 multiplier limits as interference.

E. Civil RICO (18 U.S.C. § 1964(c)) — Treble Damages and Attorney's Fees

1. **Treble Damages.**

RICO provides an independent federal remedy for injury to business or property "by reason of" a racketeering violation. It mandates **automatic trebling** of compensatory damages and **reasonable attorney's fees and costs**.

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481 (1985); 18 U.S.C. § 1964(c).

2. **No Cap.**

The treble multiplier is statutory, not punitive, and therefore exempt from state-law damage caps.

*See Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 151 (1987).

F. Exemplary-Damage Procedures and Constitutional Limitations

1. **Standard of Proof.**

All punitive or exemplary awards in Texas require *clear and convincing evidence* of malice, fraud, or gross negligence. § 41.003(a).

2. **Ratio Limits (Due Process).**

Under *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), punitive damages exceeding a **single-digit ratio** (9:1) to compensatory damages generally violate the Fourteenth Amendment's Due Process Clause.

3. **Segregation of Recoveries.**

Texas courts require segregation of contract and tort damages to prevent double recovery under the one satisfaction rule. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 (Tex. 2006).

G. Summary Table of Recoverable Damage Classes

| Claim | Compensatory | Consequential | Exemplary / Punitive | Treble | Statutory / Attorney's | Caps / Limitations |
|---|---|---|---|---|---|---|
| **Breach of Contract** | ✔ | ✔ | ✘ | ✘ | ✘ | Foreseeability / |
| **Tortious Interference** | ✔ | ✔ | ✔ (malice/ fraud) | ✘ | ✘ | Ch. 41: 2× economic + $750k |
| **Fraud / Fraudulent Inducement** | ✔ | ✔ | ✔ (automatic) | ✘ (except | ✔ (fees discretiona | Ch. 41 cap unless under federal statute |
| **Conversion** | ✔ | ✔ | ✔ (willful) | ✘ | ✘ | Ch. 41 cap applies |

| **Civil RICO (18 U.S.C. § 1964)** | ✔ | ✔ | ✘ (automatic | ✔ (manda | ✔ (fees & costs) | No state-law cap; federal control |
|---|---|---|---|---|---|---|

H. Integrative Principle for the Trustee's Bill of Review

For purposes of the Trustee's forthcoming petition for bill of review, the **estate's recoverable damages** must be structured as:

1. **Baseline compensatory damages** for breach and interference (lost profits, lost assets, destroyed business value);

2. **Exemplary enhancements** for willful tortious conduct by England and King of Freight;

3. **Treble recovery** for RICO predicate acts (fraud, mail/wire communications, conspiracy); and

4. **One satisfaction limit** ensuring a single total recovery, not multiple overlapping awards.

This alignment preserves statutory compliance, constitutional proportionality, and bankruptcy-court equity in distributing proceeds to creditors under 11 U.S.C. § 726(a).


XV. COMPUTATION OF DAMAGES BASED ON LOST EARNING POTENTIAL—$952,084.20 AS THE COMPENSATORY BASELINE

A. Legal Standard—Lost Earning Potential as the Measure of Compensatory Damages

Texas law holds that when a business is destroyed or rendered inoperable by a defendant's breach or tortious conduct, the proper measure of **compensatory damages** is the *lost earning potential of the business as a going concern*, not merely the value of specific contracts.

*See Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex. 1981); *Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex. 2002); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997).

Damages are designed "to place the plaintiff in the same economic position as if the contract had been fully performed." *Id.* When a plaintiff's business is entirely destroyed, recovery may be based on the enterprise's established earning capacity. *See Sw. Battery Corp. v. Owen*, 115 S.W.2d 1097, 1099 (Tex. 1938) (lost profits recoverable if reasonably certain).

B. Derivation of Daily Earning Rate

The week of July 10—14, 2023, immediately preceding nFusion Capital Finance, LLC's repudiation, contains verifiable earnings evidence from five contemporaneous load confirmations:

| Load / Broker | Bill of Lading No. | Gross Freight Rate |
|---|---|---|
| Truck Connection | #36205 | $1,300 |
| Dunamis LLC | #13299734 | $1,100 |
| Trident Transport LLC | #0538583 | $1,047 |
| Priority 1, Inc. | #6010… | $1,700 |
| GlobalTranz Enterprises LLC | #27264720 | $500 |
| **Total** | | **$5,647** |

Dividing the total by the five operational days in that week yields an average **daily earning potential of $1,129.40**: per day

$5,647÷5=$1,129.40 per day

C. Duration of the Loss Period

The enterprise ceased functioning on **July 14, 2023**, and has remained inoperative through **November 3, 2025**, a period of **843 calendar days**. During this span, the Plaintiff has been deprived of all commercial hauling revenue under MC#1476454.

D. Total Compensatory Damages—Lost Earnings Potential

Applying the established daily rate to the period of deprivation: $1,129.40×843=$952,084.20

This figure represents the legally recognized **compensatory damages** for the destruction of *Rollin' Smoke at the Attaché*, exclusive of exemplary or statutory enhancements.

Under *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Rep. 145 (1854), and its Texas progeny, these damages are recoverable as the **natural and probable result** of the defendants' breaches and tortious interference. The lost income from a destroyed business is inherently foreseeable. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992).

E. Use of the Compensatory Base for Enhanced Damages

The $952,084.20 figure constitutes the "economic damages" base for all further statutory multipliers and caps:

| Damage Type | Statutory / Common-Law Authority | Formula Applied to $952,084.20 |
|---|---|---|
| **Exemplary (Fraud / Malice)** | *Tex. Civ. Prac. & Rem. Code* § 41.008(b) | ≤ 2× economic + $750,000 = ≤ **$2,654,168.40** |

| Treble (Civil RICO) | 18 U.S.C. § 1964(c) | 3× compensatory = **$2,856,252.60** |
| Conversion (King of Freight / England) | *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444 (Tex. 1971) | + $550 + interest ≈ **$583** |
| Prejudgment Interest | *Tex. Fin. Code* § 304.003, § 304.104 | 6% per annum from 7/14/23 to judgment |

F. Black-Letter Integration Under the One Satisfaction Rule

The **One Satisfaction Rule**, as reaffirmed in *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 107 (Tex. 2018), dictates that a plaintiff suffering a single, indivisible injury from multiple defendants "is entitled to but one recovery for that injury."

Thus:

1. **$952,084.20** is the baseline compensatory injury.

2. Defendants nFusion, GlobalTranz, King of Freight, and England are **jointly and severally liable** for the full amount. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991).

3. The estate may elect either:

    ◦ (a) Compensatory + Exemplary under Texas Ch. 41, *or*

    ◦ (b) **Treble Recovery** under 18 U.S.C. § 1964(c),

      but not both, to prevent double recovery. *Dresser Indus., Inc. v. Lee*, 880 S.W.2d 750, 754 (Tex. 1993).

4. All related interest and attorney's fees follow the elected remedy. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481 (1985).

G. Judicial Application

Accordingly, the bankruptcy court—when compelling the Chapter 7 Trustee to file and prosecute the bill of review—should adopt **$952,084.20 as the economic injury benchmark**, applying statutory enhancement as follows:

- Base Compensatory: $952,084.20

- **Option 1 (Exemplary):** ≤ $2,654,168.40 (subject to Tex. Civ. Prac. & Rem. Code § 41.008)

- **Option 2 (RICO Treble):** $2,856,252.60 (mandatory under 18 U.S.C. § 1964(c))

- **Plus:** Prejudgment interest from July 14 2023 to entry of judgment

- **Plus:** Attorney's fees and costs as authorized by § 1964(c) and Fed. R. Bankr. P. 7054

H. Conclusion

Under settled Texas and federal law, **$952,084.20** constitutes the recoverable compensatory measure of lost earnings capacity resulting from the defendants' concerted breaches and interference, and it forms the **legal basis for all derivative categories of damages**—exemplary, treble, and equitable—recoverable in the Trustee's bill of review and subsequent adjudication.

## XVI. COMPUTATION OF DAMAGES BASED ON LOST EARNING POTENTIAL—$952,084.20 AS THE COMPENSATORY BASELINE

A. Legal Standard—Lost Earning Potential as the Measure of Compensatory Damages

Texas law holds that when a business is destroyed or rendered inoperable by a defendant's breach or tortious conduct, the proper measure of **compensatory damages** is the *lost earning potential of the business as a going concern*, not merely the value of specific contracts.

See *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex. 1981); *Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex. 2002); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997).

Damages are designed "to place the plaintiff in the same economic position as if the contract had been fully performed." *Id.* When a plaintiff's business is entirely destroyed, recovery may be based on the enterprise's established earning capacity. *See Sw. Battery Corp. v. Owen*, 115 S.W.2d 1097, 1099 (Tex. 1938) (lost profits recoverable if reasonably certain).

B. Derivation of Daily Earning Rate

The week of July 10–14, 2023, immediately preceding nFusion Capital Finance, LLC's repudiation, contains verifiable earnings evidence from five contemporaneous load confirmations:

| Load / Broker | Bill of Lading No. | Gross Freight Rate |
|---|---|---|
| Truck Connection | #36205 | $1,300 |
| Dunamis LLC | #13299734 | $1,100 |
| Trident Transport LLC | #0538583 | $1,047 |
| Priority 1, Inc. | #6010… | $1,700 |
| GlobalTranz Enterprises LLC | #27264720 | $500 |
| **Total** | | **$5,647** |

Dividing the total by the five operational days in that week yields an average **daily earning potential of $1,129.40**:

$5,647 \div 5 = \$1,129.40$ per day

C. Duration of the Loss Period

The enterprise ceased functioning on **July 14, 2023**, and has remained inoperative through **November 3, 2025**, a period of **843 calendar days**. During this span, the Plaintiff has been deprived of all commercial hauling revenue under MC#1476454.

D. Total Compensatory Damages—Lost Earnings Potential

Applying the established daily rate to the period of deprivation:

$1,129.40 \times 843 = \$952,084.20$

This figure represents the legally recognized **compensatory damages** for the destruction of *Rollin' Smoke at the Attaché*, exclusive of exemplary or statutory enhancements.

Under *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Rep. 145 (1854), and its Texas progeny, these damages are recoverable as the **natural and probable result** of the defendants' breaches and tortious interference. The lost income from a destroyed business is inherently foreseeable. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992).

E. Use of the Compensatory Base for Enhanced Damages

The $952,084.20 figure constitutes the "economic damages" base for all further statutory multipliers and caps:

| Damage Type | Statutory / Common-Law Authority | Formula Applied to $952,084.20 |
|---|---|---|
| **Exemplary (Fraud / Malice)** | *Tex. Civ. Prac. & Rem. Code* § 41.008(b) | ≤ 2× economic + $750,000 = ≤ **$2,654,168.40** |
| **Treble (Civil RICO)** | 18 U.S.C. § 1964(c) | 3× compensatory = $2,856,252.60 |
| **Conversion (King of Freight / England)** | *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444 (Tex. 1971) | + $550 + interest ≈ **$583** |
| **Prejudgment Interest** | *Tex. Fin. Code* § 304.003, § 304.104 | 6% per annum from 7/14/23 until judgment |

F. Black-Letter Integration Under the One Satisfaction Rule

The **One Satisfaction Rule**, as reaffirmed in *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 107 (Tex. 2018), dictates that a plaintiff suffering a single, indivisible injury from multiple defendants "is

entitled to but one recovery for that injury."

Thus:

1. **$952,084.20** is the baseline compensatory injury.

2. Defendants nFusion, GlobalTranz, King of Freight, and England are **jointly and severally liable** for the full amount. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991).

3. The estate may elect either:

   ◦ (a) Compensatory + Exemplary under Texas Ch. 41, *or*

   ◦ (b) **Treble Recovery** under 18 U.S.C. § 1964(c),

     but not both, to prevent double recovery. *Dresser Indus., Inc. v. Lee*, 880 S.W.2d 750, 754 (Tex. 1993).

4. All related interest and attorney's fees follow the elected remedy. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481 (1985).

G. Judicial Application

Accordingly, the bankruptcy court—when compelling the Chapter 7 Trustee to file and prosecute the bill of review—should adopt **$952,084.20 as the economic injury benchmark**, applying statutory enhancement as follows:

- Base Compensatory: $952,084.20

- **Option 1 (Exemplary):** ≤ $2,654,168.40 (subject to Tex. Civ. Prac. & Rem. Code § 41.008)

- **Option 2 (RICO Treble):** $2,856,252.60 (mandatory under 18 U.S.C. § 1964(c))

- **Plus:** Prejudgment interest from July 14 2023 to entry of judgment

- **Plus:** Attorney's fees and costs as authorized by § 1964(c) and Fed. R. Bankr. P. 7054

H. Conclusion

Under settled Texas and federal law, **$952,084.20** constitutes the recoverable compensatory measure of lost earnings capacity resulting from the defendants' concerted breaches and interference, and it forms the **legal basis for all derivative categories of damages**—exemplary, treble, and equitable—recoverable in the Trustee's bill of review and subsequent adjudication.

XVII. COMPREHENSIVE DAMAGES FRAMEWORK AND FINDING OF MALICE AGAINST ENGLAND

CARRIER SERVICES, LLC

A. Compensatory Baseline—Lost Earning Potential ($952,084.20)

The baseline compensatory damages for the destruction of *Rollin' Smoke at the Attaché* remain

**$952,084.20**, calculated from a daily earning potential of $1,129.40 across 843 days of non-operation

between **July 14, 2023** and **November 3, 2025.**

This measure is authorized under *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex. 1981), and

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997), as the appropriate value

to place the plaintiff in the position he would have occupied but for the defendants' collective breaches

and tortious conduct.


B. England Carrier Services, LLC's Malicious and Fraudulent Conduct

1. Statutory Definition of "Malice"

Under *Tex. Civ. Prac. & Rem. Code* § 41.001(7), "malice" means "a specific intent by the defendant to

cause substantial injury or harm to the claimant."

A showing of willful interference or conscious disregard for known rights satisfies this definition. *See*

*Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 618 (Tex. App.—Waco 2000, pet. denied).

2. England's Knowledge of Lack of Rights

By its own admission and correspondence, England Carrier Services ("ECS") knew that:

- **nFusion Capital Finance, LLC** had **repudiated** the Account Purchase and Security
  Agreement ("APSA") on **July 14, 2023**;

- No amendment or assignment under *U.C.C.* § 9-514 had been executed; and

- ECS therefore lacked any lawful lien, collateral, or right to collect Plaintiff's receivables.

Despite that knowledge, ECS **willfully misrepresented** that it had "acquired nFusion's rights" and

**directed third parties**—including King of Freight, LLC and Gulf Coast Bank & Trust—to treat it as the

rightful factor.

This conduct constitutes **intentional interference with known contractual rights**, done **with**

**actual awareness** that those rights did not exist.

3. Intentional Interference and Conscious Disregard

Rather than simply disengage when its lack of entitlement was clear, ECS **chose to interfere**.

It **blocked Gulf Coast Bank & Trust** from extending Plaintiff new financing by refusing to release an invalid UCC filing and demanding a fictitious "buyout."

Simultaneously, it **induced King of Freight, LLC** to breach its July 21, 2023 carrier agreement by paying ECS instead of the carrier of record.

These acts were **deliberate and coercive**, executed to force Plaintiff into an unlawful factoring arrangement and deprive him of his independent commercial relationships.

4. Legal Finding of Malice and Fraud

Texas courts consistently find **malice** where a defendant acts with knowledge that its conduct is wrongful yet proceeds to injure another's economic interests.

*See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001) (intentional interference is willful and malicious if done without legal justification); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47–48 (Tex. 1998) (fraudulent inducement supports exemplary damages); *Burleson State Bank*, 27 S.W.3d at 618 (malice inferred where defendant knew its lien was invalid yet asserted it to harm claimant).

Here, ECS's refusal to release its fabricated lien and its calculated obstruction of the Gulf Coast financing opportunity show a **specific intent to cause substantial harm**—precisely what § 41.001(7) defines as malice.

Its conduct was neither negligent nor mistaken; it was **intentional economic sabotage** carried out to coerce and control the Plaintiff's business.


C. Exemplary and Punitive Damages Authorized by Chapter 41

Because malice and fraud are clearly established, the Plaintiff (and thus the bankruptcy estate) is entitled to **exemplary damages** under *Tex. Civ. Prac. & Rem. Code* § 41.003(a)(1)–(3).

Under § 41.008(b), the statutory ceiling is the greater of:


$(2 \times \$952,084.20) + \$750,000 = \$2,654,168.40$,

or \$200,000. Accordingly, the permissible exemplary award equals **\$2,654,168.40**.

This ratio—approximately 2.78:1 relative to compensatory damages—is constitutionally sound under *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003), which endorses single-digit ratios between punitive and compensatory awards.

D. Treble Damages Under Federal RICO, 18 U.S.C. § 1964(c)

The same fraudulent and coercive acts that constitute malice also meet the elements of racketeering activity under 18 U.S.C. § 1962(c)–(d).

Under § 1964(c), a successful civil RICO claimant "shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

Applying the statutory treble multiplier:

$$3\times\$952,084.20=\$2,856,252.60.$$

Trebling is mandatory and not punitive, and therefore exempt from the Texas Chapter 41 caps. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481 (1985).

E. Conversion and Prejudgment Interest

ECS's diversion of King of Freight's $550 payment constitutes conversion.

Under *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971), damages equal the property's value plus prejudgment interest at 6% per annum.

Applying *Tex. Fin. Code* §§ 304.003, 304.104:

$$\$550\times(1+0.06\times2.3 \text{ years})=\$583.$$

This merges into the compensatory total under the *one satisfaction rule*.

F. Consolidated Damages Framework

| Class | Legal Basis | Calculation | Result |
|---|---|---|---|
| **Compensatory / Economic** | *Mead, Arthur Andersen* | $1,129.40 × 843 days | **$952,084.20** |
| **Exemplary (Malice / Fraud)** | *Tex. Civ. Prac. & Rem. Code* § 41.008(b) | 2× economic + $750k | **$2,654,168.40** |

| Treble (RICO) | 18 U.S.C. § 1964(c) | 3× economic | **$2,856,252.60** |
|---|---|---|---|
| Conversion | *Waisath*, § 304.003 | $550 + interest | **≈ $583** |
| Prejudgment Interest | *Tex. Fin. Code* § 304.104 | 6% p.a. × 2.3 yrs | **≈ $131,000** |
| Attorney's Fees & Costs | 18 U.S.C. § 1964(c); Fed. R. Bankr. P. 7054 | Mandatory under RICO | TBD |

G. Legal Effect Under the One Satisfaction Rule

Because all wrongful acts culminated in the singular injury—the destruction of *Rollin' Smoke at the Attaché*—the *one satisfaction rule* applies. *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 107 (Tex. 2018).

All defendants—nFusion, GlobalTranz, King of Freight, and England—are **jointly and severally liable** for the unified recovery. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991).

The Trustee, on behalf of the estate, may elect between:

1. **Compensatory + Exemplary** (≤ $2,654,168.40 + interest + fees), or

2. **Treble RICO Recovery** ($2,856,252.60 + interest + fees),

but not both, to prevent double recovery. *Dresser Indus., Inc. v. Lee*, 880 S.W.2d 750, 754 (Tex. 1993).


H. Legal Conclusion

The evidentiary record proves that **England Carrier Services, LLC acted with malice and fraud**, knowingly asserting nonexistent lien rights and obstructing legitimate business relationships.

ECS's deliberate interference and economic coercion satisfy the statutory and constitutional predicates for exemplary damages.

Accordingly:

1. **$952,084.20** constitutes the compensatory base;

2. **$2,654,168.40** represents the lawful Texas exemplary ceiling;

3. **$2,856,252.60** is the mandatory treble recovery under 18 U.S.C. § 1964(c); and

4. All defendants are jointly and severally liable under the *one satisfaction rule.*

### XVIII. EXPANDED CONSEQUENTIAL DAMAGES AND PROPERTY LOSSES

A. Overview and Legal Framework

Under both Texas and federal law, consequential and special damages are recoverable where they are the natural, probable, and foreseeable result of the defendants' breaches or tortious interference. *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Rep. 145 (1854); *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 687 (Tex. 1981).

Because the wrongful acts of nFusion Capital Finance, LLC, England Carrier Services, LLC, GlobalTranz Enterprises, LLC, and King of Freight, LLC collectively resulted in the destruction of Plaintiff's trucking enterprise (*MC #1476454 – Rollin' Smoke at the Attaché*), all consequential losses naturally flow from that single chain of misconduct.

These categories expand the economic baseline of **$952,084.20** in lost earnings to reflect the **total destruction of business capacity**, including property, regulatory, and credit injuries—all compensable under Texas law and 18 U.S.C. § 1964(c).

B. Tangible Property Losses — Trucks, Trailers, Tools, and Equipment

The record demonstrates that the repudiation by nFusion and interference by England directly caused the repossession and liquidation of the company's **truck, trailers, and operational tools**.

Texas law expressly authorizes recovery of such property losses at **fair market value** on the date of destruction or loss.

*Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992); *Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex. 2002).

Because this property represented the means of generating the lost daily earning rate, its fair market value is not duplicative but **integrated into the compensatory base**.

The loss of equipment and vehicles further supports an **exemplary enhancement**, as it was the foreseeable result of England's malicious obstruction of Plaintiff's ability to obtain alternative financing.

C. Loss of Chapter 13 Bankruptcy Protection

The same interference caused the involuntary collapse of the Plaintiff's **Chapter 13 reorganization**, which had previously protected both business and personal assets.

Courts recognize that the **loss of bankruptcy protection**—when caused by creditor misconduct—constitutes a compensable injury to both the estate and the debtor.

*In re Miller*, 262 B.R. 499, 503 (B.A.P. 9th Cir. 2001); *In re Marvel Ent. Grp.*, 140 F.3d 463, 474 (3d Cir. 1998).

By forcing a premature conversion to Chapter 7, the defendants' actions stripped Plaintiff of statutory reorganization rights, resulting in loss of exempt property and administrative costs.

This is properly recoverable as **consequential economic damage** under *Mead* and *Hadley*, since the interference with financing and contracts foreseeably undermined bankruptcy feasibility.


D. Loss of FMCSA Safety Rating and Matured Operating Authority

The **Federal Motor Carrier Safety Administration authority and safety rating** are recognized property rights conferring measurable economic value.

Destruction of a business's regulatory status and goodwill constitutes recoverable special damages. *Sw. Battery Corp. v. Owen*, 115 S.W.2d 1097, 1099 (Tex. 1938); *White v. Sw. Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex. 1983).

Because England's and nFusion's actions prevented ongoing performance and compliance filings, Plaintiff's matured FMCSA authority became dormant, eliminating his ability to operate under an established USDOT safety history.

The **loss of that authority** mirrors the loss of business goodwill and thus forms part of the total compensatory base. It also independently justifies **exemplary damages**, as England's conduct was a knowing obstruction of a licensed carrier's federal operating rights.


E. Loss of Personal and Business Creditworthiness

The fraudulent assertions of assignment and the resulting judgments caused severe **credit impairment**, both personally and corporately.

Texas law treats the loss of credit reputation as an actionable form of economic injury in fraud and tortious-interference cases. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 1998); *El-Koury v. Hammer*, 198 S.W.3d 819, 829 (Tex. App.—Dallas 2006, pet. denied).

Credit harm is **foreseeable and direct**, given that the factoring relationship and subsequent fraudulent UCC filings were designed to deprive Plaintiff of credit access.

The measure of damages is the **pecuniary value of lost borrowing capacity and increased financing costs**, folded into the compensatory base and eligible for exemplary enhancement where the fraud was intentional.

F. Integrated Valuation and Unified Injury Doctrine

All the foregoing categories—equipment, legal protection, authority, and credit—arose from the **same nucleus of wrongful conduct**:

nFusion's repudiation, England's fraudulent lien assertion, King of Freight's induced breach, and GlobalTranz's nonpayment.

Under the *one satisfaction rule*, they merge into a **single unified economic injury**. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991); *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 107 (Tex. 2018).

Accordingly, the bankruptcy estate may claim recovery for the **aggregate compensatory value**, subject to Chapter 41 exemplary caps or RICO trebling, as follows:

| Component | Legal Nature | Integration | Status |
|---|---|---|---|
| Trucks, Trailers, Tools | Tangible Property Loss | Included in Economic Damages | Compensable |
| Loss of Chapter 13 Protection | Legal/Procedural Loss | Consequential | Compensable |
| Loss of FMCSA Authority | Regulatory Goodwill | Consequential | Compensable + Exemplary |
| Loss of Credit | Financial Reputation | Consequential | Compensable + Exemplary |

All such components are measured through the same economic-damages base of **$952,084.20**, with the possibility of additional proof of property FMV to further enlarge the base prior to exemplary or treble application.

G. Application to Multipliers and Total Liability Exposure

Because these consequential losses reinforce the willful and malicious character of England's and nFusion's actions, they are **qualifying predicates** for:

- **Exemplary Damages** under *Tex. Civ. Prac. & Rem. Code* § 41.003(a)(1)–(3), capped at **$2,654,168.40** (§ 41.008(b));

- **Treble Damages** under **18 U.S.C. § 1964(c)** totaling **$2,856,252.60**, mandatory and uncapped; and

- Prejudgment Interest and Attorney's Fees under *Tex. Fin. Code* § 304.104 and § 1964(c), respectively.

Each defendant is **jointly and severally liable** for the full amount, as all participated in the conduct that destroyed the Plaintiff's enterprise and economic protections. *Stewart Title*, 822 S.W.2d at 7.


## H. Legal Conclusion

As a matter of law, the additional categories of loss—property, bankruptcy protection, regulatory authority, and credit standing—constitute **foreseeable, direct, and recoverable economic damages**.

They magnify the compensatory base for the bankruptcy estate's recovery and strengthen the predicates for **exemplary, punitive, and treble** damages under both Texas and federal law.

The Trustee is therefore required, under **11 U.S.C. § 704(a)(1)** and **Fed. R. Bankr. P. 6009**, to prosecute the bill of review and recover the full economic, exemplary, and treble damages authorized herein.


## XIX. THE TRUSTEE IS BOUND BY THE RECORD HE INHERITS

### A. Statutory Rule: Trustee as Successor, Not Eraser

Upon substitution, a Chapter 7 trustee **succeeds to, but does not supplant**, the debtor's existing claims, pleadings, and evidence. Under **11 U.S.C. § 323(a)**, the trustee "is the representative of the estate," and under **§ 323(b)**, he "may sue or be sued." That representation, however, is **derivative and custodial**, not creative or discretionary. The trustee "steps into the shoes of the debtor" and takes the

litigation "subject to the same rights, defenses, and factual posture existing at substitution." *In re Moore*, 608 F.3d 253, 261 (5th Cir. 2010); *In re Martin*, 91 F.3d 389, 394 (3d Cir. 1996).

A trustee "may prosecute or defend any pending action... in behalf of the estate," **Fed. R. Bankr. P. 6009**, but may not withdraw or repudiate the debtor's prior filings unless authorized by the court after notice and a hearing under **Fed. R. Bankr. P. 9019** and **Fed. R. Civ. P. 15(a)(2)** (via Rule 7015). These procedural safeguards exist because **pleadings, exhibits, and evidentiary admissions are themselves property of the estate** under **11 U.S.C. § 541(a)(1)** and cannot be destroyed or altered without court approval. *In re Beachport Ent., Inc.*, 396 F.3d 1083, 1089 (9th Cir. 2005).

Accordingly, once the Trustee substituted into this Bill of Review proceeding, he became **bound by every fact, exhibit, and judicial admission** already pleaded by the Debtor. He cannot lawfully withdraw evidence, re-frame the cause of action, or disclaim the verified admissions that form the very value of the estate's claim.


B. Equitable Principle: A Fiduciary Cannot Contradict the Estate's Own Record

A trustee's **duty of loyalty and candor** prohibits him from taking inconsistent positions that would reduce or nullify the estate's recovery. *Mosser v. Darrow*, 341 U.S. 267, 272 (1951) ("A trustee must be held personally liable for willful and deliberate breaches of fiduciary duty."); *In re Consol. Indus. Corp.*, 330 B.R. 712, 715 (Bankr. N.D. Ind. 2005) ("A trustee acts ultra vires when abandoning or compromising claims without benefit to the estate.").

Thus, having substituted into the litigation, the Trustee is **judicially estopped** from repudiating the very pleadings that constitute the estate's property. Any attempt to erase or contradict them would not merely alter litigation strategy—it would constitute a **fraud upon the court** and a **breach of 11 U.S.C. § 704(a)(1)**, which mandates that the trustee "collect and reduce to money the property of the estate."


C. The Original Petition for Bill of Review Strategically Preserved the Record

Plaintiff deliberately filed the **Original Petition for Bill of Review** to create an evidentiary framework that would survive trustee substitution. Every exhibit, verified admission, and certified judgment incorporated into that petition represents a *locked factual record* that the Trustee now inherits and must prosecute in full.

That pleading establishes that the underlying state-court judgments were procured through litigation fraud by **nFusion Capital Finance, LLC, GlobalTranz Enterprises, LLC, King of Freight, LLC, and England Carrier Services, LLC.** By substituting, the Trustee now stands in the position of proving or discrediting those facts—but he cannot alter or withdraw them. His only lawful options are:

1. To prosecute the Bill of Review to judgment for the benefit of creditors, or

2. To file a motion for abandonment or compromise under **Rule 9019**, supported by a finding that non-prosecution benefits the estate.

Absent such a showing, any withdrawal of pleadings or evidence is void and sanctionable. *See In re Kaiser Steel Corp.*, 911 F.2d 380, 392 (10th Cir. 1990) (trustee's discretion ends where self-interest begins).

### D. Sabotage Through Non-Prosecution Is No Longer Possible

By operation of law, the Trustee's prior pattern of neglect and sabotage in other adversary proceedings is **legally foreclosed** in this Bill of Review. Having assumed Plaintiff's role, the Trustee must now either (1) prosecute the established record, thereby proving the wrongdoing of the same adversary defendants he has previously shielded, or (2) confess through inaction that his loyalties lie with those wrongdoers rather than with the bankruptcy estate.

Either outcome exposes the conflict of interest that this Court has long been asked to adjudicate: if the Trustee proceeds, he vindicates the estate; if he refuses, he demonstrates his complicity. Under both **Rule 6009** and **§ 704(a)(1)**, he cannot remain passive. *In re Hancock*, 137 B.R. 835, 846 (Bankr. N.D. Okla. 1992) (court may compel trustee to prosecute or re-vest claim in debtor where trustee refuses to act).

### E. Legal Conclusion

Once substituted, the Chapter 7 Trustee is **bound by the record he inherits**. The verified Petition for Bill of Review, together with its evidentiary exhibits and judicial admissions, now constitutes conclusive estate property. The Trustee may not withdraw, strike, or contradict those materials without court authorization and a showing that doing so benefits the estate. Any contrary conduct would breach **11**

U.S.C. § 704(a)(1), violate **Fed. R. Bankr. P. 6009**, and constitute **fraud upon the court** within

the meaning of *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944).

Accordingly, the Trustee is compelled to prosecute the Bill of Review on the inherited record, and the

Court should so declare.

## XX. DEFENDANTS' "DE MINIMIS" ARGUMENT FAILS AS A MATTER OF LAW: FRAUD AND INTERFERENCE ARE NOT EXCUSED BY NOMINAL CONTRACT VALUE

A. The Law Does Not Tolerate a "So What" Defense to Fraud or Tortious Interference

The position advanced by Trustee Vida, attorney Sather, and the adversary defendants—that even if

liability exists, "Plaintiff can't claim millions of dollars over a $550 freight bill"—is a textbook example of

an impermissible *de minimis* argument.

Courts uniformly reject the notion that the **small face value of a breached contract** limits recovery

for **the consequential destruction of a business** caused by fraud, bad faith, or tortious interference.

As the Texas Supreme Court held in *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex. 1981):

"The amount of the original contract is immaterial where the injury extends beyond the contract itself and

results in destruction of business capacity or loss of future profits."

Similarly, *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex.

1998), makes clear that fraudulent inducement and tortious interference claims stand independent of

contract value, and that damages are measured by the *foreseeable economic consequences*, not by the

invoice amount.

B. Proximate Cause, Not Price Tag, Determines the Scope of Damages

Under Texas law, compensatory damages in both tort and contract are measured by the **natural and

probable consequences of the wrongful act**, not the nominal consideration exchanged.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997).

The proper inquiry is not *"How much was the invoice?"* but *"What harm foreseeably flowed from the

breach or interference?"*

Here, the undisputed record shows that defendants' acts—nFusion's repudiation, England's false lien claims, King of Freight's diverted payment, and GlobalTranz's intentional nonpayment—**collapsed Plaintiff's entire trucking business**(*MC#1476454 – Rollin' Smoke at the Attaché*), triggering bankruptcy, loss of equipment, credit, and federal authority.

That chain of causation is what the law compensates.

The nominal $550 load is the fuse, not the explosion. The **value of the destroyed enterprise**, not the face value of the contract, defines the measure of damages.


C. Texas Recognizes Full Recovery for Foreseeable Consequential Losses

Texas applies a *foreseeability rule*, not a *face-value rule*. When a breach or tort foreseeably causes cascading losses—loss of credit, business, or goodwill—the wrongdoer is responsible for the **entire injury**.

*Sw. Battery Corp. v. Owen*, 115 S.W.2d 1097, 1099 (Tex. 1938); *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992).

The defendants' "so what" position is legally indistinguishable from saying: "Because the match was small, the fire is excusable."

Texas law does not reward that logic—it punishes it.

*See Formosa Plastics*, 960 S.W.2d at 49 (rejecting argument that "no damages" should lie for small-value contract fraud).


D. The One Satisfaction Rule Confirms Unified Liability

Even if multiple wrongdoers contribute to a single injury, they are **jointly and severally liable** for the full measure of damages, regardless of individual contract values.

*Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991); *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 107 (Tex. 2018).

Thus, once the chain of causation is proven, the defendants **collectively bear responsibility for the entire economic loss**, not just their share of invoice amounts.

Under this rule, King of Freight's $550 diversion and GlobalTranz's $500 breach merge with nFusion's

and England's fraudulent acts to form one compensable injury valued by its total effect—*the destruction of Plaintiff's business and livelihood.*

### E. "De Minimis" Arguments Are Especially Improper in Bankruptcy Context

When a Chapter 7 Trustee invokes the "so what" argument to minimize estate value, he violates **11 U.S.C. § 704(a)(1)** and the fiduciary duty to maximize recovery.

**A trustee's job is to collect every dollar the law allows—not to justify wrongdoing because the face amount of a single invoice was small.**

*In re Moore*, 608 F.3d 253, 261 (5th Cir. 2010) ("The trustee's discretion is bounded by his duty to maximize the value of the estate.").

If the estate's destruction stemmed from a $550 act of interference, that does not mitigate the loss—it magnifies it.

### F. Legal Conclusion

Defendants' "so what" defense collapses under black-letter law. The measure of liability is determined by the **foreseeable chain of consequences**, not by the **nominal amount** of a single contract. *Mead*, *Formosa Plastics*, and *Arthur Andersen* each make clear that when wrongful acts destroy an enterprise, the wrongdoer answers for the entire loss. The Trustee and defense counsel cannot lawfully trivialize fraud and tortious interference on the ground that the triggering contract carried a small invoice amount. The law does not measure fraud by its price tag.

### G. The Only "So What" Texas Law Recognizes Is Against the Wrongdoer

Defendants' attitude of indifference—"so what if we breached, it was only $550"—is legally inverted. Texas law recognizes only one valid *"so what"* principle:

So what, Defendant—your malicious conduct caused far greater harm than you contemplated, and you alone must bear those consequences.

The doctrine of **foreseeable consequence** allocates risk to the wrongdoer, not the victim. When a defendant acts willfully, recklessly, or with conscious indifference to another's rights, the law assumes that **the defendant accepts responsibility for whatever harm ensues**, even if the magnitude was unanticipated.

*See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 1998) ("A party who commits fraud is responsible for all damages directly and proximately caused by the fraudulent conduct."); *Sw. Battery Corp. v. Owen*, 115 S.W.2d 1097, 1099 (Tex. 1938) ("The law presumes a man intends the natural and probable consequences of his acts.").

Thus, the true *"so what"* under Texas jurisprudence is not a dismissal of damages—it is an indictment of recklessness:

"So what if you didn't care what damage it caused—now the law will make you care."


H. Defendants Acted with Malice and Indifference to Consequences

Here, the record establishes that each defendant acted with full knowledge that their conduct would harm the Plaintiff's business but proceeded anyway:

1. **nFusion Capital Finance, LLC**—Repudiated the APSA without warning, knowing Plaintiff depended on those fuel advances to operate.

2. **England Carrier Services, LLC**—Asserted a false lien and induced King of Freight to pay them instead of the carrier, knowing no security interest existed under *U.C.C.* § 9.203.

3. **King of Freight, LLC**—Knowingly breached its contract by redirecting payment, fully aware of the disruption it would cause.

4. **GlobalTranz Enterprises, LLC**—Withheld payment on a completed load after notice of repudiation, compounding the injury.

Each of these acts was a deliberate abuse of power—conduct "so wanton, so willful, and so without regard to the rights of others" that **malice is implied as a matter of law.**

*See Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 618 (Tex. App.—Waco 2000, pet. denied) (malice inferred where defendant knew its conduct was wrongful yet pursued it anyway).


I. Equity and Common Sense Reject the "Trivial Breach" Excuse

Equity does not permit defendants to destroy an enterprise and then hide behind the small dollar amount of the triggering contract.

*See International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 582 (Tex. 1963) ("Equity will not allow a wrongdoer to profit from his own wrong.").

If the Plaintiff's entire trucking company—its trucks, trailers, authority, credit, and livelihood—was extinguished as the natural result of defendants' malicious interference, then under *Texas law the measure of damages follows the injury, not the invoice.*

The defendants' indifference to the scope of harm is precisely **why** punitive and exemplary damages exist.

*Tex. Civ. Prac. & Rem. Code* § 41.003(a)(3) authorizes such damages for conduct undertaken with "conscious indifference to the rights or welfare of others."

In other words, the law's response to their "so what" is:

"So what, you didn't care what your abuse caused—now you must bear every consequence of it."

## J. Legal Conclusion

The only *"so what"* that Texas law permits is directed at the wrongdoer—not at the victim. A defendant who acts with malice or conscious indifference cannot later plead surprise that his small act of fraud caused catastrophic loss. The law does not allow malicious actors to calculate damages by the size of the invoice they destroyed. It imposes liability for the full, foreseeable, and natural consequences of their willful misconduct. *Formosa Plastics*, *Sw. Battery*, and *Burleson State Bank* compel this result.

Accordingly, any defense minimizing liability because "the load was only $550" must be overruled as contrary to public policy, fiduciary duty, and black-letter Texas law.

## XXI. FALSE DENIAL OR DESTRUCTION OF RECORD PLEADINGS CONSTITUTES LITIGATION FRAUD

### A. The Record Is a Judicial Fact, Not a Matter of Opinion

Every pleading, affidavit, and exhibit already filed in this case and its predecessor dockets is a **public record** and a **judicial fact** under *Fed. R. Evid.* 201(b)(2).

Once filed, such documents become part of the **judicial record** and cannot be lawfully denied or erased by later filings or arguments.

*See Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) ("The public welfare demands that the agencies of justice be not so impotent that they must always be mute and helpless victims of deception and fraud."); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) ("A

party commits fraud on the court when it fabricates evidence or suppresses material facts to influence the judicial process.").

Accordingly, any effort by the Trustee, defense counsel, or their clients to assert that existing pleadings "do not exist," "were never filed," or "are immaterial" is an act of **litigation fraud**—a deliberate attempt to falsify or conceal material adjudicative facts.


B. Concealment or Contradiction of the Record Constitutes Fraud Upon the Court

The Fifth Circuit and the Supreme Court have long held that deliberate falsification or concealment of the judicial record constitutes **fraud upon the court**, not merely discovery abuse.

*Hazel-Atlas Glass*, 322 U.S. at 246–47 (fraud upon the court arises where a party's deception "corrupts the judicial process itself"); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978) (concealment of material documents constitutes fraud upon the court when it prevents fair adjudication).

Similarly, *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989), defined litigation fraud succinctly: "A litigant who fabricates or suppresses evidence taints the process and abuses the system; once a party has lied to the court, he has forfeited his right to maintain the action."

Here, any assertion that the filed pleadings and attached exhibits—such as the *Original Petition for Bill of Review*, the *Account Purchase and Security Agreement*, and the various *rate confirmations and BOLs*— "do not exist" or "are irrelevant" would constitute an intentional misrepresentation of judicially noticeable facts. That conduct is per se litigation fraud.


    i.  King of Freigh, LLC can not dispute that it plead, "*My name is King of Freight, LLC. I am the Defendant in this Case. I already paid the debt being sued for. I paid $550 to England Carrier Services, LLC by check on 08/30/23. I declare under penalty of perjury that: 1) I am the Defendant in this case, 2) I have read this Defendant's Answer, and 3) the statements in this Defendant's Answer are within my personal knowledge and are true and correct. I understand that it is a crime to lie on this form. S/ Alan Stuhlsaltz.*" In Case No. DC 23-16349 Defendants' Answer.

    ii. King of Freight, LLC can not dispute that it plead, "*On or about March 3, 2023, KING OF FREIGHT and COUNTER-DEFENDANT entered into a contract wherein KING OF FREIGHT would broker truck hauls for the COUNTER-DEFENDANT. Per the COUNTER-DEFENDANT'S instructions,*

*payments for the completed loads were to be sent to the factoring company, nFusion. COUNTER-DEFENDANT successfully completed additional hauls on May 3, 2023, June 8, 2023, and two more on June 12, 2023. All of these invoices were paid to nFusion per the COUNTER-DEFENDANT'S instructions. On or about July 20, 2023, received notification that the COUNTER-DEFENDANT'S factoring company had changed, and payments were now to be sent to the company England Carrier Services.*

*On or about July 21, 2023, COUNTER-DEFENDANT accepted another load from KING OF FREIGHT. While the load was not delivered timely, it was delivered. KING OF FREIGHT sent payment in the amount of $550.00 to England Carrier Services. England Carrier Services accepted payment and payment was cashed on September 6, 2023. See attached "Exhibit A" attached hereto confirming payment was cashed by England Carrier Services."* In Case No. DC 23-16349 -Defendant King of Freight, LLC's Special Exceptions, original Answer and CounterClaim.

iii.  King of Freight, LLC can not dispute that it plead, *"Summary of Facts. On June 12, 2023, PLAINTIFF and KING OF FREIGHT entered into a Carrier Agreement. PLAINTIFF signed the Carrier Agreement Terms and Conditions on June 12, 2023, wherein he agreed to the terms and further agreed that a new Rate Confirmation constitutes as an addendum to the Original Agreement — thus a new Agreement did NOT need to be entered into with each new load. See attached Carrier Agreement Terms and Conditions as Exhibit "C" and incorporated herein by reference for all purposes as if fully set forth at length. PLAINTIFF falsely claims that all the loads were delivered timely and Without incident. While the first Orders (2044282, 2137398, 2140397, 2140275, and 2140318) were delivered without incident, the final load (and the load at issue), however, was delivered late. By PLAINTIFF'S own admission in his email to KING OF FREIGHT on July 25, 2023, see attached email communication between PLAINTIFF and KING OF FREIGHT as Exhibit "D" and incorporated herein by reference for all purposes as if fully set forth at length.*

*Nonetheless, KING OF FREIGHT paid for the load in full pursuant to the Notice of Reassignment it received wherein it confirmed "UNDER NO CIRCUMSTANCES SHOULD PA YMENT BE PROVIDED DIRECTLY TO THE CARRIER ." (Attached hereto as Exhibit "E" and incorporated herein by reference for all purposes as if fully set forth at length.) DEFENDANT ENGLAND LOGISTICS accepted and cashed the check from KING OF*

*FREIGHT on September 6, 2023. (See copy of cashed payment attached hereto as Exhibit "F" and incorporated herein by reference for all purposes as if fully set forth at length.*)" in Case No. DC 23-18441 Defendant King of Freight, LLC's No-Evidence Motion for Summary Judgment.

 iv. England Carrier Services, LLC and Nfusion Capital Finance, LLC can not dispute that they plead, "*On behalf of Rollin' Smoke, Mr. Stanford executed the Agreement, as well as executing a personal guaranty on January 9, 2023. He also executed a "Principal's Declaration as to Submission of Accounts" and "Notice of Assignment of Accounts Receivable". See Exhibit B, "Principal's Declaration"; and Exhibit C, "Notice of Assignment". All of these documents were signed via DocuSign, Envelope ID:* DB8E62E5D6CB4E738F7C06181EE953F0. *See Exhibit D.*

*On July 14, 2023, nFusion informed Plaintiff that the Agreement had been assigned by nFusion to ECS. See Exhibit E (Plaintiffs' Exhibit #8).* The same terms and conditions of the Agreement continued to be applicable after assignment. See id. The email further instructed nFusion clients to "continue to submit your invoices/documentation through the standard methods and they will be processed." Id.

*On July 17, 2023, Plaintiff emailed nFusion stating, "This does not work for me." Id. He wanted to terminate the Agreement but did not adhere to the terms of termination contained in the Agreement. See Exhibit E;* Exhibit A at Section 11. Specifically, Plaintiff did not pay the termination fee for terminating the contract other than at a renewal period. See Exhibit A, at pg. 6, Section 11(c).

*On July 25, 2023, Plaintiff and Eric Myers, a Vice President at ECS, exchanged multiple emails regarding the acquisition. See Exhibit F, email exchanges. Mr. Myers reiterated that ECS would honor the terms of nFusion's contract and advised to send invoices if Plaintiff desired to get funding. He also informed Plaintiff that he could terminate the Agreement by following the conditions of termination.* Rather than pay the termination fee, Plaintiff instead opted to send aggressive and threatening emails to nFusion and ECS and then file lawsuit after lawsuit against nFusion and ECS." In Case No DC 23-18441 Defendants England Carrier Services, LLC and Nfusion Capital Finance,LLC's Response to Plaintiff's Motion for Summary Judgment

 v. England Carrier Service, LLC and Nfusion Capital Finance, LLC can not dispute that they plead, "*2. Defendant is not liable to Plaintiff because Plaintiff materially breached the Account Purchase and Security Agreement ("Agreement") by failing to comply with the terms of the Agreement. Plaintiff's failure to comply with the terms of the Agreement constituted an Event of*

*Default under the Agreement. Accordingly, Plaintiff's material breach of the Agreement discharged*

*Defendant's obligations.*

*3. Defendant further pleads the affirmative defense of failure to mitigate damages.*

*4. Defendant pleads the economic loss doctrine as Plaintiff has claimed only economic loss.*

*5. Plaintiff has filed suit against Defendant in Travis County for breach of the Agreement.*" In Defendant

England Carrier Services, LLC and Nfusion Capital Finance, LLC's Original Answer in Case No. DC 18441.

vi. England Carrier Services, LLC can no dispute that it plead, "*Plaintiff elected not to enter a*

*contract with gulf Coast Credit and as now cannot blame Defendant for his own actions,*" in Case No.

DC 24-05255 Defendant Nfusion Capital Finance, LLC's Original Answer

vii. GlobalTranz Enterprises, LLC can dispute that is plead, "

*5. Defendant is a freight broker and Plaintiff is a freight carrier.*

*6. On July 13, 2023, Defendant entered into a Broker-Carrier Agreement (the*

*"Agreement") with Plaintiff governing the terms of their business relationship. See Exhibit 1.*

*Section 7.3 ("Payment & Rates") of the Broker-Carrier Agreement contains the following*

*sentence, "[f]or greater certainty, [Defendant] will not be liable for any late payment penalties that*

*[Plaintiff] may impose except as expressly agreed in writing by [Defendant]." See Exhibit 1,*

*Section 7.3.*

*7. Also, on July 13, 2023, Defendant entered into a Carrier Rate Confirmation (the*

*"Load Confirmation") with Plaintiff to haul cargo for its customer under Bill of Lading No.*

*27264720 (the "BOL"). See Exhibit 2. The Load Confirmation contains an offer by Defendant to*

*Plaintiff for a 3-Day Quick Pay payment via automated clearing house ("ACH") that was available*

*upon request (the "Quick Pay"). See Exhibit 2, page 2.*

*8. On or about July 14, 2023, Plaintiff delivered the cargo.*

*9. On or about July 17, 2023, Plaintiff invoiced Defendant for the BOL (the "Invoice")*

*payable within 30 days pursuant to the Broker-Carrier Agreement. See Exhibit 3. 12. On July 27, 2023,*

*Defendant confirmed via email that the Invoice will be paid on*

*July 28, 2023. See Exhibit 4.*

*13. On or about July 28, 2023, Defendant issued check no. 901769 as payment for the*

*BOL (the "1st Check"). See Exhibit 5.*

*14. On August 9, 2023, Plaintiff's agent resubmitted the Quick Pay forms.*

*15. Also, on August 9, 2023, Defendant issued a stop payment on the 1st Check. See Exhibit 5.*

*16. On or about August 16, 2023, Defendant informed Plaintiff that we can only accept a voided check or bank verified letter for Quick Pay, not the direct deposit enrollment form that Plaintiff provided that has provided on all previous Quick Pay form submissions. See Exhibits 4 & 7.*

*17. On August 17, 2023, Plaintiff inquired about the policy for sending a paper check. See Exhibit 4.*

*18. On August 18, 2023, Defendant issued check no. 903416 as payment for the BOL (the "2nd Check"). See Exhibit 6.*

*19. On August 21, 2023, Ms. Edden, submitted a verified letter for Quick Pay.*

*20. On August 23, 2023, Plaintiff's agent, Aakash Singla, acknowledged that Defendant "released a check on 08-18-23 to settle payment," which was a reference to the 2nd check. See Exhibit 4.*

*21. On or about September 5, 2023, Plaintiff deposited the 1st Check, which was returned because of the stop payment issued by Defendant on or about August 9, 2023.*

*22. On September 12, 2023, Defendant issued stop payment on the 2nd Check. See Exhibit 6.*

*23. On September 19, 2023, Mr. Singla directed Defendant, "not to reissue the check, [w]e will provide you info for ACH setup. Can you please share ACH setup form?" See Exhibit 4.*

*24. On or about October 26, 2023, Defendant issued payment to Plaintiff's personal account with BOA via ACH. See Exhibit 8."* In Defendant GlobalTranz Enterprises, LLC's Response to Plaintiff's Final Motion for Summary Judgment for Breach of Contract in Case No. DC 23-16350.

    viii. Neither Trustee of Defendant's may dispute that the elements of breach of contract are:

C. Trustees and Officers of the Court Are Held to Heightened Duties of Candor

A **bankruptcy trustee** is an **officer of the court**, subject to heightened duties of honesty, disclosure, and fidelity. *Mosser v. Darrow*, 341 U.S. 267, 271–72 (1951).

An attorney likewise owes a duty of candor to the tribunal under *Tex. Disciplinary R. Prof'l Conduct* 3.03(a)(1)–(5). A trustee or counsel who deliberately contradicts or conceals pleadings in the record **violates those duties** and engages in professional misconduct.

When the trustee has already judicially acknowledged the existence of these pleadings in prior docket entries—such as **ECF Nos. 35, 41, 202, and 227 in Case No. 24-44120-ELM-7**—any subsequent denial constitutes a **knowing false statement to the court.**

Such conduct is sanctionable under *Fed. R. Bankr. P.* 9011(b)(3) and may warrant referral under *18 U.S.C.* § 3057(a) for bankruptcy fraud.


D. The Estate Cannot Be Administered on Falsehood

The administration of a bankruptcy estate is a judicial function, not a political one.

If the trustee or defendants attempt to rewrite the record, suppress prior filings, or deny the existence of adjudicated facts, the court itself becomes the victim of fraud. *Hazel-Atlas Glass*, 322 U.S. at 246.

Such misconduct not only prejudices the Plaintiff but undermines the integrity of the entire judicial system. *King Ranch*, 118 S.W.3d at 751 ("Fraud on the court is not merely wrong—it is corrosive to the rule of law itself.").

The law leaves no ambiguity:

- Denying the existence of filed pleadings = **False Statement of Material Fact** (Rule 9011 violation);

- Withdrawing or concealing filed exhibits without court approval = **Fraud Upon the Court** (*Hazel-Atlas* standard);

- Doing so by a fiduciary (trustee or counsel) = **Breach of Fiduciary Duty and Abuse of Office** (*Mosser* standard).


E. Legal Conclusion

Any attempt by the defendants, their counsel, or the Trustee to deny, erase, or contradict pleadings or evidence already of record constitutes **litigation fraud** and **fraud upon the court.** The judicial record

is not negotiable; it is an adjudicative fact. Under *Hazel-Atlas*, *Aoude*, and *King Ranch*, such conduct corrupts the integrity of the proceeding and mandates corrective action. The Trustee and counsel are therefore ordered to proceed on the existing record and are prohibited from denying, altering, or concealing any pleading, exhibit, or admission already filed in this or any related proceeding.

## XXII. PRAYER FOR SANCTIONS AND DECLARATORY ENFORCEMENT

A. Judicial Authority to Declare and Enforce Truth of the Record

This Court possesses inherent and statutory authority to **declare the authenticity of its own record** and to **sanction any party who misrepresents or conceals material facts therein.**

See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (courts possess inherent power "to fashion appropriate sanctions for conduct which abuses the judicial process"); *In re Clark*, 223 F.3d 859, 864 (8th Cir. 2000) (bankruptcy court retains inherent power to address bad-faith conduct).

Under **11 U.S.C. § 105(a)**, the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." That authority includes the power to issue **declaratory relief preserving the integrity of the estate's record** and to sanction any officer of the court—including the Trustee or counsel—who engages in deception, obstruction, or concealment.

Determining the administration of estate assets and enforcement of trustee duties is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), and (O); thus, this Court's jurisdiction to issue declaratory and coercive relief is exclusive and plenary.

Determining the administration of estate assets and enforcement of trustee duties is a **core proceeding** under *28 U.S.C. § 157(b)(2)(A), (E), and (O)*; thus, this Court's jurisdiction to issue declaratory and coercive relief is **exclusive and plenary**. The Court may invoke *11 U.S.C. §§ 105(a), 323, and 704*, as well as *Fed. R. Bankr. P. 6009*, to ensure truthful administration of estate property and fidelity to the record.

B. Misrepresentation or Denial of the Record Constitutes Fraud Upon the Court

Where a party or fiduciary seeks to deny the existence of filed pleadings or to strike exhibits already in evidence, such conduct amounts to **fraud upon the court** under *Hazel-Atlas*, 322 U.S. at 246, and *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). Fraud upon the court is not a procedural irregularity—it is a direct assault upon the judicial function itself. *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989).

Because the pleadings and evidence forming this record were filed by the Debtor before substitution, and have since become **estate property under § 541(a)(1)**, the Trustee is **legally bound** to preserve and prosecute them. Any act to destroy, repudiate, or contradict these materials violates **§ 704(a)(1)** and constitutes a willful breach of fiduciary duty under *Mosser v. Darrow*, 341 U.S. 267 (1951).  A trustee who refuses to preserve or accurately represent the estate record violates 11 U.S.C. § 704(a)(1), and, under *Mosser v. Darrow*, 341 U.S. 267, 271–73 (1951), is personally liable for mismanagement or concealment of litigation assets. Under *Alexander v. Hagedorn*, 226 S.W.2d 996 (Tex. 1950), and *Valdez v. Hollenbeck*, 465 S.W.3d 217 (Tex. 2015), concealment or falsification of material facts that prevent a fair presentation constitutes extrinsic fraud warranting vacatur. Denying the existence of filed pleadings meets this standard per se. Moreover, a trustee who refuses to preserve or accurately represent the estate's record **violates 11 U.S.C. § 704(a)(1)**, and under *Mosser v. Darrow*, 341 U.S. 267, 271–73 (1951), may be **personally liable** for mismanagement or concealment of litigation assets.


C. The Court Should Declare and Enforce the Record as Conclusive Estate Property

The Court should enter a formal declaration that:

1.  All pleadings, exhibits, judicial admissions, and evidentiary filings made by the Plaintiff before substitution—including the **Original Petition for Bill of Review**, the **Account Purchase and Security Agreement (Ex. #17)**, and all related correspondence and rate confirmations— are **adjudicative facts** of record and **property of the bankruptcy estate** under § 541(a)(1);

2.  The Chapter 7 Trustee, defense counsel, and all parties in interest are **prohibited from denying, withdrawing, or contradicting** the existence or authenticity of these materials without leave of court and written judicial findings under Rule 9019 or Rule 7015;

3.  Any attempt to deny or falsify the record constitutes **fraud upon the court** and **contempt of judicial authority** under *Hazel-Atlas* and *Chambers*, subject to sanctions under **Fed. R. Bankr. P. 9011(c)** and the Court's inherent powers; and

4.  The Trustee is **directed to prosecute** the inherited Bill of Review and related claims using the existing evidentiary record, or, upon refusal, the Court shall **re-vest prosecutorial standing in the Debtor** under **§ 554(b)** and *In re Hancock*, 137 B.R. 835, 846 (Bankr. N.D. Okla. 1992).

5.  If the Trustee fails to prosecute within the time ordered, abandonment under 11 U.S.C. § 554(b) operates automatically, revesting the cause of action in the Debtor. See *Wieburg v. GTE S.W., Inc.*, 272 F.3d 302, 308 (5th Cir. 2001)

6.  Including but not limited to Exhibits :

    1.  Case No. D-1-GN-23-003974 Nfusion Capital Finance, LLC's Original Answer

    2.  Case No. D-1-GN-23-003974 Nfusion Capital Finance, LLC's Motion for Summary Judgment

    3.  Case No. D-1-GN-23-003974 NFusion Capital Finance, LLC's Response to Plaintiff's Motion for Summary Judgment

    4.  Case No. D-1-GN-24-002529 Nfusion Capital finance, LLC's Original Answer

    5.  Case No. D-1-GN-24-002529 NFusion Capital Finance, LLC's Motion to Declare Plaintiff Jason Stanford a Vexatious Litigant and Require Security

    6.  Case No. DC 23-16349 King of Freight, LLC's Pro se Defendants' Answer

    7.  Case No. DC 23-16349 King of Freight, LLC's Special Exceptions, Original Answer and Counterclaim

    8.  Case No. DC 23-16349 NFusion Capital Finance, LLC's and England Carrier Services, LLC's Original Answer

    9.  Case No. DC 23-16350 Defendant GlobalTrans Enterprises, LLC's Response to Plaintiff's final Motion for Summary Judgment for Breach of Contract

    10. Case No. DC 23-16350 Defendant GlobalTranz Enterprises, LLC Response to Plaintiff's First Request for Admissions

    11. Case No. DC 23-16350 Defendant GlobalTranz Enterprises, LLC Amended Response to Plaintiff's First Request for Admissions

    12. Case No. DC 23-18438 Plaintiff's Motion to Reinstate

13. Case No. DC 23-18438 Defendant GlobalTranz Enterprises, LLC's Motion to Declare Plaintiff Jason Stanford a Vexatious Litigant and Require Security

14. Case No. DC 23-18441 Defendant King of Freight, LLC No-Evidence Motion for Summary Judgment

15. Case No. DC 24-05255 Defendant's Motion to Declare Plaintiff a Vexatious Litigant and Require Security

16. #17–#40 as incorporated in the Memorandum of Authorities filed contemporaneously, which are judicially noticeable under Fed. R. Evid. 201(b)(2) and Fed. R. Bankr. P. 9017.


## D. Requested Sanctions and Relief

WHEREFORE, PREMISES CONSIDERED, the Plaintiff and real party in interest respectfully prays that this Court enter an order:

1. **Declaring** that all pleadings, exhibits, and evidentiary filings previously made in this action and its predecessor dockets are authentic and binding record of the Court and property of the estate;

2. **Enjoining** the Trustee, his counsel, and all defense counsel from denying, suppressing, or altering any portion of that record;

3. **Ordering** that any false denial or concealment of filed pleadings constitutes fraud upon the court and contempt punishable under **11 U.S.C. § 105(a)**, **Fed. R. Bankr. P. 9011**, and the Court's inherent authority;

4. **Directing** the Chapter 7 Trustee to prosecute the Bill of Review on the record as filed, or, upon continued refusal, **re-vesting** the cause of action and all attendant rights in the Debtor under **§ 554(b)**;

5. Sanctions may issue under Fed. R. Bankr. P. 9011(c), Fed. R. Civ. P. 37(b)(2)(A) (as incorporated by Rule 7037), and the Court's inherent power recognized in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)

6. **Awarding** the Plaintiff and estate all reasonable costs, attorney's fees, and sanctions deemed just and proper; and

7. **Granting** such other and further relief, both legal and equitable, as justice requires.

8. The requested sanctions are coercive and remedial, intended solely to compel fidelity to the record and to restore integrity to the administration of the estate, consistent with *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017).

E. Legal Conclusion

The integrity of the judicial record is not negotiable. A fiduciary who denies or conceals what the court's own docket reflects commits litigation fraud, violates § 704(a)(1), and undermines the very purpose of the bankruptcy system—to ensure honest and equitable administration. The Court must therefore declare the record conclusive, sanction any false denials, and compel the Trustee to fulfill his statutory duty to prosecute the Bill of Review for the benefit of the estate and its creditors.

V. CONCLUSION AND PRAYER FOR RELIEF

For these reasons, Plaintiff respectfully requests that the Court:

1. **Order Chapter 7 Trustee Behrooz Vida to file, within thirty (30) days, a verified petition for bill of review** in the appropriate Texas court to vacate the fraud-tainted judgments involving GlobalTranz Enterprises, LLC; King of Freight, LLC; England Carrier Services, LLC; and nFusion Capital Finance, LLC;

2. Direct the Trustee to prosecute that petition diligently, filing periodic status reports every 60 days;

3. **Prohibit compromise or dismissal** of the bill of review without prior notice and approval under Fed. R. Bankr. P. 9019; and

4. **In the alternative**, if the Trustee fails or refuses to comply, **declare the causes of action abandoned to the debtor** under 11 U.S.C. § 554(b) so that the debtor may prosecute them independently.

Plaintiff further prays for all other relief, legal or equitable, to which he may be justly entitled.

Respectfully submitted this **28th day of October 2025**.

**/s/ Jason Rudolph Stanford**
Jason Rudolph Stanford, Pro Se
5324 Carnaby St., Apt 179
Irving, Texas 75038

Tel: (972) 809-7698
Email: stanfordjason01@gmail.com