

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 17, 2026**

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 24-44120-ELM |
| JASON RUDOLPH STANFORD, | § | |
| | § | Chapter 11 |
| Debtor. | § | |

## MEMORANDUM OPINION AND ORDER
(Resolves Docket Nos. 423 and 424)

On November 6, 2024 (the "**Petition Date**"), Jason Rudolph Stanford (the "**Debtor**") initiated this bankruptcy case (the "**Bankruptcy Case**") with the filing of his voluntary petition for relief under chapter 7 of the Bankruptcy Code. Behrooz P. Vida (the "**Trustee**") is the duly appointed trustee of the Debtor's bankruptcy estate (the "**Estate**").

While the Debtor was represented by counsel at the time of the filing of the Bankruptcy Case,[1] since shortly after the Petition Date the Debtor has been acting *pro se*. In all of the separately filed lawsuits referenced herein, the Debtor has acted *pro se*.

---

[1] *See* Bankruptcy Case Docket No. 1 (voluntary petition signed by counsel along with the Debtor).

Now before the Court for determination is the *Trustee's Motion for Sanctions and Contempt for Willful Violation of Automatic Stay* (the "**Motion**").[2]  Pursuant to the Motion, the Trustee alleges that the Debtor has taken various actions with respect to causes of action owned by the Estate that violate 11 U.S.C. § 362(a) (the "**Automatic Stay**").  Therefore, the Trustee requests the Court's issuance of an order finding the Debtor to be in contempt for violating the Automatic Stay, sanctioning the Debtor and awarding damages to the Trustee on account of such violations, and related relief.

In opposition to the Motion, the Debtor has filed three separate responses (collectively, the "**Responses**").[3]  Pursuant to the Responses, the Debtor asserts that he has not violated the Automatic Stay, that the Trustee is attempting to deprive him of his due process rights and right of access to the courts, and that the Trustee's pleadings constitute fraud on the Court and a breach of fiduciary duty.  Additionally, through the Responses, the Debtor purports to assert counterclaims for the Trustee's removal as the trustee of the Estate and for a determination of contempt and sanctions against the Trustee.

On October 16, 2025, the Court conducted an evidentiary hearing on the Motion and Responses, at the conclusion of which the Court took the matter under advisement.

Having now considered the Motion, the Responses, the evidence presented, the representations and arguments of the parties, the entirety of the dockets in the Bankruptcy Case and the adversary proceedings referenced herein, and the record from the contested evidentiary hearing conducted on December 4-5, 2025, and the ruling in relation thereto,[4] the Court now issues

---

[2] In relation to the Trustee's request for a finding of contempt for violation of the Automatic Stay, the Motion has been docketed at Bankruptcy Case Docket No. 423.  In relation to the Trustee's request for sanctions for violation of the Automatic Stay, the Motion has been docketed at Bankruptcy Case Docket No. 424.

[3] *See* Bankruptcy Case Docket Nos. 426, 430 and 431.

[4] On January 7, 2026, the Court issued an oral ruling in the Bankruptcy Case in resolution of the *Trustee's Motion for Approval of Compromise and Settlement of Certain Causes of Action* (the "Compromise Motion").  *See* Bankruptcy

these findings of fact and conclusions of law,[5] finding that the Motion should be granted in part

and denied in part, and that the Debtor's counter-requests for relief against the Trustee should be

denied in all respects.

### I.
### JURISDICTION

The Court has jurisdiction of the proceeding involving the Motion and Responses pursuant

to 28 U.S.C. §§ 1334 and 157 and *Miscellaneous Order No. 33: Order of Reference of Bankruptcy*

*Cases and Proceedings Nunc Pro Tunc* (N.D. Tex. Aug. 3, 1984).  The proceeding is core in nature

pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

### II.
### FACTUAL BACKGROUND

**A.      The Debtor's Prepetition Dispute with Various Parties**

Prior to the Petition Date, the Debtor provided certain trucking/hauling services to clients,

either in his individual name or using the name of his sole proprietorship Rollin' Smoke at the

Attache and/or his Motor Carrier Number #1476454.  As is fairly common within the trucking

industry based upon the Court's experience in a number of chapter 11 trucking cases, the Debtor

determined to factor his business receivables in order to obtain immediate cashflow.  In this regard,

on January 9, 2023, the Debtor entered into a factoring agreement with nFusion Capital Finance,

LLC ("**nFusion**").  After entering into the factoring agreement, it appears that the Debtor and

---

Case Docket Nos. 456 (Compromise Motion) and 788 (order granting Compromise Motion).  The Compromise
Motion was disputed by the Debtor and on December 4-5, 2025, the Court conducted a heavily contested evidentiary
hearing on the Compromise Motion at which both the Debtor and the Trustee appeared and participated.  Therefore,
the Court incorporates herein by reference both the evidentiary record from the December 4-5, 2025, hearing as well
as the January 7, 2026, oral ruling rendered in resolution of the Compromise Motion.  Exhibits introduced into
evidence at the December 4-5, 2025, hearing are referred to herein as "12/4/2025 Hrg. Exh. [____]."

[5] To the extent any of the following findings of fact are more appropriately categorized as conclusions of law or include
any conclusions of law, they should be deemed as such, and to the extent that any of the following conclusions of law
are more appropriately categorized as findings of fact or include any findings of fact, they should be deemed as such.

nFusion operated under the terms of the agreement without any significant disagreements for about six months.

At some point prior to July 14, 2023, however, nFusion allegedly assigned its rights and obligations under the agreement to England Carrier Services, LLC ("**ECS**").  It is not entirely clear whether and to what extent nFusion provided notice to the Debtor of the assignment in advance of the assignment.  At the time of the assignment, it appears that there were still amounts owing by the Debtor to nFusion and/or that there were certain contingent obligations that still existed tied to the possibility of a customer's non-payment of a previously purchased account, and that ECS acquired the right to collect such amounts from the Debtor under the terms of the factoring agreement.

On or about July 14, 2023, the Debtor submitted account information and documentation to nFusion for factoring, which included information and documentation with respect to a $500 account from GlobalTranz Enterprises ("**GlobalTranz**").  Having previously assigned its rights and obligations under the factoring agreement to ECS, nFusion informed the Debtor that nFusion was not going to purchase the accounts or provide any sort of fuel advance.  As a result, the Debtor provided notice of his termination of the factoring agreement, arguing that it had been repudiated as a result of the refusal to factor the accounts.

Thereafter, in an apparent effort to collect on outstanding obligations owed by the Debtor under the factoring agreement, ECS directed King of Freight, LLC ("**KOF**"), one of the Debtor's customers, to make payment of an outstanding $550 account directly to ECS instead of to the Debtor.  It appears that KOF complied with the demand, paying ECS instead of the Debtor.

At or around this time, it appears that some discussion took place between ECS and the Debtor on whether ECS would honor what the Debtor believed to be nFusion's obligations under

the factoring agreement, including the provisions on fuel advances that he had become reliant on to float his business operations. Initially, it appears that ECS informed the Debtor that it was not set up to handle fuel advances. However, on or about July 25, 2023, it appears that ECS provided notice to the Debtor that it would honor nFusion's obligations under the factoring agreement, ostensibly including the fuel advances. In reply, however, the Debtor declined, reporting that the contract had already been terminated.

At or about this time, it appears that the Debtor was also in the process of attempting to line up an entirely new factoring partner. However, it never came together and, according to the Debtor, ECS interfered with the Debtor's efforts.

## B.   *The Prepetition Waves of Litigation Initiated by the Debtor*

### 1.   The First Wave of Prepetition Litigation

The first wave of prepetition litigation occurred in November 2023. The Debtor filed two different lawsuits in Texas state court: one under Cause No. DC-23-18438 in Dallas County, Texas (the "**23-18438 Case**");[6] and one under Cause No. DC-23-18441 in Dallas County, Texas (the "**23-18441 Case**").[7] The cases were filed against nFusion, ECS, KOF, GlobalTranz, and Worldwide Express Operations, LLC ("**Worldwide Express**"). Generally, the claims pursued by the Debtor were for breach of contract against KOF, GlobalTranz and Worldwide Express for allegedly unpaid accounts due to the Debtor, breach of contract against nFusion under the factoring agreement, and tortious interference against nFusion and ECS in relation to unpaid accounts due to the Debtor from his customers and in relation to the Debtor's effort to obtain a new factoring partner.

---

[6] *See* 12/4/2025 Hrg. Exh. K (complaint filed by the Debtor against ECS, nFusion, Worldwide Express, and GlobalTranz in the 23-18438 Case).

[7] *See* 12/4/2025 Hrg. Exh. A (complaint filed by the Debtor against ECS, nFusion, and KOF in the 23-18441 Case).

nFusion and ECS were represented by Spencer Fane, LLC ("**Spencer Fane**"), with Lauren Nelson ("**Nelson**") taking the lead. GlobalTranz and Worldwide Express were represented by Christopher Snead ("**Snead**"). KOF was represented by Joseph Luce ("**Luce**").

### 2. The Second Wave of Prepetition Litigation

A second wave of prepetition litigation was commenced in April and May of 2024. First, in April 2024, the Debtor filed suit under Cause No. DC-24-05255 in Dallas County, Texas (the "**24-5255 Case**") against nFusion, ECS, two of ECS's affiliates – England Logistics, Inc. ("**England Logistics**") and CR England, Inc. ("**CR England**"), and Spencer Fane;[8] and separately filed suit under Cause No. D-1-GN-24-002529 in Travis County, Texas (the "**24-2529 Case**") against nFusion.[9] For all of the parties other than Spencer Fane, the Debtor filed the cases to effectively pursue the same relief as sought within the first wave of cases. The Debtor added claims against Spencer Fane for allegedly aiding and abetting ECS.

Second, in May 2024, the Debtor filed suit under Cause No. DC-24-06573 in Dallas County, Texas (the "**24-6573 Case**") against Nelson, Snead, Luce, the State of Texas, and a sitting Texas state district court judge who had been involved in the prior state court cases;[10] and separately filed suit under Cause No. DC-24-06735 (the "**24-6735 Case**") against Nelson, Snead, and Luce.[11] In each case, the claims asserted were for actions allegedly undertaken by the defendants to deprive the Debtor of his rights to due process and equal protection under the law and for defamation.

---

[8] *See* 12/4/2025 Hrg. Exh. C (complaint filed by the Debtor against Spencer Fane, nFusion, ECS, England Logistics, and CR England in the 24-5255 Case).

[9] *See* 12/4/2025 Hrg. Exh. J (complaint filed by the Debtor against nFusion in the 24-2529 Case).

[10] *See* 12/4/2025 Hrg. Exh. B (complaint filed by the Debtor against Nelson, Snead, Luce, the State of Texas, and Judge Ashley Wysocki in the 24-6573 Case).

[11] *See* 12/4/2025 Hrg. Exh. E (complaint filed by the Debtor against Nelson, Snead, and Luce in the 24-6735 Case).

### 3.      The Third Wave of Prepetition Litigation

Finally, in August 2024, the Debtor filed suit under Cause No. DC-24-11871 in Dallas County, Texas (the "**24-11871 Case**") against ECS, nFusion, Worldwide Express, and GlobalTranz to pursue the same types of claims as had been asserted against them in the prior suits.[12]

### C.      *The Bankruptcy Filing and Debtor's Scheduling of Certain Estate Claims*

On November 6, 2024 (the Petition Date), the Debtor filed the Bankruptcy Case.  As acknowledged by the Debtor, the Bankruptcy Case was filed as a litigation strategy to protect the claims referenced above against the possibility of negative outcomes in the pending state court cases.  As discussed further below, upon the Petition Date all claims and causes of action owned by the Debtor as of the Petition Date, whether legal or equitable in nature, whether asserted or not asserted, whether known or unknown, whether liquidated or unliquidated, and whether meritorious or meritless, became property of the Estate (all such claims and causes of action referred to herein as the "**Estate Claims**").

As evidenced by the amended, sworn schedule of assets (Schedule A/B) filed by the Debtor in the Bankruptcy Case,[13] the Debtor disclosed that all of the claims and causes of action that he had asserted in the 23-18441 Case, the 24-5255 Case, the 24-2529 Case, the 24-6573 Case, the 24-6735 Case, and the 24-11871 Case constituted Estate Claims.  With the sole exception of $14,970 of the total value of the Estate Claims pursued in the 24-2529 Case alone, none of the Estate Claims were scheduled as exempt assets of the Debtor.[14]

---

[12] *See* 12/4/2025 Hrg. Exh. D (complaint filed by the Debtor against ECS, nFusion, Worldwide Express, and GlobalTranz in the 24-11871 Case).

[13] *See* Bankruptcy Case Docket No. 43, at ECF pp.7 and 12-13 (amended Schedule A/B, response to disclosure item 33); *see also* Bankruptcy Case Docket No. 44, at ECF p.13 (Debtor's signed declaration, affirming the accuracy of amended Schedule A/B under penalty of perjury).

[14] *See* Bankruptcy Case Docket No. 43, at ECF pp.14-18 (amended Schedule C, property claimed as exempt).

From day one, the Debtor was at loggerheads with the Trustee in relation to the Trustee's administration of the Estate Claims.  Apparently being under the belief that the Trustee is supposed to serve as his counsel and representative in administering the Estate, the Debtor has steadfastly claimed that the Trustee has had a duty to litigate all scheduled Estate Claims, claiming that the scheduled Estate Claims have an aggregate value in the millions despite having originated from an alleged refusal to factor a $500 GlobalTranz account, the alleged conversion of a $550 KOF account, and the alleged interference with the Debtor's attempt to line up a new factoring partner.

### D.    *Post-Petition Litigation Initiated by the Debtor*

The Debtor's approach in the Bankruptcy Case has been similar to his prepetition approach to litigation in the state courts – namely, to carpet bomb the courts with massive numbers of duplicative pleadings.  Certain aspects of the Debtor's post-petition litigation onslaught are detailed below.

### 1.    <u>The First Wave of Post-Petition Litigation</u>

First, notwithstanding the Estate's ownership of the Estate Claims, shortly after the commencement of the Bankruptcy Case, the Debtor (acting *pro se*) removed the scheduled Estate Claims to this Court without the involvement or consent of the Trustee and without first obtaining relief from the Automatic Stay.  The removals initiated six different adversary proceedings with the Court: Adversary Nos. 24-4103, 24-4106, 24-4107, 24-4108, 24-4109, and 24-4110.[15]

Because of the omission of relevant state court pleadings and orders from, and the general disarray of, each of the adversaries upon the removal of the scheduled Estate Claims, as well as the fact that the Court expected the Trustee to be involved in the administration of Estate Claims,

---

[15] The Court remanded the claims in Adversary 24-4109 back to state court based upon the Debtor's improper attempt to remove the claims directly from the state court in Travis County, Texas (located within the federal Western District of Texas) to this Court (located in the federal Northern District of Texas) instead of to the federal Western District of Texas, as required by statute.  *See* 28 U.S.C. § 1452(a); Adversary No. 24-4109 Docket No. 7 (order of remand).

on January 3, 2025, the Court entered an order in each of the non-remanded five adversary proceedings abating all further activity in the cases until indicated otherwise by order of the Court.[16] The Debtor later disregarded each of the abatement orders and filed a number of motions in the adversary proceedings without the approval of the Trustee or relief from the Automatic Stay.

### 2. The Second Wave of Post-Petition Litigation

Next, in May 2025, the Debtor moved forward with a second wave of post-petition litigation. Because of limitations placed by the District Court for the Northern District of Texas on the Debtor's ability to file litigation in the Northern District of Texas,[17] the Debtor elected to proceed in the Western District of Texas.

First, on May 22, 2025, the Debtor filed suit under Civil Action No. 1:25-CV-00792 in the Western District of Texas (the "**25-792 Case**") against (among others) nFusion, ECS, Spencer Fane, Nelson, Snead, Luce, Luce Law, PLLC, KOF, and GlobalTranz to assert a variety of claims, including RICO, common law fraud, and tortious interference with contract, in each case predicated, at least in part, upon alleged actions that took place prior to the Petition Date.[18]

Second, on May 28, 2025, the Debtor filed suit under Civil Action No. 1:25-CV-00817 in the Western District of Texas (the "**25-817 Case**") against (among others) Nelson, Snead, Luce, GlobalTranz, ECS, nFusion, and Spencer Fane to assert a variety of claims, including denial of due process, denial of access to courts, conspiracy to violate civil rights, and breach of fiduciary

---

[16] *See* Adversary No. 24-4103 Docket No. 14; Adversary No. 24-4106 Docket No. 6; Adversary No. 24-4107 Docket No. 7; Adversary No. 24-4108 Docket No. 8; Adversary No. 4110 Docket No. 6.

[17] In particular, the District Court issued a vexatious litigant order against the Debtor, precluding the Debtor from filing any new litigation in the Northern District of Texas without first obtaining leave of court. *See generally* Bankruptcy Case Docket No. 701 (order of the Court describing the background of the District Court's vexatious litigant order).

[18] *See* 12/4/2025 Hrg. Exh. H (complaint filed by the Debtor against nFusion, ECS, Spencer Fane, Nelson, Snead, Luce, Luce Law, PLLC, KOF, GlobalTranz, the Trustee, Marcus Leinart, Richard Anderson, Leinart Law Firm, PLLC, and Vida Law, PLLC in the 25-792 Case).

duty, in each case predicated, at least in part, upon alleged actions that took place prior to the Petition Date.[19]

### 3. The Estate Claims Administration Facilitation Order

On May 21, 2025, believing that the Trustee was not taking appropriate action to prosecute the scheduled Estate Claims, the Debtor filed the *Debtor's Amended Motino to Compel Trustee to Acknowledge and Administer Adversary Claims as Property of the Estate and Incorporated Memorandum of Damages* (the "**Motion to Compel**").[20] Following a June 6, 2025, hearing on the Motion to Compel, and in an effort to facilitate the completion of the Trustee's investigation into the Estate Claims and to prevent any further unauthorized litigation involving the Estate Claims pending the conclusion of such investigation, the Court entered an *Order Granting in Part, and Denying in Part, Debtor's Amended Motion to Compel Trustee to Acknowledge and Administer Adversary Claims as Property of the Estate* on June 9, 2025 (the "**Estate Claims Administration Facilitation Order**")[21] pursuant to which:

> (a) in relation to each of the then-pending adversary proceedings, the Court fixed a deadline of August 8, 2025, for the Trustee to either file a motion for substitution into the case in place of the Debtor or file a motion to request the abandonment of the Estate Claims at issue pursuant to 11 U.S.C. § 554(a);

> (b) the Debtor was precluded from filing any new motions in the Bankruptcy Case in relation to the Estate Claims or the Trustee's administration of the Estate Claims until after the earliest of (i) the August 8, 2025, election deadline, (ii) the date on which the Estate Claims have been abandoned with court approval, and (iii) the date on which the Debtor has been granted leave of court to take such action; and

> (c) in accordance with 11 U.S.C. § 521(a)(3), the Debtor was ordered to cooperate with the Trustee, as necessary, to enable the Truste to perform the Trustee's duties

---

[19] *See* 12/4/2025 Hrg. Exh. I (complaint filed by the Debtor against Nelson, Snead, Luce, GlobalTranz, ECS, nFusion, Spencer Fane, the Trustee, Erin Schmidt (the trial attorney with the Department of Justice assigned to take the lead in representing the United States Trustee in the Bankruptcy Case), Marcus Leinart, Richard Anderson, Ken Starr, Leinart Law, PLLC, and Vida Law, PLLC in the 25-817 Case).

[20] *See* Bankruptcy Case Docket No. 163 (Motion to Compel).

[21] *See* Bankruptcy Case Docket No. 220 (Estate Claims Administration Facilitation Order).

under the Bankruptcy Code (including the completion of the Trustee's investigation into the validity/invalidity of the Estate Claims and whether to administer or abandon certain or all of the Estate Claims).

On June 9, 2025, the Debtor was served with a copy of the Estate Claims Administration Facilitation Order.[22]

Additionally, on June 9, 2025, the Court entered a new round of abatement orders in the then-pending adversary proceedings (collectively, the "**Adversary Abatement Orders**") to compliment the Estate Claims Administration Facilitation Order.[23]  On June 9, 2025, the Debtor was served with a copy of each of the Adversary Abatement Orders.[24]  The Debtor later disregarded the Adversary Abatement Orders and filed a number of motions in the adversary proceedings without obtaining leave from the Court to do so.

### 4.      The Third Wave of Post-Petition Litigation

On July 15, 2025, in the face of the Estate Claims Administration Facilitation Order and the Adversary Abatement Orders, and without having obtained the permission of the Trustee or relief from the Automatic Stay, the Debtor initiated the following five additional cases in Texas state court to assert, among other claims, ceratin Estate Claims:

(1) Cause No. DC-25-11046 in Dallas County, Texas (the "**25-11046 Case**") against Nelson and Spencer Fane to (among other things) assert alleged claims for fraud upon the court, Rule 11 violations, malicious prosecution, abuse of process, and breach of fiduciary duty predicated upon alleged actions that took place prior to the Petition Date.[25]

(2) Cause No. DC-25-11047 in Dallas County, Texas (the "**25-11047 Case**") against GlobalTranz and Snead to assert alleged claims for fraudulent misrepresentation, obstruction and malicious abuse of process, fraud upon the court, and collusion with

---

[22] *See* Bankruptcy Case Docket No. 280 (Certificate of Notice).

[23] *See* Adversary No. 24-4103 Docket No. 34; Adversary No. 24-4106 Docket No. 25; Adversary No. 24-4107 Docket No. 25; Adversary No. 24-4108 Docket No. 28; Adversary No. 4110 Docket No. 25.

[24] *See* Adversary No. 24-4103 Docket No. 40; Adversary No. 24-4106 Docket No. 26; Adversary No. 24-4107 Docket No. 38; Adversary No. 24-4108 Docket No. 36; Adversary No. 4110 Docket No. 26.

[25] *See* 12/4/2025 Hrg. Exh. L (petition filed by the Debtor against Nelson and Spencer Fane in the 25-11046 Case).

the judiciary predicated upon alleged actions that took place prior to the Petition Date.[26]

(3) Cause No. DC-25-11048 in Dallas County, Texas (the "**25-11048 Case**") against (among others) Luce, Scot Campbell, and Ken Starr to (among other things) assert alleged claims for legal malpractice, breach of fiduciary duty, and fraud upon the court predicated, at least in part, upon alleged actions that took place prior to the Petition Date.[27]

(4) Cause No. DC-25-11049 in Dallas County, Texas (the "**25-11049 Case**") against KOF to assert alleged claims for fraudulent misrepresentation, fraud upon the court, and civil conspiracy predicated upon alleged actions that took place prior to the Petition Date.[28]

(5) Cause No. DC-25-11050 in Dallas County, Texas (the "**25-11050 Case**") against nFusion, ECS, and Nelson to assert alleged claims for fraud upon the court, breach of contract, tortious interference, and civil conspiracy predicated upon alleged actions that took place prior to the Petition Date.[29]

Additionally, on July 16, 2025, the Debtor filed Cause No. DC-25-11125 in Dallas County, Texas (the "**25-11125 Case**") against Nelson to assert alleged claims for legal malpractice, fraud upon the court, professional misconduct, and negligence per se predicated upon alleged actions that took place prior to the Petition Date.[30]

### 5. **Trustee's Notice of Administration of Estate Claims**

On July 29, 2025, in advance of the August 8, 2025, deadline established by the Court pursuant to the Estate Claims Administration Facilitation Order, the Trustee filed the *Chapter 7*

---

[26] *See* 12/4/2025 Hrg. Exh. F (petition filed by the Debtor against GlobalTranz and Snead in the 25-11047 Case). The claims and causes of action asserted in the 25-11047 Case were subsequently removed by the defendants to this Court, thereby initiating Adversary No. 25-4101.

[27] *See* 12/4/2025 Hrg. Exh. M (petition filed by the Debtor against Luce, Scot Campbell, Ken Starr, and Stephen Sather in the 25-11048 Case). The claims and causes of action asserted in the 25-11048 Case were subsequently removed by the defendant Stephen Sather to this Court, thereby initiating Adversary No. 25-4094.

[28] *See* 12/4/2025 Hrg. Exh. N (petition filed by the Debtor against KOF in the 25-11049 Case). The claims and causes of action asserted in the 25-11049 Case were subsequently removed by KOF to this Court, thereby initiating Adversary No. 25-4096.

[29] *See* 12/4/2025 Hrg. Exh. O (petition filed by the Debtor against nFusion, ECS, and Nelson in the 25-11050 Case).

[30] *See* 12/4/2025 Hrg. Exh. P (petition filed by the Debtor against Nelson in the 25-11050 Case).

*Bankruptcy Trustee Behrooz P. Vida's Notice of Intent to Administer Certain Assets* (the "**Notice of Estate Claims Administration**").[31] Pursuant to the Notice of Estate Claims Administration, the Trustee put the Debtor, the Court, and all other parties in interest on notice of the Trustee's intent to administer (*i.e.*, not abandon) the Estate Claims asserted within (among other proceedings): Adversary No. 24-4103 (*i.e.*, the 23-18441 Case), Adversary No. 24-4106 (*i.e.*, the 24-6735 Case), Adversary No. 24-4107 (*i.e.*, the 24-5255 Case), Adversary No. 24-4108 (*i.e.*, the 24-11871 Case), Adversary No. 24-4110 (*i.e.*, the 24-6573 Case), the 24-2529 Case, the 25-792 Case, the 25-817 Case, the 25-11046 Case, the 25-11047 Case, the 25-11050 Case, and the 25-11125 Case.

### 6.      The Fourth Wave of Post-Petition Litigation

Undeterred by the Notice of Estate Claims Administration, on August 20, 2025, the Debtor also filed Cause No. DC-25-14020 in Dallas County, Texas (the "**25-14020 Case**") against ECS, nFusion, KOF, and GlobalTranz to request the vacatur of judgments entered in certain prior prepetition state court cases, and to request judgment on account of alleged claims of breach of contract, tortious interference, and RICO predicated upon alleged actions that took place prior to the Petition Date.[32]

### III.
### THE PARTIES' RESPECTIVE ARGUMENTS AND REQUESTS FOR RELIEF

Pursuant to the Motion, the Trustee alleges that the Debtor violated the Automatic Stay in filing each of the following lawsuits (collectively, the "**Post-Petition Lawsuits**") without having first obtained either the consent of the Trustee or relief from the Automatic Stay: the 25-792 Case,

---

[31] *See* Bankruptcy Case Docket No. 347 (Notice of Estate Claims Administration).

[32] *See* 12/4/2025 Hrg. Exh. G (petition filed by the Debtor against ECS, nFusion, KOF, and GlobalTranz in the 25-14020 Case). The claims and causes of action asserted in the 25-14020 Case were subsequently removed by defendant GlobalTranz to this Court, thereby initiating Adversary No. 25-4119.

the 25-817 Case, the 25-11046 Case, the 25-11047 Case, the 25-11048 Case, the 25-11049 Case, the 25-11050 Case, the 25-11125 Case, and the 25-14020 Case. Thus, the Trustee requests that the Debtor be found to be in contempt for violation of the Automatic Stay, that each of actions taken by the Debtor in filing the Post-Petition Lawsuits be voided, that the Debtor be ordered to stop interfering with the Trustee's administration of the Estate Claims, and that sanctions and damages be awarded against the Debtor.

Pursuant to the Responses, the Debtor first asserts that there had been no violation of the Automatic Stay because the Automatic Stay is designed to protect a debtor from litigation, not to bar a debtor from initiating litigation in furtherance of estate rights. Second, the Debtor asserts that even if any action taken by him is determined to be in violation of the Automatic Stay, such actions are not voidable; instead, the remedy is for the Trustee to step into the lawsuits and continue to prosecute the cases. Indeed, the Debtor further argues that the Trustee's failure to do so, and failure to report the state court defendants' alleged litigation fraud in connection with the prepetition state court litigation, constitutes a breach of the Trustee's fiduciary duty to the Estate warranting the Trustee's removal as the chapter 7 trustee. Third, the Debtor argues that the Court's provision of the relief sought by the Trustee would constitute a violation of the Debtor's due process rights and right to access the courts. Fourth, the Debtor claims that the Trustee's pleadings in relation to the Estate Claims constitute fraud upon the Court, also warranting the Trustee's removal as the chapter 7 trustee. Finally, purporting to assert a counterclaim for relief against the Trustee, the Debtor requests a finding of contempt and an award of sanctions against the Trustee.

*IV.*
*DISCUSSION*

**A.        *The Automatic Stay's Protection of Estate Claims***

"Section 362 of the Bankruptcy Code imposes a broad-based, protective injunction … upon the filing of a petition for bankruptcy relief.  This injunction – commonly referred to as the 'automatic stay' – is immediately imposed and enforceable against all individuals and entities as of the filing of the petition without the necessity of the filing of a separate action to obtain it."[33] While the Debtor is correct in his understanding that the Automatic Stay protects a debtor against collection litigation by creditors,[34] he is wrong in his belief that the Automatic Stay is *solely* for the benefit of debtors.  Importantly, the Automatic Stay also protects property of the bankruptcy estate while the bankruptcy case is pending.

In that regard, pursuant to § 362(a)(3) of the Bankruptcy Code, the Automatic Stay enjoins "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."[35]  This is an important aspect of the Automatic Stay because it serves as "protection to all creditors against the possibility of only a few of them – those who successfully win the proverbial race to the courthouse – obtaining a preferential recovery to the detriment of all other similarly situated creditors."[36]  Thus, given the breadth of its terms, § 362(a)(3) of the Automatic Stay enjoins the exercise of any form of control over any claims or

---

[33] *In re Tommy's Fort Worth, LLC*, 671 B.R. 712, 729 (Bankr. N.D. Tex. 2025) (citing *Sosebee v. Steadfast Ins. Co.*, 701 F.3d 1012, 1025 (5th Cir. 2012)); *see also* 11 U.S.C. 362(a) (the provisions of the Automatic Stay).

[34] *See* 11 U.S.C. § 362(a)(1) (staying the commencement or continuation of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the bankruptcy filing to recover on a prepetition claim against the debtor).

[35] 11 U.S.C. § 362(a)(3).

[36] *Tommy's Fort Worth*, 671 B.R. at 730 (citing, among other cases, *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003)); *see also Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 300 (5th Cir. 2005) ("The Bankruptcy Code's automatic stay is designed to ensure the orderly distribution of assets by temporarily protecting the property of the debtor's estate from the reach of creditors").

causes of action of the bankruptcy estate, including, without limitation, the commencement of litigation to prosecute such claims or causes of action, by anyone who is not expressly authorized to exercise such control pursuant to the Bankruptcy Code.

Before turning the question of who is authorized to exercise such control, it is first necessary to consider what claims and causes of action are included within the bankruptcy estate and, thus, protected by § 362(a)(3) of the Automatic Stay. In this regard, § 541 of the Bankruptcy Code provides that the bankruptcy estate is automatically and immediately created upon the commencement of the bankruptcy case.[37] It further provides that the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."[38] "Legal and equitable interests include causes of action owned by the debtor as of the commencement of the case."[39]

Thus, the next natural question is what causes of action are owned by a debtor as of the commencement of the case? In answering that question, first, such causes of action are *not* limited to only those causes of action scheduled by the debtor as property of the estate in the debtor's filed schedule of assets (Schedule A/B). Otherwise, a bankruptcy estate (and creditors hoping to recover from the estate) could be deprived of valuable causes of action by virtue of a debtor's intentional or negligent omission of the causes of action from the schedule of assets. Similarly, and contrary to the Debtor's view of the world, such causes of action are also *not* limited to only those causes of action that the debtor has already asserted in litigation by the time of the commencement of the

---

[37] *See* 11 U.S.C. § 541(a).

[38] *Id*. § 541(a)(1). While § 541(a)(1) notes that there are exceptions specified in subsections (b) and (c)(2) of § 541, none of those exceptions are applicable in this case.

[39] *Tommy's Fort Worth*, 671 B.R. at 730 (citing *Schertz-Cibolo-Universal City, Indep. Sch. Dist. v. Wright (In re Educators Group Health Trust)*, 25 F.3d 1281, 1283 (5th Cir. 1994); *Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233, 245 (5th Cir. 1988); and *American Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1274 (5th Cir. 1983)).

bankruptcy case.  Otherwise, a debtor could strategically deprive the bankruptcy estate of valuable causes of action by simply waiting until after the commencement of the bankruptcy case to file suit.

Ultimately, the determination of which causes of action are owned by a debtor as of the commencement of the debtor's bankruptcy case is a determination that must be made under applicable nonbankruptcy law, typically controlling state law.  As explained by the Supreme Court, "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."[40]  Under Texas law (the place of residency of the Debtor at all relevant times and the situs of all prepetition actions complained of by the Debtor in litigation commenced by the Debtor – whether prepetition or post-petition), a claim comes into existence, and thus is owned by a party, once it "accrues."[41]  And the Texas Supreme Court has explained that, "[a]s a rule, we have held that a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred."[42]

Consequently, in relation to the Bankruptcy Case, among the assets that the Debtor owned as of the Petition Date were all causes of action that had accrued as of the Petition Date – meaning each and every cause of action predicated upon a wrongful act that had been taken prior to the Petition Date that caused any legal injury to the Debtor, even if not then known, and even if the full extent of the resulting damage had not yet occurred.  Hence, for purposes of § 541 of the Bankruptcy Code, among the assets swept into the Estate upon the Petition Date were the Estate

---

[40] *Butner v. Unites States*, 440 U.S. 48, 54 (1979).

[41] *See State Farm Life Ins. Co. v. Swift (In re Swift)*, 129 F.3d 792, 795 (5th Cir. 1997) ("Our first task, then, is to determine whether Swift had a property interest in the causes of action against State Farm at the time he filed bankruptcy.  Stated differently, we must determine whether Swift's cause of action had accrued.  To determine this, we look to Texas law.").

[42] *S.V. v. R.V.*, 993 S.W.2d 1, 4 (1996).

Claims, being each and every claim and cause of action, whether legal or equitable in nature, whether asserted or not asserted, whether known or unknown, whether liquidated or unliquidated, and whether meritorious or meritless, predicated upon any prepetition wrongful act that caused any legal injury to the Debtor.

With the foregoing in mind, based upon the factual allegations made by the Debtor in the complaints/petitions filed in the Post-Petition Lawsuits, the Debtor unquestionably asserted at least one Estate Claim (and typically multiple Estate Claims) in each of the Post-Petition Lawsuits.

**B.      *The Trustee's Exclusive Right to Control the Estate Claims***

In a chapter 7 case, once a trustee has been appointed, the trustee is charged with the responsibility of promptly collecting and reducing to money all non-exempt property of the estate.[43]  In administering the estate, the trustee serves as the representative of the estate, and with or without court approval, may appear in any pending action or proceeding previously initiated by the debtor that involves property of the estate.[44]  The trustee may also independently prosecute claims of the estate and may settle them with court approval.[45]

Notwithstanding the foregoing, the Debtor claims that relevant case law recognizes that the Automatic Stay does not prevent a debtor from commencing a lawsuit or prosecuting claims after the commencement of the bankruptcy case.  In making such assertion, however, in addition to failing to take into account important distinguishing aspects involved in those cases, the Debtor has supplied an outright manufactured quotation from the principal case relied upon by the Debtor, *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194 (3rd Cir. 1991).  According to the Debtor, the court in *Maritime Elec. Co*. stated at pages 1204-1205 that the Automatic Stay "does not

---

[43] *See* 11 U.S.C. § 704(a)(1).

[44] *See id*. § 323(a); Fed. R. Bankr. P. 6009(a).

[45] *See* 11 U.S.C. § 363(b); Fed. R. Bankr. P. 9019.

prevent the debtor from commencing litigation, asserting claims, or continuing to pursue prepetition causes of action that properly belong to him or to the estate." *See* Docket No. 426, at pp.1-2. Such quoted language, however, does not exist within the opinion. And this is not the first time that the Debtor has supplied the Court with manufactured quotations that do not exist in the cases cited.

Even so, the aspects of *Maritime Elec. Co.* that the Debtor has failed to take into account in citing the case is (1) the court was focused only on the provisions of § 362(a)(1) of the Automatic Stay – a provision that solely relates to the debtor and makes no reference to the bankruptcy estate,[46] and (2) the bankruptcy case at issue was a chapter 13 case, and under relevant provisions of chapter 13, a debtor obtains certain of the rights of a trustee (most notably, rights under § 363(b) of the Bankruptcy Code) that only a trustee may exercise in chapter 7.[47] The same is true with respect to the Debtor's reliance on *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513 (1998). In fact, the court in *Olick* specifically highlighted the important difference of a chapter 13 case, explaining that "a Chapter 13 debtor, unlike a Chapter 7 debtor, has standing to litigate causes of action…."[48]

The Debtor's reliance upon *Lehman Commercial Paper, Inc. v. Palmdale Hills Property, LLC (In re Palmdale Hills Property, LLC)*, 423 B.R. 655 (Bankr. 9th BAP 2009), *aff'd*, 654 F.3d 868 (9th Cir. 2011) is equally misguided. While the court in that case refers to § 362(a)(3) of the Automatic Stay and notes, generally, that others have found the Automatic Stay to be inapplicable to a lawsuit initiated by the debtor, the statement has to be considered in context. In *Palmdale*

---

[46] *Compare* 11 U.S.C. § 362(a)(1) (referencing only the debtor; no mention of the bankruptcy estate) *with* 11 U.S.C. § 362(a)(3) (expressly providing protections to the bankruptcy estate).

[47] *See, e.g.*, 11 U.S.C. § 1303 ("Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under section[ ] 363(b)…. of [the Bankruptcy Code]").

[48] *Olick*, 145 F.3d at 515.

*Hills Property*, the bankruptcy case was a chapter 11 case.  Importantly, in a chapter 11 case, the debtor, as a "debtor in possession," obtains substantially all of the rights and powers of a trustee, including, most notably, the trustee's rights under § 363(b).[49]  In a chapter 7 case, a debtor obtains no such trustee rights.

Thus, focusing back on the Bankruptcy Case, the Trustee, and only the Trustee, has at all times been the only one with the right to control the Estate Claims.[50]  As such, since the Petition Date, the Automatic Stay provisions of § 362(a)(3) have enjoined all other parties in interest, including, without limitation, the Debtor, from exercising any control over the Estate Claims in the absence of having first obtained either the Trustee's approval or the Court's entry of an order modifying the Automatic Stay to permit the exercise of such control.  The enjoined conduct includes, without limitation, the commencement or continuation of any lawsuit that includes one or more Estate Claims.

## C.    The Debtor's Violation of the Automatic Stay

This now takes the Court to the question of whether the Debtor's commencement of the Post-Petition Lawsuits violated the Automatic Stay.  Unquestionably, the answer is "yes."

For reasons already explained, all of the Estate Claims, whether scheduled or not by the Debtor, and whether asserted or not by the Debtor as of the Petition Date, became property of the Estate upon the commencement of the Bankruptcy Case.  Thus, pursuant to § 362(a)(3) of the Automatic Stay, since the Petition Date, a stay has remained in place precluding anyone other than

---

[49] *See* 11 U.S.C. § 1107(a) ("Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers … of a trustee serving in a case under this chapter"); *see also* 11 U.S.C. § 1101(1) (defining "debtor in possession" to mean the debtor in a chapter 11 case, except when the court orders that a trustee must be appointed and the trustee has been appointed).

[50] *See also United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 362 (5th Cir. 2014) ("the bankruptcy trustee is the real party in interest with respect to claims falling within the bankruptcy estate").

the Trustee (being the only one having the right to exercise control over the Estate Claims), including the Debtor, from exercising any control over the Estate Claims. Notwithstanding same, without having first obtained either the approval or consent of the Trustee or an order of the Court providing relief from the Automatic Stay, the Debtor, in violation of § 362(a)(3) of the Automatic Stay, commenced the Post-Petition Lawsuits, asserting one or more Estate Claims in each of the Post-Petition Lawsuits.

### D.  *Remedies for Violation of the Automatic Stay*

Pursuant to the Motion, the Trustee requests multiple forms of relief on account of the Debtor's violation of the Automatic Stay. Each requested form of relief is addressed below.

#### 1.  <u>Finding of Contempt</u>

First, the Trustee requests that the Debtor be found in contempt for violating the Automatic Stay. To obtain such relief, "the party seeking an order of contempt need only establish by clear and convincing evidence: (1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order."[51]

With the foregoing in mind, the initial question is whether contempt may only be found in relation to the violation of a court order or if it can also apply to the violation of a statutorily-imposed injunction. Many courts have effectively side-stepped the issue by treating the Automatic Stay as the equivalent of a court order.[52] Then, based upon the powers conferred by § 105(a) of

---

[51] *Johnson County Plaintiffs v. Mrs. Baird's Bakeries (In re Piggly Wiggly Clarksville, Inc.)*, 177 F.3d 380, 382 (5th Cir. 1999); *see also Edwards Family P'ship, LP v. Johnson (In re Community Home Fin. Servs. Corp.)*, 32 F.4th 472, 487 (5th Cir. 2022).

[52] *See, e.g., Insurance Co. of N. Amer. V. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re National Gypsum Co.)*, 118 F.3d 1056, 1064 (5th Cir. 1997) ("the section 524(a) discharge injunction is not solely a federal defense to potential state actions; instead, '*[l]ike the automatic stay of section 362(a)*, the discharge injunction *is the equivalent of a court order*'") (emphasis added) (quoting 4 *Collier on Bankruptcy* ¶ 524.02[2], at 524-14).

the Bankruptcy Code, they have found that courts have the power to issue an order of civil contempt for a willful violation of the Automatic Stay.[53]

Ultimately, the Court finds it unnecessary to engage in such an assessment of equivalence. Pursuant to § 105(a), Congress has clearly provided the courts with the power to issue any order "that is necessary or appropriate to carry out the provisions of this title," which includes § 362(a)(3) of the Automatic Stay. Any such order includes an order of contempt, provided the movant satisfies the evidentiary standards ordinarily applicable to a contempt proceeding involving an order. In other words, an order of contempt for violation of the Automatic Stay may be issued where the movant establishes by clear and convincing evidence: (1) the applicable provisions of the Automatic Stay are in effect (*e.g.*, they have not expired in accordance with § 362(c), nor have they been modified pursuant to § 362(d)); (2) the applicable provisions of the Automatic Stay enjoined the respondent from taking the conduct at issue; and (3) the respondent willingly took action in violation of such provisions of the Automatic Stay.

Applying this test to the Post-Petition Lawsuits, the Court finds that the Trustee has successfully established by clear and convincing evidence that the Debtor willfully violated § 362(a)(3) of the Automatic Stay. Specifically, the Court finds that the following has been proven by clear and convincing evidence:

> (1) Since the Petition Date, § 362(a)(3) of the Automatic Stay has enjoined the Debtor from taking any act to exercise control over property of the Estate, which includes each of the Estate Claims. Thus, since the Petition Date, § 362(a)(3) has enjoined the Debtor from commencing any post-petition litigation to pursue any of

---

[53] *See, e.g., Jove Eng'g, Inc. v. IRS*, 92 F.3d 1539, 1555 (11th Cir. 1996) ("When the automatic stay is violated, courts generally find the violator in contempt under 11 U.S.C. § 105 if the violation is 'willful'"); *Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 193 (9th Cir. 1995) (finding a determination of civil contempt under § 105(a) of the Bankruptcy Code to be warranted for violation of the Automatic Stay); *Mountain Am. Credit Union v. Skinner (In re Skinner)*, 917 F.3d 444, (10th Cir. 1990); *Bailey Tool & Mfg. Co. v. Republic Bus. Credit, LLC (In re Bailey Tool & Mfg. Co.)*, Adv. No. 16-03025-SGJ, 2021 WL 6101847, at *48 (Bankr. N.D. Tex. Dec. 23, 2021) ("Willful violations of the automatic stay are punishable by the court's inherent contempt power and the authority vested in the Bankruptcy Court under Section 105(a) of the Bankruptcy Code").

the Estate Claims without having first obtained either (a) the Trustee's authorization or (b) the entry of an order by the Court providing relief from the Automatic Stay to permit such action.

(2) To facilitate enforcement of § 362(a)(3) of the Automatic Stay as to the Estate Claims pending the Trustee's determination of whether to administer or abandon them from the Estate, on June 9, 2025, the Court entered both the Estate Claims Administration Facilitation Order in the Bankruptcy Case and the Adversary Abatement Orders in the then-pending adversary proceedings.  On the same date, June 9, 2025, the Debtor was served with a copy of the Estate Claims Administration Facilitation Order and each of the Adversary Abatement Orders.

(3) Thereafter, in July 2025, the Debtor knowingly and willingly filed each of the Post-Petition Lawsuits, and in each of the Post-Petition Lawsuits the Debtor asserted one or more Estate Claims.

(4) Prior to the filing of each of the Post-Petition Lawsuits, the Debtor neither obtained the Trustee's authorization to take such action nor obtained an order of the Court providing relief from the Automatic Stay to permit such action.

(5) Thus, in filing each of the Post-Petition Lawsuits, the Debtor failed to comply with § 362(a)(3) of the Automatic Stay and also failed to comply with the cooperation provisions of the Estate Claims Administration Facilitation Order.

Based upon the foregoing, the Court finds the Debtor to be in contempt for his willful violation of the Automatic Stay and, thus, the Court will grant the Trustee's requests for a finding of contempt against the Debtor.

### 2.    Order Voiding the Post-Petition Litigation Filings

Next, the Trustee requests "that the actions taken by [the Debtor]" in violation of the Automatic Stay "be voided."[54]  In relation to such request, the Fifth Circuit has explained that "[w]e adhere to the view that violations [of the Automatic Stay] are merely 'voidable' and are subject to discretionary 'cure.'"[55]

---

[54] *See* Motion ¶ 10.

[55] *Chapman v. Bituminous Ins. Co. (In re Coho Res., Inc.)*, 345 F.3d 338, 344 (5th Cir. 2003).

Initially, the Debtor claims that the remedy here is for the Trustee to simply step into the Debtor's shoes and move forward with prosecution of the Estate Claims. In making such argument, the Debtor totally fails to appreciate the gravity of the mess that he has made. First, one of the benefits of a bankruptcy proceeding is to centralize (to the greatest extent permissible) all proceedings affecting the bankruptcy estate into one forum for efficiency. Second, the Trustee has since settled all of the Estate Claims at issue in the Post-Petition Lawsuits; therefore, no further prosecution is necessary or called for in any event. Moreover, this is not a situation where the Debtor simply filed one suit on the mistaken belief that the Automatic Stay did not apply, such that the Trustee can now simply request to substitute into the case in place of the Debtor and then rectify the situation. Instead, here, the Debtor decided to undertake a supplemental carpet bombing campaign in the Texas state courts with a new barrage of duplicative actions, leaving a trail of carnage to be cleaned up that is neither simple nor inexpensive. In short, the Debtor is completely off base in his suggestion about how to remedy the situation, and his assertion that the Trustee should be removed if he does not prosecute the cases is frivolous.

Returning to the Trustee's request, the Fifth Circuit's use of the phrase "discretionary cure" in the context of considering issuance of an order of avoidance for violations of the Automatic Stay is important. First, there is the recognition that a court should only issue an avoidance order to the extent that it will, in fact, cure (in whole or in part) the effects of the Automatic Stay violation. Second, there is the recognition that, even where the effects can be cured (in whole or in part), the court should nevertheless have the discretion to decide whether, and to what extent, the avoidance relief should be provided based upon the particular facts and circumstances of the case or situation. In this case, the Court questions whether it is even possible to fashion an order that would literally avoid the filing of the Post-Petition Lawsuits. It seems inconceivable, for

example, that this Court would have the authority to legally compel a Texas state court to effectively expunge the entirety of a lawsuit from the state court's docketing system. Moreover, from a discretionary standpoint, even if such an order could legally be issued, the Court finds, on the basis of comity, that such an order should not be issued.

Instead, the remedy most warranted under these circumstances is to issue an order determining that any Post-Petition Lawsuit order that adjudicated or otherwise disposed of any Estate Claim is void and shall have no force or effect on account of the injunctive provisions of § 362(a)(3) of the Automatic Stay. That said, the Trustee did not present the Court with evidence of any such order having been issued in any of the Post-Petition Lawsuits. Therefore, the Trustee's broad request for the entry of an order ruling that the actions taken by the Debtor are void will be denied, but without prejudice to the right of the Trustee to separately request more refined relief consistent with the parameters outlined above, if warranted.

### 3.    Damages Pursuant to § 362(k)

Next, the Trustee requests an award of damages against the Debtor pursuant to § 362(k) of the Bankruptcy Code. Section 362(k) provides, in relevant part, that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."[56] Thus, § 362(k) "creates a private remedy for an individual injured by a willful violation of an automatic stay."[57]

In considering relief under § 362(k), the Court must first consider whether the Trustee is the type of complainant entitled to such relief. In this regard, to "establish standing pursuant to §

---

[56] 11 U.S.C. § 362(k)(1).

[57] *Pettitt v. Baker*, 876 F.2d 456, 457-58 (5th Cir. 1989) (referencing predecessor subsection of § 362 in which the provisions of § 362(k) were located at the time of the opinion).

362(k), the [Trustee] [is] required to meet both constitutional and prudential requirements."[58] To satisfy constitutional standing, "[t]he [complainant] must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the [respondent] and likely to be redressed by a favorable judicial decision."[59] Prudential standing, on the other hand, is concerned with, among other things, whether a complainant's "grievance arguably falls within the zone of interests protected by the statutory provision invoked" and whether the complainant "is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties."[60]

With these concepts in mind, standing must be considered in the context of the capacity in which the Trustee is pursuing relief and whether the relief is available in such capacity. Here, the Trustee has filed the Motion in his capacity as the trustee of the Estate, not in his individual capacity.[61] With that in mind, first, constitutional standing is easily addressed. The Estate (for whom the Trustee is acting) has suffered concrete and particularized injury in fact (*e.g.*, loss of complete control of the Estate Claims, the expense of having to take legal action to prevent continuing violation of the Automatic Stay, the expense of having to take legal action to clean up the pending Post-Petition Lawsuits) that is traceable to the Debtor's actions (the filing of Post-Petition Lawsuits in violation of the Automatic Stay) and can be addressed by way of the relief requested and provided herein.

The stickier question is prudential standing. Starting with the statutory language of § 362(k), the provision clearly limits the private right of recovery to an "individual." But despite

---

[58] *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 538-39 (5th Cir. 2009).

[59] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014).

[60] *Labuzan*, 579 F.3d at 539.

[61] *See, e.g.*, Motion, at p.1 (introductory paragraph – "BEHROOZ P. VIDA, CHAPTER 7 TRUSTEE") and p.7 (signature block, reflecting signature as "Counsel for Chapter 7 Trustee", as opposed to counsel for Behrooz P. Vida).

the fact that "individual" is a term that appears throughout the Bankruptcy Code, the term is nowhere defined within the Bankruptcy Code. In defining "person" to include an "individual," however, the Bankruptcy Code makes clear that an "individual" is something different than the other types of "persons" included within the definition of "person," such as a partnership and corporation (which, in turn, is defined as including, among other things, an unincorporated company or association and a business trust).[62] Consequently, "Congress's use of the restrictive term 'individual' in section 362(k) rather than the inclusive term 'person' indicates that damages under the statute are only available to natural persons."[63]

Here, while the Trustee is a natural person, he is acting on behalf of the Estate. Thus, this is where the prudential standing question comes into focus – namely, whether a request for damages pursuant to § 362(k) of the Bankruptcy Code by a chapter 7 trustee, in his capacity as the trustee of a bankruptcy estate, falls within the "zone of interest" protected by § 362(k). At least two different courts within the Northern District of Texas have found that where the debtor is a corporation, such that the trustee is the trustee of corporate debtor's estate, then the trustee lacks standing to pursue relief under § 362(k).[64] Neither of those cases, however, addresses the question in the context of an individual debtor.

That said, it does not appear as though the nature of the *debtor* is of much import. Instead, the focus needs to be on the bankruptcy estate – that for which the trustee has been appointed and is responsible. And clearly an estate is not a natural person. Therefore, the Court finds that the

---

[62] *See* 11 U.S.C. § 101(41) (definition of "person"); *see also* 11 U.S.C. § 101(9) (definition of "corporation").

[63] *Garner v. Knoll, Inc. (In re Tusa-Expo Holdings, Inc.)*, Adv. No. 10-04271-DML, 2014 WL 172276, at *4 (Bankr. N.D. Tex. Jan. 15, 2014).

[64] *See In re MD Promenade, Inc.*, No. 08-34113-SGJ-7, 2009 WL 80203, at *12 (Bankr. N.D. Tex. Jan. 8, 2009) (Jernigan, J.); *Tusa-Expo Holdings*, 2014 WL 172276, at *4 (Lynn, J.).

Trustee lacks prudential standing to obtain relief under § 362(k) of the Bankruptcy Code and, hence, the Trustee's request for damages pursuant to § 362(k) will be denied.[65]

    4.    **Supplemental Injunction and Sanctions Pursuant to § 105(a)**

Finally, pursuant to § 105(a) of the Bankruptcy Code, the Trustee requests both supplemental injunctive relief and sanctions.  As previously indicated, § 105(a) of the Bankruptcy Code authorizes a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[66]

First, the Trustee requests that the Debtor "be ordered to stop interfering with the administration of the estate by obtaining possession of property of the estate or of property from the estate or exercising control over property of the estate."  Motion ¶ 11.  Thus, in essence, the Trustee desires a supplemental order providing for the very same relief already provided pursuant to § 362(a)(3), but tailored to the circumstances.

The Debtor opposes any such relief, complaining that it would violate the Debtor's due process rights and right to access the courts.  The Debtor's objections are meritless.  First, in voluntarily filing the Bankruptcy Case, the Debtor, himself, caused the Automatic Stay to be invoked.  Thus, to the extent the Debtor is somehow suggesting a deprivation of due process on account of the imposition of the Automatic Stay, such argument lacks all merit.  Second, with respect to the requested relief in the Motion, the Debtor was duly served with the Motion, the Debtor filed three different Responses, and the Debtor was provided the opportunity to present evidence and be heard at the evidentiary hearing on the Motion.  Thus, there has been no

---

[65] *See also Pace*, 67 F.3d at 193 (finding that trustee lacks standing under § 362(k)); *Piazza v. Oldner (In re Genger)*, Adv. P. No. 21-01180 (JLG), 2025 WL 3510886, at *15 (Bankr. S.D.N.Y. Dec. 5, 2025) (same).  The Court additionally notes that, even if the Trustee did have standing, a request for compensatory and punitive damages (unlike a request for sanctions) is a request that should be pursued as an adversary proceeding.  *See* Fed. R. Bankr. P. 7001(a).

[66] 11 U.S.C. § 105(a).

deprivation of due process. Finally, with respect to the request for supplemental injunctive relief that ties to the provisions of § 362(a)(3), the Debtor is not being deprived of his ability to access the courts. Instead, he is being deprived of the ability to exercise control over property that he no longer owns or has a right to control – namely, the Estate Claims that constitute property of the Estate. Accordingly, all of the Debtor's objections are overruled.

Based upon the forgoing, and consistent with the authority provided by § 105(a) of the Bankruptcy Code, the Trustee's request for supplemental injunctive relief consistent with the provisions of § 362(a)(3) of the Automatic Stay will be granted on the terms set forth below.

Next, the Trustee also requests that the Debtor be sanctioned for willfully violating the Automatic Stay. Based upon the clear and convincing evidence of the Debtor's contumacious actions in filing the Post-Petition Lawsuits in violation of § 362(a)(3) of the Automatic Stay, and the scope of the power granted pursuant to § 105(a) of the Bankruptcy Code, the Court finds the request to have merit and will grant compensatory sanctions in the amount of the attorneys' fees and expenses reasonably and necessarily incurred by the Trustee (and, thus, ultimately the Estate) in filing and prosecuting the Motion. The Court will set forth below procedures for the presentment of a specific request for such fees and expenses and for presentment of any objections thereto. Additionally, such relief will be without prejudice to the Trustee's right to hereafter request additional compensatory sanctions for any attorneys' fees and expenses that are reasonably and necessarily incurred by the Trustee in taking action in the Post-Petition Lawsuits deemed necessary to address the Estate Claims asserted therein (*e.g.*, to obtain their nonsuit, dismissal, etc.).

### E. The Debtor's Counter-Requests for Relief

Turning to the Debtor's counter-requests for relief, the Debtor requests the removal of the Trustee and a finding of contempt and sanctions against the Trustee. Putting aside the procedural

defects in the way in which such relief has been sought, the Debtor has failed to present any evidence that supports such relief. Moreover, the Court has already ruled on the Debtor's separate requests for removal of the Trustee (in each case, denying such motions), which raised the same type of arguments as set out in the Debtor's Responses.[67]

### V.
### CONCLUSION AND ORDER

For all of the foregoing reasons, the Court finds cause to grant the Motion in part, and to deny it in part, on the terms set forth below, and to deny the Debtor's counter-requests for relief in all respects. Accordingly, it is hereby:

**ORDERED** that the Motion is GRANTED IN PART, AND DENIED IN PART, as set forth herein; it is further

**ORDERED** that all of the Debtor's objections to the relief granted herein are hereby DENIED; it is further

**ORDERED** that that Debtor be and is hereby found to be in CONTEMPT for filing each of the Post-Petition Lawsuits in violation of 11 U.S.C. § 362(a)(3); it is further

**ORDERED** that, in the absence of first obtaining the *written* authorization or consent of the Trustee or obtaining the entry of a separate order of this Court granting the Debtor relief from the Automatic Stay to permit such action, the Debtor shall be and is hereby ENJOINED from taking any act (whether in any Post-Petition Lawsuit or otherwise) to obtain possession of property of the Estate (including, without limitation, the Estate Claims) or of property of the Estate (including, without limitation, the Estate Claims) or to exercise control over property of the Estate (including, without limitation, the Estate Claims); it is further

---

[67] *See, e.g.*, Bankruptcy Case Docket Nos. 704 and 748, which are incorporated herein by reference.

**ORDERED** that, on account of the Debtor's violation of 11 U.S.C. § 362(a)(3) in filing the Post-Petition Lawsuits, the Debtor is hereby directed to reasonably cooperate with the Trustee in taking such action as is deemed necessary or appropriate by the Trustee to remedy the unauthorized assertion of Estate Claims in the Post-Petition Lawsuits (*e.g.*, a nonsuit, dismissal, or other nonprejudicial disposition of the Estate Claims); it is further

**ORDERED** that compensatory sanctions are hereby awarded to the Trustee (for the benefit of the Estate) against the Debtor in the amount of the attorneys' fees and expenses reasonably and necessarily incurred by the Trustee (on behalf of the Estate) in filing and prosecuting the Motion. The following procedures shall apply to the determination of such awarded attorneys' fees and expenses:

1.  The Trustee shall file and serve a request for the allowance of reasonable attorneys' fees and expenses (the "**Request**") **by no later than twenty-one (21) days after the date of entry of this Order**. The Request shall include, in a separate appendix, all supporting documentation along with a supporting affidavit(s)/declaration(s).

2.  If the Debtor asserts that any of the attorneys' fees sought to be awarded pursuant to the Request are not reasonable, any of the expenses sought to be reimbursed are not for actual and necessary expenses incurred, or any of the requested attorneys' fees and/or expenses are otherwise not awardable pursuant to this Order, then **by no later than twenty-one (21) days after the date of the filing of the Request**, the Debtor shall file and serve its objection to the Request (the "**Objection**"). The Objection shall specify in reasonable detail the specific attorneys' fees and/or expenses opposed and the bases for objection for each such amount (*i.e.*, generalized and/or lumped assertions or arguments will not suffice) and shall be supported, if applicable, by any supporting affidavit(s)/declaration(s).

3.  If the Debtor files an Objection, the Trustee may file a reply thereto (the "**Reply**") **by no later than fourteen (14) days after the date of the filing of the Objection**. The Reply shall be supported, if applicable, by any supporting affidavit(s)/declaration(s).

4.  The Court intends to determine the Request without the necessity of a hearing based upon a review of the Request, any Objection, any Reply, and any other supporting documentation submitted by the parties; however, the

Court reserves the right to set a hearing on the Request (which may be an evidentiary hearing, if so ordered by the Court) in the event that the Court determines that a hearing would be helpful.

It is further

**ORDERED** that all relief requested by the Trustee pursuant to the Motion that is not granted above or subject to the reservation of rights that follows hereafter, shall be and is hereby DENIED.  Notwithstanding the foregoing, the entry of this Order shall be without prejudice to the Trustee's right to hereafter request additional compensatory sanctions for any attorneys' fees and expenses that are reasonably and necessarily incurred by the Trustee in taking action in the Post-Petition Lawsuits deemed necessary to address the Estate Claims asserted therein (*e.g.*, to obtain their nonsuit, dismissal, etc.); it is further

**ORDERED** that all counter-relief sought by the Debtor pursuant to the Responses shall be and is hereby DENIED in full and in all respects; and it is further

**ORDERED** that the Court shall retain jurisdiction to hear and determine all disputes involving the interpretation and enforcement of this Order.

### END OF MEMORANDUM OPINION AND ORDER   ###